# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, et al., *Plaintiffs*, v. SNAP-ON INCORPORATED, *Defendant*. | Case No. 2:14-CV-01296 <br><br> Hon. J.P. Stadtmueller |

## SNAP-ON INCORPORATED'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

# TABLE OF CONTENTS

**Page**

Table of Authorities ....................................................................................................................... ii
I.   Introduction ........................................................................................................................ 1
II.  Factual and Procedural Background ................................................................................... 2
     A.  Inequitable Conduct ................................................................................................ 2
     B.  Patent Exhaustion .................................................................................................... 7
     C.  Procedural Background ........................................................................................... 8
III. Legal Standard .................................................................................................................... 8
IV.  Argument ............................................................................................................................ 9
     A.  Snap-on's Motion is Timely and Plaintiffs Will Not Suffer Undue Prejudice. ....... 9
     B.  Snap-on's Proposed Amendments Are Made in Good Faith and Not Futile. ....... 11
         i.   Inequitable Conduct ...................................................................................... 11
         ii.  Patent Exhaustion .......................................................................................... 13
V.   Conclusion ........................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009)...............................................................................11, 12

*Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*,
 350 F.3d 1327 (Fed. Cir. 2003)...........................................................................................11

*Milwaukee Electric Tool Corp. v. Chervon North America, Inc.*,
 No. 14-cv-01289 (E.D. Wisc. April 10, 2015)...................................................................10

*Milwaukee Electric Tool Corp. v. Hilti Inc.*,
 14-cv-01288 (E.D. Wisc. Sept. 18, 2015).........................................................................9, 10

*Mulvania v. Sheriff of Rock Island Cty.*,
 850 F.3d 849 (7th Cir. 2017) ................................................................................................9

*Park v. City of Chicago*,
 297 F.3d 606 (7th Cir. 2002) ................................................................................................9

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
 553 U.S. 617 (2008)............................................................................................................13

*Sanders v. Venture Stores, Inc.*,
 56 F.3d 771 (7th Cir. 1995) ................................................................................................10

*Select Creations, Inc. v. Paliafito Am., Inc.*,
 830 F. Supp. 1213 (E.D. Wis. 1993).................................................................................9, 10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
 649 F.3d 1276 (Fed. Cir. 2011).......................................................................................12, 13

**Statutes**

35 U.S.C. § 101......................................................................................................................3

**Rules**

Federal Rule of Civil Procedure 9(b)..............................................................................11, 12

Federal Rule of Civil Procedure 15 ........................................................................................1

Federal Rule of Civil Procedure 15(a)....................................................................................1

Federal Rule of Civil Procedure 15(b) ........................................................................................1

Federal Rules of Civil Procedure Rule 15(a)(2) ......................................................................2, 9

**I.	Introduction**

Pursuant to Federal Rule of Civil Procedure 15(a) and Civil Local Rule 15, Defendant Snap-on Incorporated ("Snap-on") respectfully moves for leave to amend its answer to add defenses and counterclaims asserting that U.S. Patent Nos. 7,554,290 ("the '290 Patent"), 7,944,173 ("the '173 Patent"), and 7,999,510 ("the '510 Patent") (collectively, "the Patents-in-Suit") are unenforceable due to inequitable conduct committed by a named inventor and others associated with the prosecution of the applications that led to the issuance of the Patents-in-Suit. Snap-on also seeks leave to add a defense of patent exhaustion in relation to three accused products based on third-party licenses.

Snap-on first filed a Motion to Amend on September 25, 2015 (Dkt. 74) but it was withdrawn without prejudice when the Court granted a stay of proceedings pending activity in the Patent Office. Pursuant to Civil Local Rule 15(b), Snap-on has attached to this renewed motion a copy of the amended pleading showing the proposed amendments (Ex. A), a clean copy of the proposed pleading (Ex. B) and a proposed order. In all material respects, the proposed amended complaint is identical to the proposed amended complaint filed in September 2015.

