## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, et al., | |
| Plaintiffs, | Case No.: 2:14-cv-01296-JPS |
| v. | |
| SNAP-ON, INCORPORATED, | |
| Defendant. | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR OMNIBUS MOTION FOR SUMMARY JUDGMENT

I.     INTRODUCTION ........................................................................................ 1

II.    35 U.S.C. § 315(E)(2) BARS MOST OF DEFENDANT'S INVALIDITY DEFENSES. 2

    A.     DEFENDANT'S UNSUCCESSFUL PTO CHALLENGES................................ 2

    B.     DEFENDANT'S INVALIDITY POSITIONS ...................................... 3

    C.     LEGAL STANDARD FOR IPR ESTOPPEL ...................................... 4

    D.     ARGUMENT ...................................................................... 6

        1.        Instituted Grounds ......................................................... 6

        2.        Prior Art and Grounds Not Included in the IPR Petitions ............ 8

        3.        Non-Instituted Grounds ............................................... 11

III.   DEFENDANT'S EVIDENCE OF INEQUITABLE CONDUCT FAILS AS A MATTER OF LAW ................................................................................ 12

    A.     DEFENDANT'S INEQUITABLE CONDUCT ALLEGATIONS ..................... 12

    B.     LEGAL STANDARD FOR INEQUITABLE CONDUCT................................ 13

    C.     ARGUMENT .................................................................... 14

        1.        Statements in Meyer's February 2007 Declaration are Not Misrepresentations and Defendant Lacks Clear and Convincing Evidence of Inequitable Conduct With Regard to Those Statements ................................................. 14

        2.        Defendant Cannot Meet the Clear and Convincing Standard to Prove Materiality or Intent Related to Disclosing the E-One Prototype Battery Packs and Testing in 2009 as Opposed to 2007 ...................................................... 16

        3.        Defendant Cannot Meet the Clear and Convincing Evidence Requirement for the Alleged False Statements and Omissions in the 2009 Meyer Declaration.......................... 18

IV.   THE MILWAUKEE PATENTS MEET THE REQUIREMENTS OF SECTION 112.. 22

    A.     LEGAL STANDARD FOR VALIDITY UNDER SECTION 112 ................... 23

    B.     ARGUMENT .................................................................... 23

        1.        The Claims Are Definite................................................ 24

        2.        The Patents Provide a Sufficient Written Description................. 24

        3.        The Claims Are Enabled................................................ 25

V.    MOLI BATTERY CELLS AND THE E-ONE PROTOTYPE BATTERY PACKS DO NOT ANTICIPATE THE MILWAUKEE PATENTS................................... 26

    A.     LEGAL STANDARD FOR ANTICIPATION................................... 27

    B.     PROVISION AND EVALUATION OF THE E-ONE PROTOTYPE BATTERY PACKS ...................................................................... 28

      C.     NEITHER THE INDIVIDUAL MOLI BATTERY CELLS NOR THE E-
              ONE PROTOTYPE BATTERY PACKS ANTICIPATE THE
              MILWAUKEE PATENTS ................................................................................... 29
VI.    CONCLUSION................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Torpharm, Inc.*,
    300 F.3d 1367 (Fed. Cir. 2002)..................................................................26

*Ariad Pharma., Inc. v. Eli Lilly and Co.*,
    598 F.3d 1336 (Fed. Cir. 2010).................................................................23

*Bellehumeur v. Bonnett*,
    No. 00-863-RSWL, 2006 WL 6635952 (C.D. Cal. Mar. 21, 2006) ..................16, 21

*Biscotti, Inc. v. Microsoft Corp.*,
    No. 2:13-CV-01015, 2017 WL 2526231 (E.D. Tex. May 11, 2017).........5, 8, 10, 11

*Clearlamp, LLC v. LKQ Corp.*,
    No. 12-cv-2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) ................................6

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
    No. 2:15-cv-21, 2017 WL 2605977 (E.D. Va. June 5, 2017)..........................5, 6, 9

*Creative Compounds, LLC v. Starmark Labs.*,
    651 F.3d 1303 (Fed. Cir. 2011)...........................................................27, 28, 30

*Cumberland Pharmaceuticals, Inc. v. Mylan Institutional LLC*,
    137 F. Supp. 3d 1108, 1119 (N.D. Ill. 2015) .............................................27, 28, 30

*Doe v. Cunningham*,
    30 F.3d 879 (7th Cir. 1994) ......................................................................20

*Douglas Dynamics, LLC v. Meyer Products LLC*,
    2017 WL 1382556 (W.D. Wis. April 18, 2017) .......................................4, 5, 11, 31

*Fujitsu Ltd. v. Tellabs Ops., Inc.*,
    No. 09-C-4530, 2012 WL 3133548 (N.D. Ill. July 31, 2012) ................................18

*Generac Power Sys., Inc. v. Kohler Co.*,
    No. 11-cv-1120, 2012 WL 6562153 (E.D. Wis. Nov. 29, 2012).......................27, 30

*Gillette Co. v. Energizer Holdings, Inc.*,
    405 F.3d 1367 (Fed. Cir. 2005)..................................................................25

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
    322 U.S. 238 (1944)................................................................................20

*HP Inc. v. MPHJ Tech. Investments, LLC*,
817 F.3d 1339 (Fed. Cir. 2016)........................................................................4, 5

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*,
No. 09-C-0916, 2012 WL 5931790 (E.D. Wis. Nov. 27, 2012).......................14, 18

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*,
863 F.2d 867 (Fed. Cir. 1988)..............................................................................13

*MagSil Corp. v. Hitachi Global Storage Techs., Inc.*,
687 F.3d 1377 (Fed. Cir. 2012).............................................................................26

*Marley Mouldings Ltd. v. Mikon Indus., Inc.*,
No. 02 C 2855, 2004 WL 416359 (N.D. Ill. 2004).................................................26

*Microsoft Corp. v. i4i Ltd. Partnership*,
564 U.S. 91 (2011)................................................................................................23

*Mosaid Tech. Inc. v. Samsung Elec. Co., Ltd.*,
362 F. Supp. 2d 526 (D.N.J. 2005) ......................................................................12

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014) .........................................................................................23

*Oxbo Intern. Corp. v. H&S Mfr. Co.*,
No. 15-cv-292, 2017 WL 2272060 (W.D. Wis. May 23, 2017).......................29, 30

*PPG Indus., Inc. v. Guardian Indus. Corp.*,
75 F.3d 1558 (Fed. Cir. 1996)...............................................................................23

*Philippi-Hagenbuch, Inc. v. Western Tech. Svc's Int'l Inc.*,
No. 12-1099, 2015 WL 5725243 (C.D. Ill. Sept. 30, 2015) ............................27, 30

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945)..............................................................................................20

*Ring Plus, Inc. v. Cingular Wireless Corp.*,
614 F.3d 1354 (Fed. Cir. 2010).............................................................................20

*Ristvedt-Johnson, Inc. v. Brandt, Inc.*,
805 F. Supp. 549 (N.D. Ill. 1992) .........................................................................12

*Rothman v. Target Corp.*,
556 F.3d 1310 (Fed. Cir. 2009).............................................................................19

*Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.*,
817 F.3d 1293 (Fed. Cir. 2016)....................................................................4, 5, 6, 11

*Solvay S.A. v. Honeywell Intern., Inc.*,
  622 F.3d 1367 (Fed. Cir. 2010)..................................................28, 30

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000)........................................................12

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
  135 S. Ct. 831 (2015)......................................................................24

*Therasense Inc. v. Becton, Dickinson and Co.*,
  649 F.3d 1276 (Fed. Cir. 2011)................................................ *passim*

*U.S. Water Svc's, Inc. v. Novozymes A/S*,
  843 F.3d 1345 (Fed. Cir. 2016)........................................................17

*Verinata Health, Inc. v. Ariosa Diagnostics*,
  2017 WL 235048 (N.D. Cal. Jan. 19, 2017) .......................................5

*In re Wands*,
  858 F.2d 731 (Fed. Cir. 1988)....................................................23, 25

*Young v. Lumenis, Inc.*,
  492 F.3d 1336 (Fed. Cir. 2007)........................................................19

**Statutes**

35 U.S.C. § 102............................................................................ *passim*

35 U.S.C. § 103..........................................................................2, 3

35 U.S.C. § 112............................................................................ *passim*

35 U.S.C. § 315(E)(2) ................................................................ *passim*

# I.    INTRODUCTION

Plaintiffs allege infringement of U.S. Patent No. 7,554,290 ("the '290 Patent"), U.S.

