# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> SNAP-ON INCORPORATED, <br><br> Defendant. | Case No. 14-CV-1296-JPS <br><br><br> **ORDER** |

      Defendant Snap-On Incorporated ("Snap-On") filed a motion to compel discovery responses on June 2, 2017. (Docket #156). Snap-On complains that Plaintiffs have not adequately responded to interrogatories concerning dates of conception and reduction to practice, marking of products, and identifying commercial embodiments of the patents-in-suit. For the reasons stated below, the motion will be granted in part and denied in part.

1. **STANDARD OF REVIEW**

      District courts have broad discretion in deciding matters relating to discovery. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646–47 (7th Cir. 2001); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993). Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The information sought need not itself be admissible to be discoverable. *Id.* In

considering matters of proportionality, the Rule directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* While these proportionality concerns have always been a part of the Rule, they now enjoy pride of place after the 2015 Rule amendments. *See* Fed. R. Civ. P. 26 advisory committee notes, 2015 Amendment; *Elliot v. Superior Pool Prods., LLC*, No. 15-cv-1126, 2016 WL 29243, at *2 (C.D. Ill. Jan. 4, 2016).

## 2. DISCUSSION

The Court will address the interrogatories at issue here in turn. The Court will consider only the parties' substantive disputes relating to these discovery requests. Despite Plaintiffs' contention that the parties did not meet and confer on these matters as required by the federal and local rules, *see* Fed. R. Civ. P. 37(a)(1); Civ. L. R. 37, the evidence presented satisfies the Court that sufficient conciliation efforts were made, except to the extent Snap-On concedes that certain topics were not covered, as explained further below.

### 2.1 Priority Date

In Common Interrogatory No. 2, Snap-On requested that Plaintiffs identify, for each claim in each patent-in-suit, "the earliest priority date to which you contend that such claim is entitled and describe with particularity all factual and legal bases for each such claimed priority date,. . .and []if you intend to rely on a conception date[,] an identification

and description in detail of all facts and circumstances relating to the asserted claim's conception, diligence, and reduction to practice." (Docket #158-1 at 3). In response, Plaintiffs asserted a priority date (the date of reduction to practice) of "at least as December 12, 2002," and a conception date of "at least as early as November 21, 2002." *Id.* at 7.

The parties' dispute focuses on the qualifying language in Plaintiffs' response. Snap-On seeks to hold Plaintiffs to particular dates for these events, claiming that merely proposing the latest possible date is insufficient. Thus, Snap-On asks that the Court order Plaintiffs to delete the qualifying language or identify the earliest dates on which they contend that these events occurred.

Plaintiffs assert that their qualified responses are adequate at this time. First, because of the gradual nature of the development process, Plaintiffs complain that they cannot in good faith designate a single date for these events. Second, Plaintiffs argue that Snap-On has not identified any potential prior art references with dates of conception or reduction to practice earlier than the dates Plaintiffs have presently identified. In Plaintiffs' view, this makes the need to identify a precise date unnecessary, as there is no competing prior art that would make an earlier date relevant.

The Court finds Snap-On's request to be reasonable. Snap-On has in fact offered evidence showing at least colorable claims of prior art that precede the dates Plaintiffs have identified. *See* (Docket #193 at 4–6). This development renders it important for Snap-On to know whether Plaintiffs will claim dates that are any earlier than the current dates. *See Invacare*

and description in detail of all facts and circumstances relating to the asserted claim's conception, diligence, and reduction to practice." (Docket #158-1 at 3). In response, Plaintiffs asserted a priority date (the date of reduction to practice) of "at least as December 12, 2002," and a conception date of "at least as early as November 21, 2002." *Id.* at 7.

The parties' dispute focuses on the qualifying language in Plaintiffs' response. Snap-On seeks to hold Plaintiffs to particular dates for these events, claiming that merely proposing the latest possible date is insufficient. Thus, Snap-On asks that the Court order Plaintiffs to delete the qualifying language or identify the earliest dates on which they contend that these events occurred.

Plaintiffs assert that their qualified responses are adequate at this time. First, because of the gradual nature of the development process, Plaintiffs complain that they cannot in good faith designate a single date for these events. Second, Plaintiffs argue that Snap-On has not identified any potential prior art references with dates of conception or reduction to practice earlier than the dates Plaintiffs have presently identified. In Plaintiffs' view, this makes the need to identify a precise date unnecessary, as there is no competing prior art that would make an earlier date relevant.

