UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SNAP-ON, INCORPORATED,<br><br>Defendant. | Case No.: 2:14-cv-01296-JPS |

**PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE THE OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERT DR. QUINN HORN UNDER *DAUBERT* AND FEDERAL RULE OF EVIDENCE 702**

**I.    INTRODUCTION**

Pursuant to the standards set forth in *Daubert v. Merrill Dow Pharmas, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702, Plaintiffs hereby move to exclude certain opinions and testimony of Defendant's proffered expert Dr. Quinn Horn. Specifically, Plaintiffs respectfully request that the Court (1) strike Section V.A.(12) and related paragraphs 441-446 of Dr. Horn's Opening Report discussing invalidity based on a combination of Saft cell prior art references, (2) preclude Dr. Horn from testifying at trial and/or relying on opinions that are inconsistent with the Court's summary judgment and claim construction rulings, (3) exclude Dr. Horn's Rebuttal Report except for portions discussing the adequacy of Dr. Eshani's testing, (4) exclude Dr. Horn's factual narrative in his Opening Report, and (5) preclude Dr. Horn from testifying regarding secondary considerations of obviousness.

Dr. Horn has proffered two reports in the instant action. Portions of both of these reports should be excluded and Dr. Horn should be precluded from testifying about the excluded contents thereof.

First, Section V.A.(12) and related paragraphs 441-446 of Dr. Horn's Opening Report—which discuss invalidity based on a combination of Saft cell prior art references—should be excluded because, by Dr. Horn's own admission, he has never conducted a single test on any Saft cells, let alone the requisite constant current discharge test. Instead of conducting his own testing, Dr. Horn purports to rely on historical testing done by Milwaukee Tool—testing that he fails to describe, explain the parameters of, or demonstrate even involved constant current discharge testing to assess compliance with the 20 Amp Limitation. Dr. Horn did not supervise these tests and, in essence, is pulling the results out of thin air in an effort to work backward to support his claim that there is invalidating prior art. Reliance on these tests renders Dr. Horn's opinions on whether a combination of references could have met the 20 Amp Limitation[1] inherently unreliable and unhelpful to the jury.

Second, portions of Dr. Horn's Rebuttal Report dealing with non-infringement due to purported failure of Snap-on tools to satisfy the 20 Amp Limitation should be excluded because Dr. Horn admits he has never conducted the very test the Court held was necessary to determine whether a given tool satisfied the 20 Amp Limitation. Indeed, Dr. Horn

---

[1] The "20 Amp Limitation" refers to the following claim language in the patents-in-suit: "the battery cells being capable of producing an average [battery pack] discharge current greater than or equal to approximately 20 amps." The bracketed language is language included in claim 1 of the '173 Patent, which does not appear in the claims of the '290 and '510 Patents.

spends much of his Rebuttal Report criticizing Plaintiffs' expert's (Dr. Ehsani) reliance on the testing protocol endorsed by the Court while ignoring the Court's claim construction and summary judgment rulings. Then, Dr. Horn relies on test results he never conducted and parrots those results in an effort to bolster his conclusion. This is improper and warrants the exclusion of the entirety of Dr. Horn's Rebuttal Report except to the extent the Rebuttal Report discusses adequacy of Dr. Eshani's testing.

Third, Dr. Horn's factual narrative in his Opening Report should be stricken as it is improper factual summary under the guise of expert testimony and, thus, is unhelpful to the trier of fact.

Finally, Dr. Horn should be precluded from testifying at trial regarding secondary considerations of obviousness because he admitted at his deposition that he did not provide any opinions regarding secondary considerations in his reports. As such, permitting Dr. Horn to testify regarding secondary considerations would violate Rule 26's mandate of disclosure of all expert opinions.

## II. RELEVANT BACKGROUND

Dr. Horn is a principal engineer at Exponent. On July 18, 2017, Defendants served the Invalidity Expert Report of Dr. Quinn Horn. *See* Ex. A (the "Opening Report").[2] On August 17, 2017, Defendants served the Rebuttal Report of Dr. Quinn Horn. *See* Ex. B (the "Rebuttal Report").