There are four pending cases involving the Patents-in-Suit that have four different defendants: (1) Snap-on, (2) Chervon, (3) Hilti, and (4) Positec. Plaintiffs did not object to similar recent motions in the Chervon and Hilti cases, filed March 2 and March 21, 2017, respectively, to amend their answers to add essentially the same inequitable conduct claim that Snap-on proposes here, and those motions were filed as unopposed. Snap-on made a similar request that Plaintiffs not oppose Snap-on's motion on March 31, 2017, ten days after the Hilti motion was filed. On April 11, 2017, after two reminders, Plaintiffs responded that they would object to Snap-on's motion. *See* Ex. C, April 11, 2017 Stockhausen Email. In a meet and confer

on Thursday, April 14, Plaintiffs declined to explain the reason for refusing Snap-on's request to add an inequitable conduct claim, stating only that it is a part of their strategy.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts should freely grant leave to amend where justice so requires, and, as discussed in more detail below, district courts grant such leave in the absence of a showing of undue prejudice or delay. Plaintiffs have identified no prejudice or delay that will result from this amendment, especially in view of its non-opposition to the addition of the similar claim in the Chervon and Hilti cases. Depositions have not yet restarted after the lifting of the stay, although they will begin April 26. Expert reports have not been filed. To the extent there is any discovery to be done on this issue, it will be done anyway in the Chervon and Hilti cases, which are consolidated for purposes of discovery with this case. For these reasons, and the ones stated below, Snap-on seeks leave to amend its answer and affirmative defenses.

## II. Factual and Procedural Background

### A. Inequitable Conduct

On March 20, 2009, Milwaukee Electric Tool Corporation ("MET") submitted the declaration of one of the inventors of U.S. Patent No. 7,554,290, Gary Meyer ("Meyer"), to the United States Patent and Trademark Office ("PTO") in support of the validity of that patent (the "Meyer Declaration" or the "March 2009 Declaration"). The Meyer Declaration discusses tests he performed on prior art battery packs developed by E-One Moli Energy (Canada) Ltd. ("E-One Moli"), and concludes that those packs were unsuitable for use with a high power tool requiring high discharge currents. (Ex. D, March 2009 Decl., METCO0000288–293). The PTO relied on Meyer's declaration in allowing the claims of the '290 Patent to issue, and ultimately the claims of the '173 and '510 Patents to issue as well. Indeed, the PTO initially confused the E-One Packs for the claimed invention and rejected the claims of the '290 Patent as inoperable subject

2

matter under 35 U.S.C. § 101. (Ex. F) Only after Meyer submitted his declaration did the PTO allow the '290 Patent claims to issue.

As a result of discovery conducted in 2015, Snap-on determined that statements in Meyer's declaration were known by Meyer and others associated with the prosecution of the Patents-in-Suit to be untrue, incomplete and misleading, and were submitted with the intent to deceive the PTO into issuing the claims of the '290 Patent. But for the submission of Meyer's untruthful declaration, the PTO would not have issued the claims of the '290 Patent, nor of the '173 and '510 Patents, which share the same patent specification.

To provide additional detail, in the summer of 2001, E-One Moli, a lithium ion battery manufacturer, approached MET and other power tool manufacturers with the idea of substituting lithium ion batteries for the nickel cadmium batteries currently used in cordless power tools, which is essentially the invention now being claimed by MET in the Patents-in-Suit. In connection with its pitch, E-One Moli showed MET photos of tools with a lithium ion battery pack (Ex. G). Moli also provided MET with battery packs containing lithium ion batteries, included a plastic housing and five lithium ion battery cells. (Ex. D, March 2009 Dec., METCO0000288-293.)

Gary Meyer performed tests on the lithium ion battery pack provided by E-One Moli in September and October 2001, generating at least 57 pages of test results documenting the performance of the E-One Moli battery packs. The first test he performed was a test of the battery pack in an actual tool (the "Cutting Test") that measured discharge current using an 18V circular saw to make "multiple cuts in a 2 inch by 12-inch board of Douglas-fir wood." (Ex. D, March 2009 Decl at ¶ 11.) The E-One Moli battery packs performed similarly to Plaintiffs' NiCd battery pack, making nearly as many circular saw board cuts (approximately 37 cuts v. approximately 40 cuts), while generating more average current (ampere) output than the NiCd

battery pack (26.19 amps v. 21.53 amps) and more than the 20 amps now being claimed as the invention in the Patents-in-Suit (See Ex. E, Test Results at METCO0000219.) ▮

▮

▮

▮

▮

▮

After running those cutting tests, Meyer then had the MET laboratory perform a number of standard laboratory tests on the battery pack while it was disconnected from the tool. Those standard battery cycling tests involved charging and then discharging the battery at a variety of constant discharge currents; including 3 amps, 10 amps, 20 amps, 30 amps, with the battery being recharged after each discharge test. (Ex. D at ¶6, hereinafter "Discharge Tests.") ▮