Patent No. 7,999,510 ("the '510 Patent"), and U.S. Patent No. 7,944,173 ("the '173 Patent")

(collectively the "Milwaukee Patents").[1]  In response, Snap-on, Inc. ("Snap-on" or "Defendant")

raises numerous meritless validity challenges and affirmative defenses to excuse its willful

infringement.  Approximately a year after this case was filed, and just months before trial, this

case was stayed so that Defendant could pursue its invalidity arguments in *Inter Partes Review*

("IPR") proceedings before the Patent and Trademark Office ("PTO").  In all proceedings, after

considering Defendant's arguments, the PTO issued final decisions upholding the validity of the

Milwaukee Patents.

Despite its failure before the PTO, Defendant continues to attack the Milwaukee Patents.

However, the four challenges listed below can be dispatched on summary judgment.

- Defendant's invalidity arguments under 35 U.S.C. §§ 102 and 103 based on written prior art that Defendant raised, or could have raised, as part of previous IPR proceedings are barred by both Defendant's prior written agreement in its Motion to Stay and controlling law;

- Defendant's inequitable conduct argument fails for lack of clear and convincing evidence of "but-for" materiality and specific intent to deceive;

- Defendant's invalidity argument under 35 U.S.C. § 112 fails as a matter of law because Plaintiffs' patents meet the statutory requirements; and

- Defendant's invalidity argument under 35 U.S.C. § 102 based on battery cells provided to Plaintiffs by E-One Moli Energy (Canada) Ltd. fail because the individual battery cells, as well as prototype packs constructed with those cells, fail to disclose every claim limitation in the Milwaukee Patents.

---

[1] Specifically, Plaintiffs assert infringement of the following claims against Snap-on: claims 1 and 8-10 of the '290 Patent, claims 1, 4-5, 7-13, and 16-19 of the '510 Patent, and claims 1, 8-10, and 12-13 of the '173 Patent.  *See* Plaintiffs' Statement Of Proposed Material Facts In Support Of Their Motion For Summary Judgment ("Metco PMF") ¶ 1.

Accordingly, Plaintiffs respectfully request that this Court enter summary judgment in its favor on these issues.

## II.     35 U.S.C. § 315(E)(2) BARS MOST OF DEFENDANT'S INVALIDITY DEFENSES

Nearly all of the prior art and invalidity grounds Defendant asserts in this proceeding were raised or reasonably could have been raised in the IPR proceedings. Defendant may not raise those same defenses again in this Court because it chose to invoke the IPR process twice in an effort to invalidate the Milwaukee Patents.

### A.     DEFENDANT'S UNSUCCESSFUL PTO CHALLENGES

The Milwaukee Patents have been subject to nine *Inter Partes Reviews* and four *Reexaminations* before the PTO, during which teams of patent examiners and administrative law judges re-reviewed and reaffirmed their validity. Metco PMF ¶¶ 28-48.

On January 21, 2015, Chervon, Positec, and Hilti filed three IPR petitions seeking to invalidate the Milwaukee Patents as obvious under 35 U.S.C. § 103(a) based on a proposed combination of prior art references. Metco PMF ¶ 30. On July 31, 2015, the PTAB granted these petitions and instituted reviews of the Milwaukee Patents. Metco PMF ¶ 31. A year after instituting review, the PTAB issued a Final Written Decision in each IPR upholding the patentability of the Milwaukee Patents. *See* D.E. 104, 105-1, 105-2; Metco PMF ¶ 33.

On May 6, 2015, Hilti filed a second round of IPRs against the Milwaukee Patents. Metco PMF ¶ 34. The Board instituted these IPRs based on an obviousness argument under 35 U.S.C. § 103(a) that relied on a proposed combination of prior art references that was different than the proposed combination used in the first set of IPRs. Metco PMF ¶ 35. Snap-on joined these IPRs as a co-petitioner. Metco PMF ¶¶ 47-48. Once again, in its Final Written Decisions, the Board found Hilti and Snap-on failed to prove any claims were obvious and upheld the patentability of the Milwaukee Patents. Metco PMF ¶ 38.

Finally, on May 22, 2015, Snap-on filed another round of IPRs challenging the Milwaukee Patents as obvious based on different grounds than those raised in the prior two rounds of IPRs. Metco PMF ¶ 39. The Board again instituted IPRs under 35 U.S.C. § 103(a) against the Milwaukee Patents. Metco PMF ¶¶ 40-41. However, for the third time, in its Final Written Decisions, the Board found that Snap-on failed to prove that any claim was obvious and confirmed the patentability of the Milwaukee Patents. Metco PMF ¶¶ 46.

On August 5, 2015, Defendant renewed its motion to stay this litigation. D.E. 35. In its Motion to Stay, Snap-on stated: "Although not a co-petitioner on the instituted IPRs, Snap-on agrees to be precluded in the instant litigation from challenging the validity of the Patents-In-Suit based on the prior art combinations in the instituted IPRs, upon issuance of a final written opinion in those IPRs by the Patent Trial and Appeal Board." D.E. 36 at 3. Defendant also adopted Chervon's arguments in support of its Motion to Stay, which included the agreement to be "bound by the estoppel provisions, which would preclude them from challenging the validity of these patents, after the USPTO issues its final written decisions, on grounds raised or that could have been raised during the IPRs." D.E. 37 at 13. On October 2, 2015, this Court granted Defendant's Motion to Stay pending resolution of the IPRs, noting "Snap-On has also agreed to be estopped in its litigation from asserting the prior art combinations used in the January 2015 IPR petitions after the USPTO issues its final written decisions." D.E. 85. After the PTO completed the IPRs, reaffirming the patents' validity, the Court lifted the stay on December 30, 2016. D.E. 111.

## B. DEFENDANT'S INVALIDITY POSITIONS

Before the stay, on February 13, 2015, Plaintiffs served their First Set of Written Discovery on Defendant. Interrogatory No. 7 asked for the full basis of Defendant's invalidity claims under 35 U.S.C. § 102 and 35 U.S.C. § 103 based on written prior art. Metco PMF ¶ 5-6.

3

On March 24, 2017, after the stay was lifted, Defendant updated its response to Interrogatory No. 7 asserting no less than 32 different prior art references, including numerous references that were the subject of the related IPRs.[2]  Metco PMF ¶ 15.  Defendant's Answer, Affirmative Defenses, And Counterclaims ("Answer") to Plaintiffs' original complaint contains a number of similar prior art invalidity grounds.  Metco PMF ¶¶ 2-3.

### C.     LEGAL STANDARD FOR IPR ESTOPPEL

Congress established the IPR process to provide a swifter, more efficient forum to resolve most validity challenges.  *See Douglas Dynamics, LLC v. Meyer Products LLC*, 2017 WL 1382556, 14-cv-886, at *1 (W.D. Wis. April 18, 2017) ("In theory, IPR provides an efficient alternative forum for contesting patent validity, which would otherwise have to be resolved in more costly and dragged-out district court litigation.")  Because those goals would be subverted if a defendant could raise one subset of invalidity challenges through an IPR and assert still others in federal court, 35 U.S.C. § 315(e)(2) prohibits a party who was a petitioner in an *inter partes* review from asserting in district court litigation an invalidity challenge to a patent that is based "on any ground that the petitioner ***raised or reasonably could have raised during that inter partes review***." 35 U.S.C. § 315(e)(2) (emphasis added).

The Federal Circuit has identified only one exception to this rule.  IPR estoppel will not apply to invalidity grounds if the petitioner raised the ground in a petition, but the PTAB chose not to institute the IPR on that ground due to redundancy.  *Shaw Industries Group, Inc. v. Automated Creel Systems, Inc*., 817 F.3d 1293, 1300 (Fed. Cir. 2016), cert. denied, (U.S. Oct. 31, 2016); *see also HP Inc. v. MPHJ Tech. Investments, LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016)

---

[2] A simplified list of the references asserted in Defendant's Appendix A to its Response to Interrogatory No. 7 is attached hereto as Appendix A.

("Accordingly, the noninstituted grounds were not raised, and, as review was denied, could not be raised in the IPR. Therefore, the estoppel provisions of § 315(e)(1) do not apply.").[3]

Recent district court decisions broadly apply IPR estoppel consistent with the plain language of the statute and its legislative history. In *Douglas Dynamics*, the Western District of Wisconsin held that the defendants were estopped from raising prior art that was not, but could have been, raised in their IPR petition. 2017 WL 1382556 at *4-6. The district court found its holding was consistent with Section 315(e)'s statutory language and legislative history. *Id*. at *4.