The Court finds Snap-On's request to be reasonable. Snap-On has in fact offered evidence showing at least colorable claims of prior art that precede the dates Plaintiffs have identified. *See* (Docket #193 at 4–6). This development renders it important for Snap-On to know whether Plaintiffs will claim dates that are any earlier than the current dates. *See Invacare*

*Corp. v. Sunrise Med. Holdings, Inc.*, No. 04-CV-1439, 2005 WL 1750271, at *3 (N.D. Ohio Jan. 21, 2005) (plaintiff's large date-range for conception and reduction to practice "entirely leave[s] open the critical time period" in light of prior-art assertions). Plaintiffs have conceded as much. (Docket #174 at 13–14) ("Nothing more is necessary until or unless Snap-on makes the issue relevant by identifying one or more prior art references with dates near in time to the asserted latest date [of] conception.").

An estimate of such dates will do when a party cannot in good faith pick a precise date. *See Layne Christensen Co. v. Purolite Co.*, Civil Action No. 09–2381–JWL–GLR, 2011 WL 231400, at *3 (D. Kan. Jan. 24, 2011); *Phillip M. Adams & Assoc., L.L.C. v. Fujitsu Ltd.*, No. 1:05–CV–64 TS, 2010 WL 1330002, at *2 (D. Utah Mar. 29, 2010). But it is not enough at this late stage for Plaintiffs to produce a pile of documents and claim that they "could be interpreted as evidence of conception well prior to the latest possible date identified." (Docket #174 at 12). Plaintiffs offer little in the way of concrete reasons why they cannot form a more precise belief about the relevant dates, and Snap-On should not be left guessing until the briefs on such matters are filed. *See In re Papst Licensing GMBH & Co. KG Litig.*, 252 F.R.D. 7, 17 (D.D.C. 2008) (rejecting plaintiff's attempt to avoid taking a stand on date of conception despite evidence in its possession enabling it to do so).

Nor is the Court convinced that Plaintiffs' reference to documents pursuant to Rule 33(d) is sufficient. That Rule provides that

> if the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored

information), and *if the burden of deriving or ascertaining the answer will be substantially the same for either party*, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d) (emphasis added). Plaintiffs posit that the dates of conception and reduction to practice can be gleaned from the documents they produced in response to this interrogatory. Snap-On rejoins that those documents do not clearly give those answers and that Plaintiffs are in a better position to essentially produce what amount to their contentions as to when these things occurred.

The Court again agrees with Snap-On. Answering this interrogatory with actual or approximate dates is simple. Arriving at what those dates are is much more complex, inviting Plaintiffs' assessment of the legal standards governing conception and reduction to practice. *See Boston Sci. Corp. v. Micrus Corp.*, No. 04-4072, 2007 WL 174475, *1 (N.D. Cal. Jan. 22, 2007) (noting that interrogatory seeking conception date is in substance a contention interrogatory). The interrogatory is not objectionable because it asks for these legal conclusions, *see* Fed. R. Civ. P. 33(a)(2), contrary to the conclusion in *Kimberly-Clark Corp. v. Tyco Healthcare Retail Group*, No. 05–C–985, 2007 WL 218721, at *3 (E.D. Wis.

Jan. 26, 2007), and Snap-On cannot be expected to divine Plaintiffs' position from the documents produced.

Accordingly, the Court directs Plaintiffs to supplement their response to this interrogatory within seven (7) days of the date of this Order. Plaintiffs must either remove the "at least as early as" language from their existing response or identify the earliest dates they intend to assert for conception and reduction to practice of the claimed invention. If Plaintiffs in good faith believe that they cannot designate specific dates for these events, they shall nevertheless state the approximate date or dates they intend to claim. *See Boston*, 2007 WL 174475, *1.

### 2.2 Marking

In Interrogatory No. 5, Snap-On requested information regarding how and when Plaintiffs and their licensees marked products embodying the patents-in-suit with the applicable patent numbers. Marking is a question related to pre-suit damages under 35 U.S.C. § 287. Pursuant to that provision, a plaintiff can recover pre-suit damages only when a licensee selling the product consistently and continuously marks it with the applicable patent. *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994).