In his Opening Report, Dr. Horn opined that certain prior art, including lithium-ion battery cells marketed by Saft and related information (referred to herein as the "Saft

---

[2] Unless otherwise stated all "Ex. __" citations refer to the exhibits filed contemporaneously herewith. Unless otherwise stated, the Opening and Rebuttal Reports attached as exhibits do not include exhibits thereto.

Battery Cells"), invalidate the patents-in-suit in combination with other alleged prior art references. *See* Ex. A ¶¶ 145-60. Dr. Horn also opined that the Saft Battery Cells meet the 20 Amp Limitation of the patents-in-suit despite the fact that Dr. Horn never conducted any testing of the cells, alone or in a battery pack. *See id.* ¶¶ 21, 449(2).

In his Rebuttal Report, Dr. Horn criticizes the constant current discharge test used by Plaintiffs' expert Dr. Ehsani. The Court has now concluded that Dr. Ehsani's protocol was the appropriate test to use for assessing compliance with the 20 Amp Limitation. Dr. Horn never conducted any tests of his own, rather, he purports to criticize Dr. Ehsani's testing based on a rejected claim construction argument pertaining to the 20 Amp Limitation and data from tests (disclosed in Appendix C to his Rebuttal Report) that were not performed by him or at his request or direction and that did not involve testing for the 20 Amp Limiation.

## III. ARGUMENT

### A. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of testimony by expert witnesses at trial. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 requires district courts to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

District courts employ a two-step inquiry when determining whether expert testimony is admissible. *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F. Supp. 2d 908, 926-27 (W.D. Wisc. 2007) (citing *United States v. Hall*, 165 F.3d 1095, 1101-02 (7th Cir. 1999)). "First, the court examines the expert's testimony to determine whether it is reliable, that is, whether it is grounded in scientific evidence or in subjective belief or unsupported speculation." *Southwire*, 528 F. Supp. 2d at 927. "Second, the Court must determine whether the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue." *Id.*; *see also Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893-94 (7th Cir. 2011).

The Seventh Circuit has held that an expert who offers only conclusory assertions without an explanation as to how that expert come to those conclusions is unreliable and inadmissible under *Daubert*. *See McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 652, 658 (7th Cir. 1998) ("We have said before, and reiterate, that 'an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'"). An expert cannot demonstrate opinions are reliable and supported merely by putting an "expert" gloss on conclusory assertions. *See Zenith Elecs. Co. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 418 (7th Cir. 2005).

Where, as here, an expert proffers opinions that contravene the Court's claim construction order, such opinions fail to satisfy the standards for admissible expert evidence. *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012) ("[E]xpert testimony [that] ignored the court's claim construction 'is irrelevant to the question of infringement' and is inadmissible under *Daubert*.").

### B. Dr. Horn's Invalidity Opinion Based on the Saft Battery Cell References Should Be Stricken.

It is well-established that an expert's opinion must be supported by sufficient facts and data to be admissible. Dr. Horn's opinions regarding invalidity based on Saft Battery Cell References fail to satisfy this standard.

With respect to the Saft Battery Cell References, Dr. Horn opines in essence that if those cells had been tested according to the constant current discharge test, the cells would have met the 20 Amp Limitation. *See* Ex. A ¶¶ 159-60, 441-46. To support this opinion, he relies on historical tests from Milwaukee Tool, a third-party (Metabo), and Dr. Ehsani's testing. *See* Ex. A, ¶¶ 157-59; Ex. C (Excerpts from the Deposition Transcript from the September 19, 2017 Deposition of Q. Horn) at 224:4-19. Specifically, Dr. Horn cites to two documents—a chart of test results (Ex. D hereto) and an August 16, 2002 email from Diethard Fohr (Ex. E hereto). *See* Ex. A ¶¶ 157-59. However, these documents merely include a high-level overview of testing conducted on the Saft Cells, but lack necessary details to determine parameters of testing in order to assess the relevance of any testing on the Saft Cells to the 20 Amp Limitation. Exhibits D and E are devoid of any description sufficient to assess the ability for Saft Battery Cells to meet the 20 Amp Limitation. In fact, Ex. D states that as of November 2003, Saft Cells only "up 15 amps good performance," implying that about 15 Amps the Saft Cells did not have good performance, which in turn demonstrates that the Saft Cells could ***not*** satisfy the 20 Amp Limitation. *See* Ex. D at 2.