▮

▮

▮

▮

▮

▮

Thus, the internal MET documents show that Meyer and his colleagues at MET considered the E-One Moli battery cell performance to be ███████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████ ████████████████████████████ ██████

So what did MET tell the Patent Office about these tests and when? Each of the Patents-in-Suit issued from continuation applications of U.S. Patent Application Serial No. 10/721,800, filed on November 24, 2003, and which issued on August 7, 2007 as U.S. Patent No. 7,253,585 ("the 585 Patent.") None of this testing was disclosed to the Patent Office during the prosecution of the '585 Patent, from which these patents spring. In that prosecution, MET did not tell the Patent Office that E-One Moli had come to it with a lithium-ion battery pack in 2001. In fact, in responding to an Examiner rejection during that patent prosecution, Meyer filed a declaration stating that "[t]he conventional view in the industry was that one alternative battery chemistry, lithium, was too unstable for use in the corded tool applications." (Ex. L, February 2007 Decl. at ¶6.)

MET finally disclosed the existence of the E-One Moli battery packs in the application for the first of the Patents-in-Suit. But in stark contrast to the internal documentation regarding the tests above, Meyer characterized the E-One Moli battery packs as a failure. Among the ways the Meyer declaration misled the Patent Office are the following:

- Meyer switched the order of the tests, focusing on the laboratory load Discharge Tests ████████████████████████████████████████ ██████████████████████████████████

- Moreover, when describing those Discharge Tests, Meyer claimed that the voltage of the pack rapidly dropped off to a low voltage threshold of 2.5V per cell, stating that was the voltage recommended by Moli. ████████████ ████████████████████████████████████████ ██████████████████████████████████

- Calling the Cutting Test simply "another test," Meyer claimed that temperature increases during cutting rendered the E-One Moli battery pack "unsuitable for use with a power tool requiring high discharge currents" and that the E-One Moli battery pack "failed" the Cutting Test. (Ex. D ¶¶ 11-12) ████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████

- Meyer also misled the PTO on the results of the Cutting Test. Meyer stated that the maximum temperature limit of the cells was 60 degrees Celsius (Ex. D at ¶ 12) ████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████

- Meyer did not disclose that ████████████████████ ████████████████████████████████████████

6

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████

Thus, Meyer's declaration portrayed the E-One Moli battery packs as failures, although MET knew the battery ███████████████████████████████████████ These intentionally misleading statements in Meyer's declaration led to the issuance of the Patents-in-Suit and form the bases for the inequitable conduct claims that are currently part of the Chervon and Hilti cases, and which Snap-on seeks to add to its case.

### B. Patent Exhaustion

Also during discovery in 2015, Plaintiffs produced a confidential Product Development and Manufacturing Agreement between Milwaukee Electric Tool Corporation and E-One Moli. Under the terms of the Agreement, ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

█████████████████████ Plaintiffs have exhausted their ability to claim violation of the asserted patents with regard to these specific battery packs.[1] Additional Snap-on battery packs,

---

[1] Snap-on has already provided contentions ███████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

and associated power tools, have been accused of infringement in this case. Snap-on seeks to amend to assert the exhaustion defense for the specific packs that were provided to it under the license.

### C. Procedural Background

Once Snap-on learned of the above information through discovery in this case, it quickly filed a motion for leave to amend its pleading, seeking to add allegations supporting its additional claims and defenses of inequitable conduct and exhaustion. This should have come as no surprise to Plaintiffs given that this information has been in their possession since well before this case was filed. Before ruling on Snap-on's motion, however, the Court entered the stay of proceedings pending the Patent Office review of the Patent-in-Suit, and dismissed the motion without prejudice. (Dkt. 85.)

On March 2 and March 21, 2017, respectively, Chervon and Hilti filed their unopposed motions to amend their pleadings to assert inequitable conduct. On March 31, 2017 Snap-on sought MET's consent to file the same pleading it had attached to its prior Motion to Amend (Dkt. 76.) MET did not respond until after two additional inquiries, but on April 11th, MET said that it intended to object. Snap-on inquired into the basis for the objection in writing and in a telephonic meet and confer, and MET declined to state its reasons, other than to say it was part of its strategy.

## III. Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts should freely grant leave to amend where justice so requires. *See* FED. R. CIV. P. 15(a)(2). Indeed, "[a]s a general rule, district courts should liberally grant leave to amend pleadings." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 854 (7th Cir. 2017). Courts may deny a motion for leave to amend only upon a "showing of undue delay, bad faith or dilatory motive on the part of the

8

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002) (quoting *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993)).