More recently, in *Biscotti, Inc. v. Microsoft, Corp.*, Magistrate Judge Payne recommended partially granting plaintiff's motion for summary judgment and stated that an IPR petitioner is exempted from Section 315(e)'s estoppel provision only if the PTAB denies institution for purely procedural reasons, such as redundancy. 2017 WL 2526231, 13-cv-01015, at *7 (E.D. Tex. May 11, 2017). Accordingly, the magistrate judge found § 315(e) estops a defendant from asserting at trial: "(1) grounds for which the PTAB instituted IPR and determined those grounds to be insufficient to establish unpatentability after a trial on the merits; (2) grounds included in a petition but determined by the PTAB to not establish a reasonable likelihood of unpatentability (in other words, administrative review on the merits of a ground); and (3) grounds not included in a petition that a 'skilled searcher conducting a diligent search reasonably could have been expected to discover.'" *Id*.

Finally, in *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, defendants were estopped from relying on printed publications that were "reasonably available" to them at the time of the IPR filings, but were not raised in their IPR petition. 2017 WL 2605977, 15-cv-21, at *3 (E.D. Va.

---

[3] Although both *Shaw* and *HP* adjudicated issues of estoppel relating specifically to grounds that were not instituted based on redundancy, a minority of courts have nevertheless applied *Shaw* broadly, exempting any ground from Section 315(e) estoppel that was not raised during the post-institution phase of the IPR. *See, e.g., Verinata Health, Inc. v. Ariosa Diagnostics*, 2017 WL 235048, *3 (N.D. Cal. Jan. 19, 2017) (holding only arguments raised or that reasonably could have been raised **during** IPR are subject to estoppel)

June 5, 2017). The district court stated that doing so "gives effect to every word in the statute while also recognizing the effect of the USPTO's decision on an IPR petition." *Id.* Section 315(e)(2) estoppel thus includes any ground "based on prior art that could have been found by a skilled searcher's diligent search." *Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-2533, 2016 WL 4734389, at *8 (N.D. Ill. Mar. 18, 2016).

### D.    ARGUMENT

Three categories of Defendant's prior art invalidity grounds are estopped and cannot be asserted in this case: (1) references addressed in the PTAB's final written decisions; (2) references that reasonably could have been raised in the IPR petitions, but were not; and (3) references raised in the IPR petitions, but for which IPR was not instituted on the merits.

### 1.    Instituted Grounds

There is no dispute that § 315 estoppel bars Defendant from re-litigating, in this case, the specific prior art combinations that were used by the PTAB to institute the IPRs. *See Shaw*, 817 F.3d at 1300. Defendant agreed, even for the IPRs where it was not a co-petitioner, that it would "be precluded in the instant litigation from challenging the validity of the Patents-In-Suit based on the prior art combinations in the instituted IPRs, upon issuance of a final written opinion in those IPRs by the Patent Trial and Appeal Board." D.E. 36 at 3. Yet Defendant is doing the opposite of what it represented to this Court.

Defendant continues to advance prior art defenses based on prior art that was addressed in the IPRs. In its response to Interrogatory No. 7, Defendant identified the arguments and prior art references from its IPR challenges as grounds for invalidity in this case. Defendant also identified the arguments and prior art references from the IPRs filed by Hilti, Positec, and Chervon as grounds for invalidity in this case. Metco PMF ¶ 8.

But because the PTAB instituted trial on one ground raised in Defendant's IPR petition:

obviousness over European Patent Publication No. EP 1 266 725 A1 ("Fohr"), Japanese

Publication No. JP 2002-110254 ("Sato"), and U.S. Patent No. 6,468,689 ("Hallaj"), those prior

art references and Defendant's associated invalidity arguments cannot be raised in this case.

Metco PMF ¶ 42.  The PTAB's final written decision upheld the validity of all of the challenged

claims of the Milwaukee Patents thereby triggering the estoppel provisions of § 315(e) for these

prior art references.  Metco PMF ¶ 46.

      In the IPR proceedings brought by Chervon, Hilti and Positec, the PTAB instituted trial

on two different grounds:  (1) obviousness over International Patent Application No. WO

02/03484 ("Kasahara") and Handbook of Batteries, 3d ed. 2001 ("Linden"), and (2) obviousness

over Kasahara, Linden, and U.S. Patent No. 5,213,913 ("Anthony").  Metco PMF ¶ 32.  The

PTAB's final written decision upheld the validity of all of the challenged claims of the

Milwaukee Patents thereby triggering the estoppel provisions of § 315(e) for these additional

prior art references.  Metco PMF ¶ 33.

      Finally, in the third round of IPR proceedings, which were filed by Hilti and by Snap-on[4],

the PTAB instituted trial based on obviousness over U.S. Patent Application Publication No.

2003/0096158 ("Takano") and Japanese Patent Application No. 2001-118569 ("Yanai").  Metco

PMF ¶ 36.  Again, the PTAB's final written decision upheld the validity of all of the challenged

claims of the Milwaukee Patents thereby triggering the estoppel provisions of § 315(e) for these

additional prior art references as well.  Metco PMF ¶ 38.

      Based on § 315(e), and Defendant's own agreement to be bound by the outcomes of the

IPRs, Defendant is estopped from reasserting any of the grounds addressed by the PTAB in its

final written decisions, including:  (1) obviousness over Fohr, Sato, and Hallej, (2) obviousness

---

[4] While Defendant's agreement in its Motion to Stay related to the IPR proceedings brought by Chervon, Defendant
joined the later filed Hilti proceedings and, thus was also a petitioner in that IPR proceeding.  Metco PMF ¶¶ 47-48.

over Kasahara and Linden, (3) obviousness over Kasahara, Linden, and Anthony, and

(4) obviousness over Takano and Yanai.

Furthermore, any invalidity defense based on a subset of the grounds addressed in the

PTAB's final written decisions, for example, obviousness over Kasahara and Anthony, those

theories and arguments are also estopped. *See Biscotti Inc.*, 2017 WL 2526231 at *7-*8

(recommending estoppel of subsets of invalidity grounds included in an IPR).

## 2. Prior Art and Grounds Not Included in the IPR Petitions

Defendant also attacks the Milwaukee Patents based on numerous prior art references it

was aware of and could have raised in their IPR petitions, but chose not to raise. Defendant's

response to Interrogatory No. 7 lists the following references it decided not to raise in its IPR

petitions: (1) the reasons set forth in prior reexamination requests filed by Hitachi Koki, Ltd.

(including Appendix A Nos. 19, 28); (2) prior art identified in the invalidity contentions and

supplemental invalidity contentions from the prior lawsuit *Milwaukee Electric Tool Corp., v.

Hitachi Ltd*, No. 2:09-cv-00948-WEC (E.D. Wisc.); (3) the prior art publications produced by

Defendant at SNPON0005990-11677 (including Appendix A Nos. 2, 7, 9-12, 16(b)(1), 18, 20,

26)); (4) publications of FORTU BAT Batterien GmbH ("FORTU publications"); (5) U.S. Pat.

Nos. 6,124,698; 6,204,640; and 6,329,788 ("U.S. Patent References"); (6) a number of newly

asserted prior art references (Appendix A Nos. 22-24, 27, & 29-32; (7) publications and patents

describing a number of batteries or battery cells (Appendix A Reference Nos. 13-16).[5] Metco

PMF ¶¶ 6-8, 13-15. Defendant's Answer to the Complaint raises fourteen additional prior art

patents and publications it may rely upon in this case. Metco PMF ¶¶ 2-3.

---

[5] A number of Defendant's asserted references are also included on the face of the Milwaukee Patents. For example, reference No. 12 (Richards, Paul W., et al., "A Computer Controlled Power Tool for the Servicing of the Hubble Space Telescope,") in Appendix A appears on the face of the '290 Patent as published in a different journal. Metco PMF ¶ 1 ('290).

It is indisputable that all but one of the references identified in categories listed above was known or readily discoverable to Defendant at the time the IPRs were filed and therefore "reasonably could have been raised" by Defendant in its IPRs. First, for categories (1) and (2), the Hitachi litigation concluded well before Defendant filed its IPRs, and Snap-on hired the same attorneys that represented Hitachi in the prior litigation.[6] Metco PMF ¶¶ 11, 12. Second, for category (3), Defendant made its production of "prior art" on May 1, 2015, three weeks before filing its IPR proceeding. Metco PMF ¶¶ 8, 9. As such, Defendant knew about and could have raised any of these references in its IPR petition. Third, for category (4), the FORTU publications were publically available, and were identified by Defendant in its discovery responses before the final written decision issued in the IPR proceedings. Metco PMF ¶ 14.

For category (5), the U.S. Patent references could have been found by a skilled searcher's diligent search, and, indeed, they were identified in Defendant's amended discovery responses served before the PTAB's decision to institute the IPRs and well before the PTAB issued its final written decisions. Metco PMF ¶ 14. Similarly, for category (6), all but one of the newly asserted references could have been found by a diligent search.[7] Indeed, a reasonable search would have revealed these references in less than sixteen hours. Metco PMF ¶¶ 26, 27.