In a pending, related patent case, the Court recently adjudicated a dispute concerning a nearly identical interrogatory. *Milwaukee Elec. Tool v. Chervon N.A. Inc.*, Case No. 14–CV–1289–JPS, 2017 WL 2445845, at *6 (E.D. Wis. June 6, 2017). In that case, the defendant complained that Plaintiffs did not describe with specificity their licensees' efforts to mark the relevant products. *Id.* Plaintiffs conceded that no marking was done for

products embodying the '173 and '510 patents, but argued that marking was done for the '290 patent as explained in a September 2015 declaration by their counsel, Elizabeth Miller ("Miller"). *Id*. She averred that Plaintiffs' licensees were required by contract to mark relevant products with the '290 patent. *Id.* The defendant maintained that the Miller declaration was inadequate, since it only showed that Plaintiffs' licensees were obligated under their licensing agreements to mark the products, not whether, when, and how the products were actually marked. *Id.*

The Court found that although Miller never actually described how and when products were marked, only that licensees were supposed to be marking and that Plaintiffs monitored their compliance, there was no reason to compel a further response to the interrogatory. *Id.* The Court noted that "Plaintiffs are well aware of their burden to prove that marking occurred as required by Section 287; if they believe the Miller declaration is sufficient to meet their burden, that is their choice." *Id.*

Snap-On's motion with respect to this interrogatory will be denied for similar reasons. Whatever gaps may exist in Miller's declaration, Plaintiffs may elect to stand on the response they have given. Furthermore, as in the related case, here Plaintiffs have produced additional documents beyond the Miller declaration which are relevant to the question of marking, and Snap-On does not adequately explain why these documents, considered alongside the declaration, are insufficient. *Id.* (denying motion to compel because "[the defendant] did not explain whether the numerous documents referenced in this response fill in this possible gap left by Miller's declaration") (internal citation omitted).

Snap-On claims that its interrogatory is "a little different" from the one the Court recently addressed. (Docket #193 at 10). Snap-On argues that it needs to know not only on what grounds Plaintiffs claim that marking was occurring, but also any information Plaintiffs have showing that they knew that their licensees were *not* marking products. But this question, too, can be answered by Plaintiffs' existing response. If Snap-On believes that the Miller declaration and other documents Plaintiffs produced are insufficient to establish that marking occurred, or that they establish that Plaintiffs knew that marking was not occurring, these are inferences Snap-On may argue from the facts.

Further, to the extent Snap-On desires Plaintiffs to supplement their response by stating that "this is all we have on the matter," *see id.* at 11, this too is adequately covered elsewhere. Federal Rule of Civil Procedure 26(e) requires a party who answers an interrogatory to supplement its response in a timely manner with new or corrective information. Fed. R. Civ. P. 26(e)(1)(A). This Rule ensures that parties do not play hide-the-ball with relevant facts. It also conforms with the paradigm of the Federal Rules generally, which is to avoid trial by ambush by facilitating early and ongoing factual disclosure to the fullest extent practicable. *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95 C 0673, 1996 WL 680243, at *8 (N.D. Ill. Nov. 21, 1996); *Macaulay v. Anas*, 321 F.3d 45, 50 (1st Cir. 2003). If Plaintiffs make strategically late supplementation of previously undisclosed facts or documents related to marking, Snap-On may have a claim that such facts and documents should not be considered by the Court or admitted at trial. *See Holiday Inn,*

*Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir. 1977). Because the Rules already require parties to disclose all relevant material and supplement their disclosures as necessary, it is duplicative and unnecessary to require Plaintiffs to affirmatively state that they have nothing more to disclose.

### 2.3 Commercial Embodiments

Finally, Snap-On raises Common Interrogatory No. 5, which asks Plaintiffs to identify "any and all Alleged Embodying Products(s) (by model designation, product name, trademark, logo, part number, and/or other designations), explaining via claim chart or equivalent precisely how the Alleged Embodying Product(s) meets each limitation of each claim of the Patents-in-Suit." (Docket #159-5 at 16). Plaintiffs' response consists of several lists of its products and its sales data. Snap-On argues that such documents are not responsive as they are not consistent with each other and therefore do not represent a definitive list of the universe of claimed embodiments.[1]

Plaintiffs respond that the product lists and sales data has equipped Snap-On with all the information it requires. (Docket #174 at 16). Snap-On maintains, however, that it is unsure as to whether the products listed