Further, these tests were not conducted at Dr. Horn's direction or under his supervision, and, thus there is no way to test their reliability. Indeed, Dr. Horn does not

even claim that the historical tests were performed under the proper 20 Amp Limitation procedure. Instead, he relies on these test results without any explanation of the testing.

Notably absent from Dr. Horn's discussion of allegedly invalidating prior art is any discussion of a proper scientific method to reach his ultimate conclusion. Instead, it appears Dr. Horn starts with the conclusion that the Saft Battery Cell references must be invalidating prior art and that a Saft Battery Cell satisfies the 20 Amp Limitation and then works backwards (wading through tests he never conducted that are not necessarily relevant to the 20 Amp Limitation) to support his desired conclusion. *See, e.g.*, Ex. A ¶¶ 145-67.

Dr. Horn's failure to explain his methodology, the underlying methodology of the tests conducted on the Saft Cells, and demonstrate the reliability of his methodology warrants exclusion of his opinions regarding the Saft Battery Cell. *See Mitchell v. Gencorp Inc.*, 165 F.3d 778, 783 (10th Cir. 1999) (emphasizing an expert cannot merely "look at pictures and [other evidence] and arrive" at an ultimate conclusion and provide assurances of reliability); *Clark v. Takata Corp.*, 192 F.3d 750, 758-59 (7th Cir. 1999) (affirming exclusion of expert opinion that was not based on independent scientific testing and insufficient disclosure of methodology to evaluate the propriety of expert's conclusions).

Further, Dr. Horn's reliance on the Saft Battery Cell prior art references is improper because the prior art challenges are both (a) sufficiently not specific that they do not apply a scientific method and are unreliable, and (b) sufficiently not specific that they are not helpful to the trier of fact. *See United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (expert's failure to provide sufficient basis for ultimate conclusion warrants exclusion

under Rule 702). Indeed, Dr. Horn fails to provide any foundational information regarding the Saft Battery Cell prior art. This leaves the Court and Plaintiffs to speculate as to the foundation that underlies Dr. Horn's opinion that these prior art references satisfy the 20 Amp Limitation. Absent disclosure of the foundational information for testing conducted on the Saft Battery Cells, Plaintiffs cannot analyze whether the tests are based on sufficient facts or data, are the product of reliable principles and methods, or are reliably applied to the facts of this case. Thus, Dr. Horn's opinions regarding the Saft Battery Cell and related prior art should be excluded. *See* Fed. R. Evid. 702; *see also Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1054 (Fed. Cir. 2001) ("Without knowing [foundations of a test], a court cannot evaluate whether the [tests result] is probative, and it would be unfair to render an expert's opinion immune to challenge because its methodology is hidden in [testing data].").

### C. Dr. Horn's Rebuttal Report Should Be Excluded to the Extent He Opines on Compliance with the 20 Amp Limitation.

In his Rebuttal Report, Dr. Horn claims that Snap-on tools fail to satisfy the 20 Amp Limitation. However, notably absent from Dr. Horn's Report is any testing data sufficient to support this assertion. Instead, Dr. Horn takes aim at the analysis of Plaintiffs' expert, Dr. Ehsani, and proffering opinions which are irrelevant and unhelpful to the trier of fact, particularly in light of the Court's summary judgment and claim construction order. Accordingly, aside from Dr. Horn's limited analysis of the sufficiency of Dr. Eshani's testing, Dr. Horn's Rebuttal Report should be excluded.

1. **Dr. Horn's Rebuttal Report Opinions Which Contravene the Court's Claim Construction and Summary Judgment Rulings Should Be Stricken.**

In his Rebuttal Report, Dr. Horn offers numerous opinions, which fail to take into account—and, indeed, expressly ignore—the Court's claim construction and summary judgment ruling.

First, Dr. Horn's Rebuttal Report includes numerous opinions regarding the "typical" operation of Snap-on tools and purported operation of the tools "in an intermittent manner." *See* Ex. B ¶¶ 110-27. For instance, Dr. Horn's fourth opinion is premised entirely on criticism of Dr. Ehsani's purported error in testing the battery packs at issue "under unusual conditions that are not representative of any use of the battery pack and tool, let along normal use of the battery pack and tool." *Id.* at 5.

However, such criticism and opinions regarding the "typical" operation of Snap-on tools are no longer relevant under the Court's claim construction of the 20 Amp Limitation. *See* D.E. 232 (Order) at 14-27 (adopting Plaintiffs' proposed construction for the 20 Amp Limitation: "the battery cells, when configured together in a battery pack, are capable of producing reasonably close to 20 amps of discharge current or greater over the course of delivering their entire rated capacity"). Indeed, the Court has already held that the typical operation of a tool is irrelevant to assessing whether the 20 Amp Limitation of the patents-in-suit is satisfied. *See id.* at 18 ("There is no question that, putting aside matters of practicality, a person of ordinary skill in the art would comprehend the meaning of the 20 Amp Limitation [because] [s]uch a person would understand the limitation describes the capability, not the potential real-world use, of the invention."); *id.* at 26 (emphasizing that "Snap-on's concerns with how long the battery is used or its specific application are unavailing").

Dr. Horn was aware of the Court's adopted claim construction because it was presented by Plaintiffs before Dr. Horn served his expert report, and had been adopted by Judge Callahan's December 2012 decision and several subsequent decisions by the United States Patent and Trademark Office. Thus, Dr. Horn could have tested Snap-on tools under Plaintiffs' proposed construction of the 20A Limitation but elected not to do so. Dr. Horn's now irrelevant opinions, which disregard the ultimate claim construction adopted by the Court, should be excluded. *See, e.g.*, *MarcTec, LLC*, 664 F.3d at 913 ("[E]xpert testimony [that] ignored the court's claim construction 'is irrelevant to the question of infringement' and is inadmissible under *Daubert*."); *Kraft Food Grps. Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 632, 635 (D. Del. 2017) (granting motion to strike expert testimony regarding infringement "[b]ecause expert testimony that is inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact"); *Insight Tech., Inc. v. SureFire, LLC*, Civil No. 04-cv-74-JD, 2009 WL 3242557, at *1-2 (D.N.H. 2009) (granting patentee's motion *in limine* to preclude accused infringer from eliciting or proffering testimony regarding a certain non-infringement theory since the theory was contrary to the court's claim construction"); *ICU Med., Inc. v. Alaris Med. Sys.*, No. SA CV 04-00689 MRP(VBKx), 2007 WL 8081360, at *12-13 (C.D. Cal. Jan. 22, 2007) (holding court's claim constructions are controlling and cannot be contradicted by experts under the guise of "explain[ing]" or "provid[ing] context" and that expert's opinions based on contrary claim construction do not raise triable issues of fact on summary judgment).

Second, Dr. Horn's Rebuttal Report contains extensive criticism of the testing performed by Dr. Ehsani under 1C to determine the entire rated capacity instead of the manufacturer's stated estimated rate capacity. *See* Ex. B ¶¶ 46, 62. However, Dr. Horn's

criticisms regarding the 1C entire rated capacity and ultimate opinion that such testing creates indefiniteness are now irrelevant and unhelpful to the jury because the Court has determined that Dr. Ehsani's 1C entire rated capacity test is part of the proper way to test for compliance with the 20 Amp Limitation. *See* D.E. 243 (Order) at 16-17 & n.4 (holding that the proper test for assessing compliance with the 20 Amp Limitation is the constant current test, which the Court noted was the test applied by Dr. Ehsani and which involved testing to ensure that "the pack is discharged at an estimated 1C rate based on the nominal capacity of the pack to establish rated capacity").

Accordingly, Dr. Horn's opinions and narrative which contravene and ignore the Court's claim construction and summary judgment rulings are improper and should be stricken from his Rebuttal Report.

> 2. **Dr. Horn's Opinions Regarding the 20 Amp Limitation Should Be Excluded Because They are Based on Unreliable Methodology.**

Dr. Horn's Rebuttal Report should be excluded to the extent it contains opinions regarding the purported inability of Snap-on products to meet the 20 Amp Limitation because it is not based on reliable methodology or data. Indeed, Dr. Horn admits he never conducted any test on Snap-on tools—let alone using the requisite constant current discharge test. *See* Ex. C at 112:14-19 ("Q. Your report doesn't contain any results you conducted from testing, does it? A. It does not. Q. Did you conduct any testing in conducting your analysis? A. I did not."). Absent any testing done by Dr. Horn, it is an illogical leap to reach the conclusion that the Snap-on tools do not satisfy the 20 Amp Limitation—an opinion Dr. Horn purports to offer in his Rebuttal Report. *See* Ex. B ¶¶ 110-127. Indeed, because Dr. Horn failed to conduct any testing, there is no basis on which to judge the methodology he applied to reach his ultimate conclusion. As such, his

opinions regarding the ability of Snap-on tools to satisfy the 20 Amp Limitation should be excluded. *See generally Takata Corp.*, 192 F.3d at 758-59; *Novartis*, 271 F.3d at 1054.

> **D.** **Dr. Horn's Reliance on Testing Data He Played No Role in Creating Is Improper and Provides an Independent Basis for Exclusion of Section XII of His Rebuttal Report.**

To support his opinion that there is a design modification for Snap-on that would avoid infringement under Dr. Eshani's test, Dr. Horn cites to and relies exclusively on testing conducted by STL Technology Co. ("STL")—a third-party battery supplier to Snap-on. *See* Ex. B § XII; *see also* Ex. B, App'x C.[3] Dr. Horn concedes that he has neither conducted any of the testing described in Appendix C to his Rebuttal Report, *see* Ex. C at 182:10-16; 226:4-9, nor provided any direction regarding the testing done by STL that he relies upon, *see id.* at 205:24-206:10. Dr. Horn does nothing more than cite to STL's specification revision and testing results and parrot the contents thereof. However, merely parroting the work of another does not qualify as expert opinion. *See King-Ind. Forge Inc. v. Millennium Forge Inc.*, No. 1:07-cv-00341-SEB-DML, 2009 WL 3187685, at *2 (S.D. Ind. Sep. 29, 2009). Indeed, opinion testimony based on materials or summaries supplied solely by counsel and without either Dr. Horn's participation or verification (such as Appendix C containing the STL testing), is subject to exclusion. *See Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726-27 (E.D. Wisc. 2008) (excluding expert opinion based on expert's blind reliance on data without conducting independent verification); *see also MDG Int'l, Inc. v. Australian Gold, Inc.*, No. 1:07-cv-1096-SEB-TAB, 2009 WL 1916728, at *5 (S.D. Ind. June 29, 2009) (excluding expert based on, *inter alia*, expert's failure to independently verify data provided to him). Dr.

---

[3] "Exhibit C" to Dr. Horn's Rebuttal Report is referred to herein as "Appendix C."

Horn has not done any "expert" analysis on the STL test results. Instead, he accepts the STL results at face value, parrots them, and calls this a non-infringing modification. This falls far short of *Daubert*'s demand for reliable expert opinion based on sufficient facts and data. As such, the content of Section XII should be stricken from Dr. Horn's Rebuttal Report.

    **E.    Dr. Horn's Factual Narrative Should Be Excluded As Unhelpful to the Trier of Fact.**

"Expert" testimony regarding factual background is improper. Accordingly, Dr. Horn's Opening Report should be excluded to the extent it consist of improper factual narrative and Dr. Horn should be precluded from offering factual narrative at trial.

        **1.    Expert Factual Narrative is Prohibited.**

It is well-established that expert testimony should be excluded where an expert merely provides "a narrative of the case, which a juror is equally capable of constructing" from documentary and lay witness testimony. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004); *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012) (rejecting summary testimony of a factual nature from expert and collecting cases regarding same); *see also Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008) (precluding expert from "offering a recitation of the facts" because "an expert's factual narrative is unnecessary"). Indeed, permitting expert gloss on a factual recitation, vitiates the very purpose of *Daubert*—to ensure that testimony will be reliable and helpful to the jurors—and violates Rule 702's requirement that the evidence presented assist the trier of fact. *See Kia v. Imaging Sci. Int'l*, Civil Action No. 08–5611, 2010 WL 3431745, at *5 (E.D. Pa. 2010) (it is improper to "filter fact evidence and testimony through [its] expert merely to lend credence to the

same" or to use an expert to "repeat or summarize what the jury independently has the ability to understand").

### 2. Dr. Horn's Factual Narrative Regarding Snap-on Tools Should Be Excluded.

Dr. Horn's Opening Report contains extensive factual narrative regarding Moli Battery Cells and development of the same. *See* Ex. A ¶¶ 168-234, 293-99, 328-29. But, there is nothing "expert" about Dr. Horn's recitation of facts regarding the development of Moli Battery Cells—no expert opinion is necessary on development of these cells, which is gleaned from documentary evidence. As such, admission of these factual statements and permitting testimony regarding the same would only likely confuse the jury into putting undue emphasis on the facts because they came from the mouth of an expert witness and mislead the jury into incorrectly believing that Moli conceived the claim inventions. This is improper and warrants exclusion of the factual narrative in Dr. Horn's Opening Report. *See generally Javier v. City of Milwaukee*, Case No. 07-C-204, 2010 WL 11492266, at *6 (E.D. Wisc. July 27, 2010) (excluding expert testimony that amounted to factual narrative that would create risk of unduly influencing jury).

### F. Dr. Horn's Discussion of Secondary Considerations Should Be Excluded.

In his Opening Report, Dr. Horn sets forth the legal standard governing obviousness, including a discussion of the secondary considerations of obviousness. *See* Ex. A, ¶¶ 354, 357. However, during his deposition, Dr. Horn admitted that he had not offered any opinion regarding secondary considerations of obviousness. *See* Ex. C at 178:10-180:24. Accordingly, because Dr. Horn admits he did not disclose any written opinion regarding secondary considerations of obviousness, he should be precluded from offering testimony regarding the secondary considerations of obviousness—commercial

success, long-felt but unsolved needs, failure of others, and unexpected results—at trial. *See* Fed. R. Civ. P. 26.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Exclude and (1) strike Section V.A.(12) and related paragraphs 441-446 of Dr. Horn's Opening Report discussing invalidity based on a combination of Saft cell prior art references, (2) preclude Dr. Horn from testifying at trial and/or relying on opinions that are inconsistent with the Court's summary judgment and claim construction rulings, (3) exclude Dr. Horn's Rebuttal Report except for the portions discussing the adequacy of Dr. Eshani's testing and preclude Dr. Horn from testifying regarding the excluded content, (4) exclude Dr. Horn's factual narrative in his Opening Report, and (5) preclude testimony from Dr. Horn regarding secondary considerations.

Dated: October 2, 2017                    Respectfully submitted,

*/s/ James N. Law*
Scott W. Hansen
shansen@reinhartlaw.com
David Hanson
dhanson@reinhartlaw.com
Paul Stockhausen
pstockhausen@reinhartlaw.com
Jessica H. Polakowski
jpolakowski@reinhartlaw.com
James N. Law
jlaw@reinhartlaw.com
Monica A. Mark
mmark@reinhartlaw.com
REINHART BOERNER VAN DEUREN, S.C.
1000 N. Water Street, Suite 1700
Milwaukee, WI 53202
Phone: (414) 298-1000
Fax: (414) 298-8097

Jason C. White
Illinois Bar No. 6238352
jwhite@morganlewis.com
Scott D. Sherwin
scott.sherwin@morganlewis.com
Sanjay Murthy
smurthy@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Suite 500
Chicago, Illinois 60601
Phone: (312) 324-1775
Fax: (312) 324-1001

*Attorneys for Plaintiffs Milwaukee Electric Tool Corporation; Metco Battery Technologies, LLC; AC (Macao Commercial Offshore) Limited; and Techtronic Industries Co. Ltd.*