IV. **Argument**

A. **Snap-on's Motion is Timely and Plaintiffs Will Not Suffer Undue Prejudice.**

On September 25, 2015, one week before this case was stayed, Snap-on filed its original motion for leave to amend its answer, affirmative defenses and counterclaims. (Dkt. 74.) Attached to that motion was the very same pleading Snap-on now seeks leave to file. (Dkt. 74-1.) Just days before, Hilti Inc. ("Hilti") filed a similar motion seeking to add allegations akin to those in Snap-on's proposed pleading. (*Milwaukee Electric Tool Corp. v. Hilti Inc.*, 14-cv-01288 (E.D. Wisc. Sept. 18, 2015), Dkt. 59-2.) Before the Court could rule on those motions, however, this case was stayed and the motions were dismissed without prejudice. (Dkt. 85.)

MET has declined to provide its reasons for objecting, leaving Snap-on to speculate. To the extent that MET contends that Snap-on's request was untimely, it is only "*undue* delay that forecloses amendment." *Select Creations, Inc. v. Paliafito Am., Inc.*, 830 F. Supp. 1213, 1217 (E.D. Wis. 1993) (citations omitted, emphasis in original). Here, Snap-on originally moved to amend its pleading in September of 2015, shortly after it learned of the information supporting its additional counterclaims and defenses. Once the stay was lifted, Snap-on sought Plaintiffs' consent before a single deposition had been scheduled and long before expert reports will come due (no due date has even been set). *Contra Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773–74 (7th Cir. 1995) (affirming denial of leave to amend after close of discovery because more discovery would have been needed). To the extent there will be deposition testimony on these subjects, it will be in depositions likely attended by all four defendants, two of whom already

9

have inequitable conduct claims in their cases and who will be permitted to ask questions on these subjects. Plaintiffs objection could lead to the bizarre result that Snap-on could attend depositions relating to inequitable conduct, but not be permitted to use that testimony in its own case.

MET also cannot claim undue prejudice, which is prejudice that "outweighs the moving party's right to have the case decided on the merits." *Select Creations, Inc.*, 830 F. Supp. at 1217. The burden to show undue prejudice is on the nonmovant, who must establish "that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it could have offered had the amendment been timely." *Id.* The information supporting Snap-on's amended pleading is, and always has been in the possession of Plaintiffs. Plaintiffs simply cannot establish that "they will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it could have offered had the amendment been timely." *Select Creations*, 830 F. Supp. at 1217. Nor is there delay. Unlike Plaintiffs' recent motion to add a defendant which would likely push back the Court's schedule substantially, Snap-on's amended pleading will not push the schedule back at all.

To the extent Plaintiffs may contest the issues of timeliness and prejudice, it is also worth noting that parties are in the middle of discovery, instead of toward the end. The day before objecting to Snap-on's amended pleading, Plaintiffs produced roughly 200,000 pages of documents—essentially doubling their entire production. It is not clear what Defendants will find in these documents, but this massive production, six months before trial, shows that discovery is at best "underway."[2]

---

[2] Despite numerous requests since late February, Plaintiffs have not yet supplemented a single interrogatory response. Snap-on has tried to meet and confer regarding these issues on a number of occasions, but has yet to receive any meaningful response.

### B. Snap-on's Proposed Amendments Are Made in Good Faith and Not Futile.

#### i. Inequitable Conduct

Snap-on's proposed amendments adding allegations of inequitable conduct satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and therefore would withstand a motion to dismiss. "In pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). As set forth in its proposed amended pleading, Snap-on's defenses and related counterclaim of unenforceability due to inequitable conduct cite and allege facts that answer each of the *Exergen* questions in sufficient detail. Snap-on's proposed amendments allege, among other things:

> • *Who*: Gary Meyer, a named inventor on the Patents-in-Suit, and others associated with the prosecution of the Patents-in-Suit, submitted the March 2009 Declaration during prosecution of the '290 Patent over 7.5 years after the referenced battery tests were performed and knowing the statements contained in the March 2009 Declaration were false, incomplete and/or misleading;
>
> • *What*: The submission of the March 2009 Declaration to the PTO during prosecution of the '290 Patent led the PTO to believe that the prior art E-One Battery Packs were unsuitable for use with high power tools requiring high discharge currents when, in fact, the tests performed in 2001 were known at the time the declaration was submitted to be inappropriate tests of battery performance, and omitted Plaintiffs' recognition that the prior art E-One Battery Packs performed adequately and were capable of operating a high current demand power tool such as a circular saw at a current discharge level of greater than 20 amps nearly as well or better than Plaintiffs' prior art NiCd battery packs;
>
> • *When and Where*: During the prosecutions of the Patents-in-Suit;
>
> • *How*: But for the submission of the false and misleading March 2009 Declaration, the claims of the Patent-in-Suit would not have been allowed over the prior art E-One Battery Packs.

Because each of the above elements is detail, Snap-on's proposed pleading satisfies the applicable Rule 9(b) standard required under *Exergen*.

In addition, Snap-on's inequitable conduct allegations state a plausible claim under *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011). Under *Therasense*, in order for a misrepresentation or omission to rise to inequitable conduct, it must be "but-for" material, meaning that but-for the misrepresentation or omission, the PTO would not have allowed the patent claims at issue. *Id.* at 1291–92. An exception to the requirement of but-for materiality is the case of affirmative egregious misconduct, such as the filing of an unmistakably false affidavit. *Id.* at 1292–93.

Here, Snap-on's allegations satisfy the substantive requirements of *Therasense* and state a plausible claim of inequitable conduct. First, Snap-on alleges sufficient facts to show that but-for the submission to the PTO of the false and misleading March 2009 Declaration, the PTO would not have allowed the claims of the Patents-in-Suit over the prior art E-One Battery Packs and E-One Test Results. Second, Snap-on has sufficiently alleged that Meyer and others associated with the prosecution of the Patents-in-Suit knew that the statements set forth in the March 2009 Declaration were false and/or misleading. The filing of a false and/or misleading declaration rises to the level of affirmative egregious misconduct that satisfies the materiality element of an inequitable conduct claim. Finally, Snap-on sufficiently alleges specific intent on the part of Meyer and others associated with the prosecution of the Patents-in-Suit. Snap-on's allegations of inequitable conduct clearly establish that Meyer and others knew of information that contradicts the statements made in the March 2009 Declaration but did not disclose that information to the PTO. From Snap-on's allegations of inequitable conduct, a specific intent to deceive the PTO is the "single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 1290.

### ii.  Patent Exhaustion

Snap-on's allegations in support of its proposed defense of patent exhaustion in relation to the CTB6185, CTB6187, and CTB7185 battery packs are also sufficient to withstand a motion to dismiss.  "[T]he traditional bar on patent restrictions following the sale of an item applies when the item sufficiently embodies the patent—even if it does not completely practice the patent—such that its only and intended use is to be finished under the terms of the patent." *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 628 (2008).  Here, the facts will establish that E-One Moli supplied Snap-on's CTB6185, CTB6187, and CTB7185 battery packs and that they were only intended for use in power tool battery packs.  Further, Plaintiffs entered into the 2003 Agreement, which covered these battery packs and battery cells.  Therefore, Plaintiffs have exhausted their rights to claim infringement or recover any damages based on sales of Snap-on's CTB6185, CTB6187, and CTB7185 battery packs.

## V.  Conclusion

For the foregoing reasons, this Court should grant Defendant Snap-on, Inc.'s motion for leave to amend its Answer, Affirmative Defenses and Counterclaim.

Dated:  April 14, 2017

> Respectfully submitted,
>
> By:  */s/* Lynn H. Murray
> David R. Cross
> Michael T. Piery
> QUARLES & BRADY LLP
> 411 East Wisconsin Avenue, Suite 2350
> Milwaukee, Wisconsin 53202-4426
> Telephone: (414) 277-5000
> Facsimile: (414) 271-3552
> *david.cross@quarles.com*
> *michael.piery@quarles.com*
>
> Lynn H. Murray

Hugh Abrams
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Drive, 51st Floor
Chicago, Illinois 60606
Telephone: (312) 704-7766
*lhmurray@shb.com*
*habrams@shb.com*

***Attorneys for Snap-on Inc.***

# CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2017, the foregoing **SNAP-ON INCORPORATED'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** was electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

Dated: April 14, 2017

By: */s/ Lynn H. Murray*
Lynn H. Murray
Hugh Abrams
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Drive, 51st Floor
Chicago, Illinois 60606
Telephone: (312) 704-7766
*lhmurray@shb.com*
*habrams@shb.com*