All these newly asserted references are published articles or U.S. patents, not internal product brochures or datasheets that may be more difficult for a skilled searcher to discover. *See Cobalt Boats,* 2017 WL 2605977, at *4 (holding patents were reasonably available where search of terms in patents-in-suit returned references). Defendant had been litigating this case for over seven months before filing its IPRs – ample time to identify these new references before the

---

[6] Defendant also asserts a Japanese Patent Application to Adachi (Appendix A No. 4). This reference was raised in an IPR petition filed by Hilti before Defendant filed its IPR petition. Metco PMF ¶ 37.

[7] Cardinal Intellectual Property, an intellectual property services company with searching capabilities for prior art references, ran a search and would have been able to find all of the references except Appendix A No. 22 ("Nagyszalanczy") using reasonable search terms in a reasonable time. Metco PMF ¶¶ 26, 27.

IPRs.  What's more, Defendant's counsel has been challenging the Milwaukee Patents in prior proceedings since the fall of 2009.  Metco PMF ¶¶ 11, 12.

Further, while Defendant identifies a number of battery cells and battery packs (Appendix A Reference Nos. 13-16), Defendant concedes that these alleged prior art products are described in a number of patents and publications that it had previously asserted.  Metco PMF ¶¶ 16-23.  Defendant's invalidity defenses based on products are not separate and distinct from its defenses based on the patents and publications describing the products.  For this reason, an invalidity defense based on the physical products should also be estopped.

For each battery cell or pack, Defendant knew about, or reasonably could have found, at least one respective written prior art reference before it filed its IPRs.  The two references describing the Sony-Li ion batteries (Appendix A No. 13) were found using a diligent search (Metco PMF ¶ 27), U.S. Patent No. 5,561,006 (Appendix A No. 14(1)) "describes the lithium-ion chemistry of the Saft battery cells" and was found using a diligent search (Metco PMF ¶¶ 26-27), and the Yardney Li-ion battery cell (Appendix A No. 15) is "described in detail in Chapter 35 of Linden," a reference asserted in the IPRs.  The Moli battery cells (Appendix A No. 16) are described in the Von Sacken Power 2000 Presentation (Appendix A. No. 16(b)(1)), and in the product data sheets, both of which were  produced by Defendant before it filed its IPRs. Metco PMF ¶¶ 24, 25.

Finally, the prior art references in Defendant's Answer were identified by Defendant on December 12, 2014, well before Defendant's IPRs were filed.  Metco PMF ¶ 2, 3.

Because all the references listed above were known by or readily discoverable by Defendant, they could have been raised in its failed IPRs, and Defendant should be estopped from asserting them here.  *See Biscotti Inc.*, 2017 WL 2526231 at *6 ("If, on the other hand, the

petitioner simply does not include a prior art reference in the petition that reasonably could have been included, the petitioner should be estopped from asserting that reference in a subsequent proceeding. Such a result would be consistent with the purpose and legislative history of the America Invents Act (AIA).”); *see also Douglas Dynamics*, 2017 WL 1382556, at *4.

### 3. Non-Instituted Grounds

Defendant also included several invalidity grounds in its IPR petitions on which the PTAB did not institute the IPR. These grounds were: (1) obviousness over Sato and U.S. Publication No. 2003/0134189 A1 (“Kanai”); (2) anticipation over U.S. Publication No. 2004/0257038 A1 (“Johnson”); and (3) obviousness over U.S. Patent No. 7,273,159 B2 (“Brotto”). Metco PMF ¶¶ 8, 43. Even though these grounds were not the subject of the PTAB’s final written decisions, they should be estopped because the PTAB’s reasons for not including them in the IPRs were substantive in nature, and not procedural or due to redundancy.

Specifically, in denying institution on Sato and Kanai, the PTAB stated the “Petitioner does not show sufficiently that Kanai’s vacuum cleaner is a ‘hand held power tool,’ or that an ordinary artisan reasonably would have expected Sato’s 100 or 200 amp battery to work successfully in Kanai’s vacuum cleaner.” Metco PMF ¶ 44. Similarly, in addressing Johnson and Brotto, the PTAB held “[n]either Johnson nor Brotto is available prior art and, therefore, Petitioner is not reasonably likely to prevail at trial on grounds based on those references.” Metco PMF ¶ 45. Unlike the situation in *Shaw*, where the PTAB denied institution because a prior art reference was redundant, the PTAB’s denial of certain grounds in this case was based on the merits of the prior art references and should be estopped.[8] *Biscotti*, 2017 WL 2526231, at

---

[8] Moreover, to the extent Defendant argues that *Shaw* and *HP* establish an exception to Section 315 estoppel for non-instituted grounds, that exception is limited to grounds that were not instituted based on redundancy. *Biscotti*, 2017 WL 2526231 at *6 (“The narrower interpretation is that only grounds raised in a petition but not instituted for procedural reasons (such as redundancy) are exempt from estoppel.”)

\*7.  Estoppel for these references is also consistent with the representations Defendant made to the Court in seeking its Motion to Stay.

## III.    DEFENDANT'S EVIDENCE OF INEQUITABLE CONDUCT FAILS AS A MATTER OF LAW

To prevail on its inequitable conduct defense, Defendant must prove, by clear and convincing evidence, that Milwaukee made material misstatements to the PTO and acted with the specific intent of deceiving the PTO.  *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011).  As applied to the allegations in this case, Defendant must prove by clear and convincing evidence that Milwaukee:  (1) made the alleged misrepresentations or failed to submit prior art references to the PTO that are material under a "but-for" standard; *and* (2) in doing so, "acted with the specific intent to deceive the PTO."  *Id.* at 1290-91.  Defendant cannot meet its burden under either prong.

### A.    DEFENDANT'S INEQUITABLE CONDUCT ALLEGATIONS

On June 8, 2017, Defendant amended its Answer to raise affirmative defenses and counterclaims that the Milwaukee Patents are unenforceable due to inequitable conduct, alleging false statements or omissions in the prosecution the '290 Patent and its parent patent.[9]  *See* Snap-on's Amended Answer ("Snap-on Answer"), D.E. 167.

---

[9]  Defendant further asserts that, as a result of this alleged inequitable conduct during the prosecution of the '585 Patent and '290 Patent, all three of the Milwaukee Patents are unenforceable under the doctrines of infectious unenforceability and unclean hands.  Snap-on Answer, D.E. 167 (Tenth Defense and Count IV & V).  Because the acts cited by Defendant do not represent inequitable conduct in the first instance, however, the penalties of infectious unenforceability and unclean hands are similarly unavailable to Defendant.  *See Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1259 (Fed. Cir. 2000) (noting that "we would have to find inequitable conduct sufficient to hold at least one patent unenforceable before considering whether to hold an entire group of related patents unenforceable"); *Mosaid Tech. Inc. v. Samsung Elec. Co., Ltd.*, 362 F. Supp. 2d 526, 553-55 (D.N.J. 2005) (rejecting infectious unenforceability at summary judgment for failure to prove inequitable conduct and noting that "[t]o prove infectious unenforceability, an accused infringer must establish [two elements including that] a patent is unenforceable due to inequitable conduct"); *Ristvedt-Johnson, Inc. v. Brandt, Inc.*, 805 F. Supp. 549, 555-57 (N.D. Ill. 1992) (finding unclean hands doctrine inapplicable where defendant was unable to prove inequitable conduct on any patent in the lawsuit).

The purported inequitable conduct identified in Defendant's pleadings is alleged to have occurred (i) during the prosecution of U.S. Patent Application No. 10/721,800 ("the '800 Application"), which issued as U.S. Patent No. 7,253,585 ("the '585 Patent") and (ii) during the prosecution of the '290 Patent. Metco PMF ¶¶ 54, 55.[10] Specifically, Defendant's claims are premised on the following alleged false statements or omissions to the PTO:

1. Alleged misrepresentations in a 2007 declaration submited by Gary Meyer ("2007 Meyer Declaration") during prosecution of the '800 Application;

2. Failure to disclose, until March 20, 2009, two lithium-ion battery packs received by Plaintiff during summer of 2001 from E-One Moli Energy (Canada) Ltd. ("the E-One Prototype Battery Packs") and tests thereon; and

3. Alleged false statements and omissions in a 2009 declaration submitted by Gary Meyer ("2009 Meyer Declaration") during prosecution of the '290 Patent.

Metco PMF ¶¶ 56-66. As this Court found in rejecting Chervon's Motion to Compel, there is "insufficient evidence to conclude that [Meyer] actually misrepresented facts or intended to deceive the patent examiners" and "there is no evidence establishing that Plaintiffs were under an obligation to disclose [the E-One Prototype Battery Packs] or that Meyer failed to do so with the intent to deceive." *Milwaukee Elec. Tool Corp. v. Chervon N.A., Inc.*, No. 14-cv-1289, 2017 WL 2312905, at *3 (E.D. Wis. May 26, 2017).

## B.    LEGAL STANDARD FOR INEQUITABLE CONDUCT

Inequitable conduct "resides in failure to disclose material information, or submission of false material information, with an intent to deceive…." *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 872 (Fed. Cir. 1988). There must be both knowledge and deliberate action. *Therasense*, 649 F.3d at 1290. Misrepresentations or omissions that amount to gross negligence or negligence under a "should have known" standard do not satisfy this intent

---

[10] These very same inequitable conduct allegations were raised in Defendant Chervon's unsuccessful Motion to Compel Production of Documents from Plaintiffs' Privilege Log Based on the Crime-Fraud Exception ("Mot. to Compel"), 2:14-cv-01289 D.E. 172-1.

requirement. *Id.* at 1290 (citing to *Kingsdown*, 863 F.2d at 876). Rather, Defendant must prove Plaintiffs "acted with the specific intent to deceive the PTO." *Id.* (citing omitted). Information is "material" only if the PTO would not have allowed a claim "but for" the misrepresentation or omission of that information. *Id.* at 1291. Defendant must prove there was "a deliberate decision" made to withhold a known material reference or make the misrepresentation. *Id.* Intent cannot be inferred unless intent to deceive is the "single most reasonable inference," and "[w]hen there are multiple reasonable inferences" to be drawn from the evidence, this will not satisfy the burden of proof. *Id.* at 1290-91 (citations omitted).

Intent and materiality are separate requirements. *Therasense*, 649 F.3d at 1290. In order to succeed on a defense of inequitable conduct, Defendant must prove both materiality and intent by clear and convincing evidence, even at summary judgment. *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, No. 09-C-0916, 2012 WL 5931790, at *3 (E.D. Wis. Nov. 27, 2012). Thus, to prevail, Plaintiffs need only show that Defendant cannot produce clear and convincing evidence of one essential element of inequitable conduct.

### C. ARGUMENT

#### 1. Statements in Meyer's February 2007 Declaration are Not Misrepresentations and Defendant Lacks Clear and Convincing Evidence of Inequitable Conduct With Regard to Those Statements.

Defendant's allegations that the 2007 Meyer Declaration contains misrepresentations are based solely on the argument that a single statement, pulled out of context, is contrary to deposition testimony Meyer gave in 2015. Mr. Meyer's statements are consistent and do not constitute inequitable conduct.

In his 2007 declaration Meyer stated "[t]he conventional view in the industry was that one alternative battery chemistry, lithium, was too unstable for use in corded tool applications." Metco PMF ¶¶ 67-68. During his 2015 deposition, Meyer stated that believed, in 1999, that the

"industry was going toward using lithium technology in power tools" (Metco PMF ¶ 69). These

two statements are not contradictory, and even if they could somehow be viewed as such, there is

no evidence that Mr. Meyer's 2007 statement was "but for" material to patentability or made

with deceptive intent.

As a threshold matter, both Mr. Meyer's 2007 and 2015 opinions are true and consistent.

Metco PMF ¶¶ 70-74. It is consistent and reasonable for Meyer to have believed that the

cordless tool industry was looking to lithium technology as a possible new energy source even

though the conventional view was that lithium was too unstable for such applications. Mr.

Meyer's 2007 and 2015 statements both occurred in the context of describing Milwaukee's

years-long search for a new battery technology to replace nickel–cadmium battery technology.

Metco PMF ¶¶ 68, 70, 75, 76. Meyer explained it was his opinion that future development

would lead to the ability to use lithium, but it was contingent on further devlopment because, at

the time, lithium could not be used with high-current power tools. *Id.* Indeed, the Court

previously found "no fault in Meyer's statement." *Milwaukee Elec. Tool Corp.*, 2017 WL

2312905, at *3 ("Meyer's and his colleagues' beliefs about industry trends and technological

development are not facts. Thus, Chervon places more weight on his deposition testimony than

it can bear.").

Even if Defendant somehow could make Meyer's 2007 and 2015 beliefs sound

inconsistent, intent to deceive could only be inferred if it is the "single most reasonable

inference." *Therasense*, 649 F.3d at 1290-91. "When there are multiple reasonable inferences"

to be drawn from the evidence, Defendant cannot meet its burden of proof. *Therasense*, 649

F.3d at 1290-91. Here, Defendant proffers no evidence of deceptive intent. The truth of Mr.

Meyer's stated opinion defeats any inference. Intent to deceive cannot be inferred from Meyer's

statements, and it is certainly not the "single most reasonable inference." *Therasense*, 649 F.3d at 1291; *Bellehumeur v. Bonnett*, No. 00-863-RSWL, 2006 WL 6635952, at \*3 (C.D. Cal. Mar. 21, 2006) ("Since this statement [to the PTO] was not false, it cannot render the patent unenforceable for inequitable conduct.").

Finally, Defendant's allegations are devioid of any evidence that the alleged statement was "but for" material. *See Therasense*, 649 F.3d at 1291. Meyer's opinion on industry trends had nothing to do with why the PTO decided to award Milwaukee the '585 Patent. This can been seen from the examiner's stated reasons for allowing the patent, which indicate that the "combined nominal voltage of approximately 28-volts" was central to that decision. Metco PMF ¶¶ 77-83. The PTO's own record demonstrates that Meyer's beliefs about the future of lithium ion technology was not the "but for" reason why the examiner approved the claims.

> 2.  **Defendant Cannot Meet the Clear and Convincing Standard to Prove Materiality or Intent Related to Disclosing the E-One Prototype Battery Packs and Testing in 2009 as Opposed to 2007.**

Defendant also contends that the timing of Plaintiffs' disclosure of the E-One Prototype Battery Packs is evidence of inequitable conduct. Metco ¶¶ PMF 60-63. However, the E-One Prototype Battery Packs and associated testing are not "but-for" material for the '585 patent because they would not anticipate or render obvious the '585 Patent. There also is no evidence of intent to deceive the PTO with any statement made about the E-One Prototype Battery Packs.

The E-One Prototype Battery Packs relied upon by Defendant contained five cells connected in series with a combined nominal voltage of 21 volts. Metco PMF ¶¶ 84-86. By contrast, claim 1 of the '585 Patent recites "the battery cells having a combined nominal voltage of approximately 28-volts . . . ." Metco PMF ¶ 119. Claim 5 of the '585 Patent recites: "The battery pack as set forth in claim 1 wherein each of the plurality of battery cells has a nominal

voltage of approximately 4.2-volts." Metco PMF ¶ 120. Claims 1 and 5 of the '585 Patent require a different combined voltage than that of the E-One Prototype Battery Packs.

Additionally, the file history of the '585 Patent, as noted above, confirms that the examiner allowed the claims of the '585 Patent over the prior art due to the claims' 28-volt limitation. Metco PMF ¶¶ 77-83. Because the E-One Prototype Battery Packs were only 21 volts, they do not antcipate or render obvious any claim of the '585 Patent, and are thus not "but-for" material to the patentability of the claims of the '585 Patent, all of which require a "combined nominal voltage of approximately 28-volts." *Therasense*, 649 F.3d at 1292.

In stark contrast to the PTO's written record of events, Defendant has offered no evidence to support its position that the E-One Prototype Battery Packs were "but-for material" to the '585 Patent. *Therasense*, 649 F.3d at 1291 (but-for materiality established only where "the PTO would not have allowed a claim had it been aware of the undisclosed prior art"); *see also U.S. Water Svc's, Inc. v. Novozymes A/S*, 843 F.3d 1345, 1354 (Fed. Cir. 2016) (affirming denial of summary judgment on defendant's inequitable conduct motion and noting that "[t]he record contains no suggestion that, but-for the disclosures…the examiner would not have issued the Patents-in-Suit…."). In its attempt to show the relevance and materiality of the E-One Prototype Battery Packs to the '585 Patent, Defendant's Fifth Counterclaim simply ignores that the "combined nominal voltage of approximately 28-volts" is both an element of the claims and was the reason for allowance. *See* Metco PMF ¶ 54, 55; D.E. 167, Count V.

Further, Defendant fails to meet the exacting standard for proving specific intent to deceive. Defendant must show that the "single most reasonable inference able to be drawn from the evidence" is that Meyer specifically intended to decieve the PTO. *Therasense*, 649 F.3d at 1290 (citations omitted). Here, there are numerous alternative inferences, including that the E-

One Prototype Battery Packs were irrelevant and immaterial to the claims of the '585 Patent.

The Court acknowledged this interpretation of the facts, finding "unavailing" the assertion that

Meyer "fraudulently failed to disclose" the E-One Prototype Battery Packs during prosecution of

the '585 Patent (the '800 Application). *Milwaukee Elec. Tool Corp.*, 2017 WL 2312905, at *3.

Plaintiffs' explanation that the '800 Application concerned 28 volt packs (whereas the E-

One Battery Packs had a combined voltage of 21 volts) and Plaintiffs' perception that there was

not enough similarity between the two to warrant disclosure of the E-One Prototype Battery

Packs are undisputed facts that support a conclusion that "there is no evidence establishing that

Plaintiffs were under an obligation to disclose the [E-One Prototype Battery Packs] or that Meyer

failed to do so with the intent to deceive." *Id.* Because additional reasonable inferences exist, as

a matter of law, the requisite intent to deceive is absent.[11] *Kimberly-Clar*k, 2012 WL 5931790,

at *4-5 (holding "possibilities and innuendo are not enough" regarding intent to deceive,

particularly in light of plausible alternatives); *Fujitsu Ltd. v. Tellabs Ops., Inc.*, No. 09-C-4530,

2012 WL 3133548, at *3 (N.D. Ill. July 31, 2012) (granting summary judgment "[b]ecause more

than one reasonable inference may be drawn from the undisputed facts before the court").

> **3.** **Defendant Cannot Meet the Clear and Convincing Evidence Requirement for the Alleged False Statements and Omissions in the 2009 Meyer Declaration.**

Defendant's third inequitable conduct allegation focuses on Meyer's 2009 declaration,

which disclosed the E-One Prototype Battery Packs and associated test results to the PTO.

Defendant presents a list of arguments throughout Count IV of its Counterclaim based on either

(i) alternative interpretations of the testing results actually disclosed, or (ii) different information

or testing that allegedly should have been disclosed by Mr. Meyer or patent prosecution counsel

---

[11] Further, lack of intent to deceive is revealed by the disclosure to the Patent Office in 2009 of the E-One Prototype Battery Pack and test results once the 28 volt nominal voltage limitation was removed. *See* Section C.3, *infra*.

Carlo Cotrone. Metco PMF ¶¶ 54, 55, 61-66. Both of these theories are undermined by the fact that Meyer disclosed the information in his possession to the PTO. Furthermore, an applicant's interpretation or view of what an item of prior art includes or discloses is not inequitable conduct. *See, e.g.*, *Rothman v. Target Corp.*, 556 F.3d 1310, 1328-29 (Fed. Cir. 2009) ("While the law prohibits genuine misrepresentations of material fact, a prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct."); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("We therefore fail to see how the statements . . . which consist of attorney argument and an interpretation of what the prior art discloses, constitute affirmative misrepresentations of material fact.").

While Defendant now proffers its own interpretation of Meyer's test results, it is undisputed that Meyer provided the actual test results to the PTO, along with his declaration, in which he explained how he interpreted those tests.[12] Metco PMF ¶¶ 84-108. The PTO had, and considered, the actual test results while it was assessing the Milwaukee Patents. Metco PMF ¶¶ 109-112. Because the Milwaukee Patents were issued after the PTO considered this information, there is no "but for" material information that was withheld from the PTO. Put simply, Meyer provided the PTO with all the information necessary for the PTO to make its own materiality determination, and the PTO allowed the claims of the Milwaukee Patents over the submitted information. Inequitable conduct is not possible in this situation. *Therasense*, 649 F.3d at 1291.

Further, Defendant lacks clear and convincing evidence that the Milwaukee Patents would not have issued "but-for" the alleged misconduct of characterizing the raw test data that

---

[12] Defendant Snap-on also asserts a driver drill test that was allegedly not provided to the Patent Office. *See* Snap-on Answer, D.E. 167, ¶¶ 61-62. As Meyer explained in his declaration, such a test would be irrelevant to the '290 claims as only one test – the discharge test – was necessary to demonstrate the failure of the E-One Battery Packs to meet the required standard of delivering their entire rated capacity while producing 20 amps or greater. PMF ¶¶ 90, 108.

was provided to the PTO.  *See Therasense*, 649 F.3d at 1291.[13]  Defendant's bald allegations that

if Meyer and Cotrone had not misrepresented[14] the E-One test results the examiner would have

rejected the '290 patent claims fall short.  Metco PMF ¶ 66.  In the context of summary

judgment, the opposing party "may not rest upon the mere allegations or denials of his pleading,

but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Doe v.

Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct.

2505).  Defendant cannot and, to date, has not, offered any such evidence.  Metco PMF ¶ 66

(conclusory allegations on "but-for" alleged misconduct).

These facts also demonstrate that Meyer and Cotrone could not have possessed the

requisite specific intent required for inequitable conduct because they submitted the actual test

results to the PTO, not merely their own characterization or summary of them.  Disclosure of the

very material allegedly substantiating a claim of inequitable conduct negates any finding of the

requisite intent to deceive. *See Ring Plus, Inc. v. Cingular Wireless Corp*., 614 F.3d 1354, 1361-

63 (Fed. Cir. 2010) (reversing the district court's inequitable conduct ruling where the applicants

disclosed to the PTO the reference that they allegedly mischaracterized).

---

[13] Defendant has not proffered any facts alleging that Meyer's statements constitute "affirmative egregious misconduct," which is the sole, narrow exception to the "but for materiality" requirement reserved for "deliberately planned and carefully executed scheme[s]." *Therasense*, 649 F.3d at 1292 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238, 245 (1944)).  The examples of such "egregious conduct" cited in *Therasense* all involved grossly fraudulent conduct such as perjury, bribery, and the manufacture of false documentation.  *See Hazel-Atlas*, 322 U.S. at 245 (manufacturing evidence by drafting fake scholarly article in order to trick and defraud the PTO); *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 809-10 (1945) (purposely false preliminary statement in PTO proceedings, followed by perjurious testimony).  No such acts occurred here.

[14] These "misrepresentations," as alleged in Snap-on's counterclaims, include: (1) stating that the E-One Battery Packs failed the Discharge Test and were "unsuitable for use with a high power tool requiring high discharge currents"; (2) stating that the E-One Packs failed the Discharge Test despite knowing that it was not an appropriate test for li-ion battery packs; (3) telling the PTO that Moli Canada recommended a voltage cut-off of 2.50 volts when Moli Canada had actually set the minimum voltage cut-off at 2.0 volts; (4) failing to explain that the E-One Battery Packs performed nearly as many circular saw cuts as NiCd battery packs; (5) failing to properly interpret the maximum temperature limit of the cells in the Cutting Test; (6) failing to disclose that the circular saw is among the most demanding tests; and (7) relegating the results of the Interval Test to a footnote.  Snap-on Answer, D.E. 167, Count IV.

Even if reasonable minds could disagree about how to interpret the test data and the interpretation presented in Meyer's 2009 declaration, Defendant cannot present any facts supporting a reasonable inference that Meyer or Cotrone acted with the singular "specific intent to deceive the PTO" to establish inequitable conduct. *Therasense*, 649 F.3d at 1290. Meyer's statements about the E-One Prototype Battery Packs were grounded in the truth (both the truth of the actual test results and the truth in his associated statements), and it is axiomatic that a true statement of opinion does not support an inference of deceptive intent. *See Bellehumeur*, 2006 WL 6635952, at *3.

First, Meyer's statements in connection with ***the Discharge Test*** and the E-One Prototype Battery Packs failing that test were true. Metco PMF ¶¶ 88-97. Second, Meyer's statements in connection with ***the Cutting Test*** and the E-One Prototype Battery Packs failing that test were also true. Metco PMF ¶¶ 98-104. As this Court found in its Order on Defendant Chervon's Motion to Compel, "while Meyer may have stated his case strongly to the Patent Office, there is insufficient evidence to conclude that he actually misrepresented facts or intended to deceive the patent examiners." *Milwaukee Elec. Tool Corp.*, 2017 WL 2312905, at *3.

Defendant's additional assertions regarding information or testing allegedly omitted are irrelevant. Defendant's assertions are based on arguments such as: (i) Meyer could have experimented with less demanding tools or made less demanding cuts; (ii) the E-One Prototype Battery Packs could make as many cuts as a NiCd battery at a certain current; and (iii) Meyer did not say that a test of a circular saw was among the most demanding tests (*see* Snap-on Answer, D.E. 167, Count IV).[15] Each of these arguments ignores the fact that the invention is a battery

---

[15] Defendant Chervon alleged for the first time in its Motion to Compel that Plaintiffs failed to disclose to the Patent Office testing that was allegedly performed on the E-One Battery Packs in 2001, but omitted from the 2009 Meyer Declaration. *See* Reply In Support of Mot. to Compel, Chervon D.E. 188, at 12-1. No evidence was presented that any test results or data was generated from those alleged tests. Further, the Court considered the argument and

pack capable of delivering approximately 20 amps throughout its entire rated capacity. That capability does not depend on the type of tool that may be used with a battery pack, or how a tool may ultimately be used when the battery pack is attached to it. Defendant is using its post-hoc improper claim construction as a foundation for its inequitable conduct argument. Meyer was not aware of Defendant's claim construction when he made his statements to the PTO, so it cannot form a basis for inequitable conduct here.

As applied to the claims of the Milwaukee Patents, the key inquiry about a battery pack is the pack's ability to discharge the required amount of current over its entire rated capacity. The Discharge Test alone demonstrated the E-One Prototype Battery Packs could not meet the required standard of delivering their entire rated capacity while producing 20 amps or greater and Meyer explained exactly that in his declaration. Metco PMF ¶¶ 88-97, 108. Meyer's actions and explanations are not inequitable conduct.

## IV.    THE MILWAUKEE PATENTS MEET THE REQUIREMENTS OF SECTION 112

Defendant alleges the Milwaukee Patents are invalid under 35 U.S.C. § 112 because the specifications do not enable a person of ordinary skill in the art to practice the "open-ended discharge range" of "greater than or equal to approximately 20 amps." Metco PMF ¶¶ 115-116. Multiple examiners, the PTAB, and another district court, however, have all concluded that, in light of the prosecution histories and specification, the claims of the Milwaukee Patents are adequately supported under 35 U.S.C. § 112. *See* Metco PMF ¶ 28, 29, 134-139. Defendant's selective reading of the record raises no new arguments and falls far short of demonstrating that there are any material disputes of fact regarding the validity of the Milwaukee Patents under § 112. In light of the intrinsic evidence, and guided by the decisions of three separate forums, this

---

found it did not change Chervon's failure to establish fraud in its Motion to Compel. *Milwaukee Elec. Tool Co.*, 2017 WL 2312905, at *4 n.8.

Court should grant summary judgment that the claims are sufficiently definite, described, and enabled.

## A. LEGAL STANDARD FOR VALIDITY UNDER SECTION 112

In order to be valid under 35 U.S.C. § 112 a patent must satisfy three requirements. First, the patent must conclude with claims "particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." *Id.* ¶ 2. Second, the patent must demonstrate that the inventors "had possession of the claimed subject matter as of the filing date." *Ariad Pharma., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). Third, "the specification must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *See PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996) (citations and quotations omitted).[16] "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) (emphasis added).

## B. ARGUMENT

Patents are presumed valid and Defendant's allegations that the patents are invalid under 35 U.S.C. § 112 must be proved by clear and convincing evidence. 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91, 95 (2011) ("§ 282 requires an invalidity defense to be proved by clear and convincing evidence"). Defendant cannot meet this standard, and the court should grant summary judgment that the patents are valid under 35 U.S.C. § 112.

---

[16] In order to determine whether a disclosure requires undue experimentation, the Court may consider the following factors: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

### 1. The Claims Are Definite

Claim 1 of the '290 patent is typical of the core claim of all three Milwaukee Patents. It claims "a battery pack for powering a hand held power tool," a housing connectable to and supportable by the hand held power tool and a plurality of battery cells supported by the housing, the battery cells being capable of producing an average discharge current greater than or equal to approximately 20 amps, the battery cells having a lithium-based chemistry. Metco PMF ¶ 1 ('290 Patent). Supplementing this specificity, Meyer explained in a sworn declaration provided during the prosecution of the Milwaukee Patents that, before his invention, he tested the E-One Prototype Battery Packs and found that in a constant current discharge test they would suffer voltage drop-off and fail within less than one minute, and they could not deliver 20 amps of constant current without failing before delivering their entire rated capacity. Metco PMF ¶¶ 84-97, 108. Given this context, a person skilled in the art would understand from the prosecution history that the Milwaukee Patents cover packs that can provide current reasonably close to 20 amps or greater over the course of delivering the entire rated capacity of the pack, but do not cover packs (like those in the prior art) that can only provide 20 amps or more for only short periods of time. This understanding is consistent with the claim construction reached in both the prior district court litigation and the IPRs. Metco PMF ¶¶ 134-139. Such evidence from the prosecution history is intrinsic evidence that *must* be considered during claim construction. *See Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 852 (2015) ("'[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, ***and the prosecution history***, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'") *quoting Nautilus*, 134 S. Ct at 2124 (emphasis added).

### 2. The Patents Provide a Sufficient Written Description

An objective inquiry into the four corners of the Milwaukee Patents shows that the

inventors described what was claimed: "a plurality of…battery cells being capable of producing an average discharge current greater than or equal to approximately 20 amps." PMF ¶¶ 121-124 (referred to as "the 20 Amp Limitation"). The specification likewise provides that the "battery pack 30 can supply an average discharge current that is equal to or greater than approximately 20 A[mps]." PMF ¶ 124. Based on the teachings from the specification, there is no doubt the inventor had possession of the claimed invention.

### 3. The Claims Are Enabled

Not only do the claims and prosecution history clearly describe the invention and its minimum discharge current of approximately 20 amps, the limitation of the invention to "a battery pack for powering a hand held power tool" also cabins the upper end range of discharge current.[17] In light of the extensive discussion of hand-held power tools throughout the specification and background knowledge related to lithium ion batteries, one of ordinary skill in the art would have understood that the 20 Amp Limitation of the claims in the Milwaukee Patents[18] had a natural upper limit. This limit is bounded by the internal resistance of the battery pack and power tool and the physical nature of the electrochemical reaction that creates current. Additionally, one of ordinary skill in the art would understand the claims in the Milwaukee Patents are directed to a battery pack *for powering a hand held power tool* and that an infinite current limitation is not only impossible in a hand held power tool, but also under the laws of physics. Metco PMF ¶¶ 126-132. There is a natural limit to the current that any lithium ion battery can produce, resulting both from the internal resistance of a battery and from the physical nature of the electrochemical reaction that creates current. (Metco PMF ¶ 130). These

---

[17] Defendant has challenged the "open-ended range" of the 20 Amp Limitation in its prior claim construction briefing (D.E. 28-1 at 16-19), which it has incorporated into its interrogatories responses asserting invalidity under § 112. Metco PMF ¶ 116.

[18] "[B]attery cells being capable of producing an average discharge current greater than or equal to approximately 20 amps" is referred to herein as the "20 Amp Limitation." *See* Metco PMF ¶ 125. *See also* Plaintiffs' Opening Claim Construction Brief, filed contemporaneously herewith. D.E. 177.

maximum current limits are known and would have been part of the background knowledge of those of ordinary skill in the art. Metco PMF ¶¶ 130-132; *see Wands*, 858 F.2d at 735 ("patent need not disclose what is well known in the art").

Claims have been found enabled even with open ended claim language like that found in the Milwaukee Patents. *See Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371 (Fed. Cir. 2005) (rejecting lack of enablement argument despite open claim language); *see also Marley Mouldings Ltd. v. Mikon Indus., Inc.*, No. 02 C 2855, 2004 WL 416359 (N.D. Ill. 2004), *rev'd on other grounds by* 417 F.3d 1356 (Fed. Cir. 2006) (rejecting lack of enablement argument for a range of "up to 100" on basis that specification made clear range not meant to extend down to zero).[19] Similarly, during *inter partes* review of the '290 Patent, the PTO expressly rejected Defendant's arguments that the claims were not enabled because they did not contain an upper limit. *See SNAP-ON v. Milwaukee Elec. Tool Corp.*, Case IPR2015-01242 (2015) at 13-14 (holding Defendants' reliance on *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1381 (Fed. Cir. 2012) was misplaced).

At bottom, Defendant's § 112 arguments are divorced from what one of ordinary skill in the art would have understood. As a matter of law, Defendant's Third Affirmative Defense and Second Counterclaim based on lack of enablement should meet the same fate as all prior efforts by infringers to argue that the Milwaukee Patents are not enabled. *Abbott Labs. v. Torpharm, Inc.*, 300 F.3d 1367, 1378 (Fed. Cir. 2002) (affirming summary judgment rejecting defendant's non-enablement defense).

## V. MOLI BATTERY CELLS AND THE E-ONE PROTOTYPE BATTERY PACKS DO NOT ANTICIPATE THE MILWAUKEE PATENTS

---

[19] Defendant's argument is further belied by the fact that numerous other patents contain similar open-ended ranges. Metco PMF ¶ 133.

Defendant states that the Moli Battery Cells invalidate the Milwaukee Patents under 35 U.S.C. §§ 102(a), 102(b), 102(f), and/or 102(g). Metco PMF ¶ 146.[20] The Moli Battery Cells are not anticipatory under Sections 102(a) and (b) because the cells fail to disclose all elements of the claimed invention.

Defendant's allegations under §§ 102(f) and (g), that the invention claimed in the Milwaukee Patents were first invented by or derived from the Moli Battery Cells, are similarly insufficient. Because the Moli Battery Cells fail to disclose all elements of the invention, Moli employees cannot be prior inventors under 102(g) and the Milwaukee Patents were not derived from anyone at Moli under 102(f). *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1312 (Fed. Cir. 2011); *Cumberland Pharma.*, 137 F. Supp. 3d at 1120 (stating that establishing invalidity under sections 102(f) and (g) requires proof of prior conception of all elements of the claim). The E-One Prototype Battery Packs also are not anticipatory under Sections 102(a) and (b) because they do not disclose all elements of the claimed invention.

## A. LEGAL STANDARD FOR ANTICIPATION

A patent is anticipated under 35 U.S.C. §§ 102(a) or 102(b)[21] if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent" or "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]" For Section 102(a) or (b) to apply, a *single* reference must "expressly or inherently disclose each claim limitation." *Philippi-Hagenbuch, Inc. v. Western Tech. Svc's Int'l*

---

[20] Plaintiffs, however, need only show that the Moli Battery Cells are missing one element from each claim in order to be successful on their motion for summary judgment on validity.

[21] Section 102 was amended by the Leahy-Smith America Invents Act in 2011. Pub. L. 112-29, Sec. 3, 125 Stat. 284 (Sept. 16, 2011). Because the claims have effective filing dates before the March 16, 2013 effective date, the prior version of Section 102 applies here. *See, e.g., Cumberland Pharmaceuticals, Inc. v. Mylan Institutional LLC*, 137 F. Supp. 3d 1108, 1119 n.5 (N.D. Ill. 2015) (citation omitted).

*Inc.*, No. 12-1099, 2015 WL 5725243, at *2 (C.D. Ill. Sept. 30, 2015) (quoting *Finisar Corp. v. Direct TV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008)); *see also Generac Power Sys., Inc. v. Kohler Co.*, No. 11-cv-1120, 2012 WL 6562153, at *11 (E.D. Wis. Nov. 29, 2012) (patent invalid under Section 102(a) or (b) "if, after having been properly construed,[22] it is determined that a ***single*** prior art reference…discloses ***every element*** that the Court determined to be a part of the patent claim in question" (emphasis added)).

To invalidate a claim under 35 U.S.C. § 102(f), a party must establish that the inventor "did not himself invent the subject matter sought to be patented[.]"  This requires proof of "both prior conception of the invention by another and communication of that conception to the patentee."  *Creative Compounds, LLC*, 651 F.3d at 1313.  To invalidate a claim under 35 U.S.C. § 102(g)(2), a party must show that "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it."

Establishing prior invention requires proof of prior conception. *Creative Compounds, LLC*, 651 F.3d at 1312.  Conception is the "formation, in the mind of the inventor, of a definite and permanent idea of a complete and operative invention, as it is hereafter to be applied in practice."  *Solvay S.A. v. Honeywell Intern., Inc.*, 622 F.3d 1367, 1376 (Fed. Cir. 2010) (internal citations omitted).  Conception must "encompass ***all limitations*** of the claimed invention…."  *Cumberland Pharma.*, 137 F. Supp. 3d at 1120 (emphasis in original).  Failure to raise a genuine issue of material fact with regard to conception, therefore, is fatal to both a claim under Section 102(f) and 102(g).  *Creative Compounds, LLC*, 651 F.3d at 1313. Defendant must prove invalidity by clear and convincing evidence.  *Id*. at 1309-10.

## B. PROVISION AND EVALUATION OF THE E-ONE PROTOTYPE BATTERY PACKS

---

[22] Plaintiffs incorporate by reference Plaintiffs' Opening Claim Construction Brief, filed contemporaneously herewith.  D.E. 177.

By early 2001, E-One Moli Energy (Canada) LTD (hereinafter "Moli Canada") had developed two different types of lithium ion battery cells, the 18650 and 26650. Metco PMF ¶¶ 140-141. Moli Canada sent Plaintiffs E-One Prototype Battery Packs fitted with 26650 cells. Metco PMF ¶ 143. From September 26 to October 11, 2001, Gary Meyer tested the E-One Prototype Battery Packs comprising the 26650 Moli Battery Cells. Metco PMF ¶¶ 87, 144. As explained below, the Moli Battery Cells and the E-One Prototype Battery Packs are not anticipatory prior art.

### C. NEITHER THE INDIVIDUAL MOLI BATTERY CELLS NOR THE E-ONE PROTOTYPE BATTERY PACKS ANTICIPATE THE MILWAUKEE PATENTS

The Moli Battery Cells are not anticipatory for at least two reasons. **First,** Claim 1 of the '290 Patent, which is representative of all of the Milwaukee Patents, requires a "[a] battery pack for powering a hand held power tool, the battery pack comprising: a housing connectable to and supportable by the hand held power tool; and a plurality of battery cells supported by the housing, the battery cells being capable of producing an average discharge current greater than or equal to approximately 20 amps, the battery cells having a lithium-based chemistry." Metco PMF ¶ 1 ('290 Patent). The Moli Battery Cells are not a battery pack, but instead are individual cells. For that reason alone they only represent a component of the invention and fail to anticipate the claims of the Milwaukee Patents. *Oxbo Intern. Corp. v. H&S Mfr. Co.*, No. 15-cv-292, 2017 WL 2272060 (W.D. Wis. May 23, 2017) (anticipation fails for failure to disclose all elements of claimed inventions).

**Second,** Claim 1 of the '290 Patent requires "the battery cells being capable of producing an average discharge current greater than or equal to approximately 20 amps." Metco PMF ¶ 1 ('290 Patent). Meyer tested the E-One Prototype Battery Packs comprising the 26650 Moli Battery Cells. Metco PMF ¶¶ 87, 144. The E-One Prototype Battery Packs failed both

(i) discharge tests conducted under a constant discharge current of 20 amps, and (ii) cutting tests run by Meyer.  Metco PMF ¶¶ 89-97, 98-104, 108, 144.

To succeed on their invalidity claims under §§ 102(a) and (b) the Moli Battery Cells must clearly disclose **all** elements of the Milwaukee invention.  *Philippi-Hagenbuch, Inc*, 2015 WL 5725243, at *2 (C.D. Ill. Sept. 30, 2015).  Here, the Moli Battery Cells fail to do so individually or as used in the E-One Prototype Battery Pack, as evidenced by the failure of the E-One Prototype Battery Pack in the discharge and cutting tests run by Meyer (Metco PMF ¶¶ 89-97, 98-104, 108), and summary judgment is warranted.  *Generac Power Sys.*, 2012 WL 6562153, at *12-13 (finding no anticipation because references do not disclose each claim element); *Oxbo Intern. Corp.*, 2017 WL 2272060, at *19, 24 (anticipation claims fail for failure to disclose all elements of claimed inventions).[23]

Because the Moli Battery Cells do not meet all the elements of the claims in the Milwaukee Patents, it follows that Moli Canada did not conceive of the invention in the Milwaukee Patents nor was it derived from them.  As a result, Defendant's Sections 102(f) and (g) defenses based on the Moli Battery Cells likewise fail.[24]  *See Cumberland Pharma.*, 137 F. Supp. 3d at 1120; *see also Creative Compounds*, 651 F.3d at 1313; *Solvay S.A.*, 622 F.3d at 1377-78.

## VI.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant its motion for summary judgment on estoppel, inequitable conduct, Section 112, and anticipation.

---

[23] Because the dependent claims include all of the limitations of their parent independent claim (including the 20 Amp Limitation here), Plaintiffs' dependent claims are also valid over the Moli Battery Cells.

[24] Defendant's 102(g) allegation also fails because Moli was based in Canada and its activities did not take place in the United States, and therefore cannot qualify as prior inventive activity under 102(g).

Dated:  June 30, 2017

Respectfully submitted,

_____/s/ Scott D. Sherwin_____
Scott W. Hansen
shansen@reinhartlaw.com
Paul Stockhausen
pstockhausen@reinhartlaw.com
Jessica H. Polakowski
jpolakowski@reinhartlaw.com
James N. Law
jlaw@reinhartlaw.com
REINHART BOERNER VAN DEUREN, S.C.
1000 N. Water Street, Suite 1700
Milwaukee, WI  53202
Phone:  (414) 298-1000
Fax:  (414) 298-8097

Jason C. White
Illinois Bar No. 6238352
jason.white@morganlewis.com
Scott D. Sherwin
scott.sherwin@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Suite 500
Chicago, Illinois 60601
Phone: (312) 324-1775
Fax:  (312) 324-1001

*Attorneys for Plaintiffs Milwaukee Electric Tool
Corporation; Metco Battery Technologies, LLC;
AC (Macao Commercial Offshore) Limited; and
Techtronic Industries Co. Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to the Court and to attorneys of record.

_/s/Scott D. Sherwin_