---

[1] In its motion, Snap-On also argued that these documents are not fully responsive as they do not tie each product to the limitations of the claims of the patents-in-suit. In this regard, Snap-On believes that there are holes in Plaintiffs' evidence about whether certain products—especially early products—qualify as commercial embodiments, and it is therefore entitled to know not only what products are at issue, but why Plaintiffs believe that they qualify as embodiments. However, Snap-On admits that its meet-and-confer efforts did not adequately cover this issue, and its has withdrawn the motion to compel on this point. (Docket #193 at 13–14).

represent all the products Plaintiffs might claim as embodiments. *See* (Docket #193 at 13 ("Snap-on has no indication which of the four lists produced by Plaintiffs to date actually identifies those products Plaintiffs intend to call commercial embodiments or whether the listed products are the only commercial embodiments upon which Plaintiffs intend to rely.")). It also believes that some of the products listed cannot possibly be claimed as embodiments, since they post-date the relevant timeframes or are unrelated to the patents-in-suit. *See id.*

This is a reprise of the same fears that motivated Snap-On's request as to the marking interrogatory. Here again, Snap-on's demand is duplicative and unnecessary. The Federal Rules require Plaintiffs offer fulsome responses to discovery requests and to timely supplement their responses if needed. *See* Fed. R. Civ. P. 33(b); *id.* 26(e). Plaintiffs need not affirmatively state that they have no more products to identify, since their response, against the backdrop of Rule 26(e), says this already. And, of course, both sides and their counsel are well aware of the potential repercussions for untimely supplementation.

Furthermore, if Snap-On believes that Plaintiffs should not have included certain items on their lists, this is a substantive dispute not fit for resolution on a motion to compel. Plaintiffs' answer is what it is, and the parties can argue elsewhere the legal merits of the contentions underlying their answer. Put simply, a belief that a discovery response does not support a legal contention does not render the response itself incomplete. *See Invacare*, 2005 WL 1750271, at *4. As a result, there is nothing for the Court to compel.

represent all the products Plaintiffs might claim as embodiments. *See* (Docket #193 at 13 ("Snap-on has no indication which of the four lists produced by Plaintiffs to date actually identifies those products Plaintiffs intend to call commercial embodiments or whether the listed products are the only commercial embodiments upon which Plaintiffs intend to rely.")). It also believes that some of the products listed cannot possibly be claimed as embodiments, since they post-date the relevant timeframes or are unrelated to the patents-in-suit. *See id.*

This is a reprise of the same fears that motivated Snap-On's request as to the marking interrogatory. Here again, Snap-on's demand is duplicative and unnecessary. The Federal Rules require Plaintiffs offer fulsome responses to discovery requests and to timely supplement their responses if needed. *See* Fed. R. Civ. P. 33(b); *id.* 26(e). Plaintiffs need not affirmatively state that they have no more products to identify, since their response, against the backdrop of Rule 26(e), says this already. And, of course, both sides and their counsel are well aware of the potential repercussions for untimely supplementation.

Furthermore, if Snap-On believes that Plaintiffs should not have included certain items on their lists, this is a substantive dispute not fit for resolution on a motion to compel. Plaintiffs' answer is what it is, and the parties can argue elsewhere the legal merits of the contentions underlying their answer. Put simply, a belief that a discovery response does not support a legal contention does not render the response itself incomplete. *See Invacare*, 2005 WL 1750271, at *4. As a result, there is nothing for the Court to compel.

3. **CONCLUSION**

For the reasons stated above, the Court finds that Snap-On's motion to compel must largely be denied. However, Plaintiffs shall supplement their response to Common Interrogatory No. 2 as explained above within seven (7) days of this Order.

Accordingly,

**IT IS ORDERED** that Defendant Snap-On Incorporated's motion to compel (Docket #156) be and the same is hereby **GRANTED in part** and **DENIED in part** as stated herein;

**IT IS FURTHER ORDERED** that Plaintiffs shall supplement their response to Common Interrogatory No. 2, consistent with this Order, no later than **seven (7) days** from the date of this Order; and

**IT IS FURTHER ORDERED** that the parties' motions for leave to restrict documents filed in connection with the motion to compel (Docket #155, #173, and #192) be and the same are hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 24th day of July, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge