IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No: 2-14-CV-01296 |
| SNAP-ON INCORPORATED, | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4**

**PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 1: TO EXCLUDE EVIDENCE OF THE OUTCOME OF THE PTO'S POST-ISSUANCE PROCEEDINGS**

Milwaukee has already addressed most of Snap-on's arguments in Milwaukee's Motion *in limine* No. 1, which asks the Court to admit the PTO proceedings. (ECF 238 "Milwaukee Mot.") Milwaukee's Motion thoroughly explains why the PTO decisions are highly relevant to validity and other issues, why any potential jury confusion is minimal and can be cured with jury instructions, and why Snap-on will not suffer unfair prejudice. To avoid repetition, Milwaukee will refer back to its motion where applicable.

### A. The Cases Snap-On Relies On Do Not Support Excluding The PTO Decisions

Snap-on cites a number of cases that excluded PTO proceedings. The majority of these cases, however, excluded ongoing proceedings or non-dispositive decisions, which have "minimal (if any) probative value." *See Andover Healthcare, Inc. v. 3M Co.*, No. 13-cv-843, 2016 WL 6404111, at *2 (D. Del. Oct. 27, 2016) (noting the non-institution decision "is not a final decision on validity"); *Wis. Alumni Research Found v. Apple, Inc.*, 135 F. Supp. 3d 865, 873 (W.D. Wis. 2015) (finding unfair prejudice and jury confusion outweighed any probative value of a "non-dispositive IPR proceeding"); *ABS Global, Inc. v. Inguran, LLC*, No. 14-cv-503, 2016 WL 4009987, at *3 (W.D. Wis. July 25, 2016) (noting that the "IPR proceedings have yet to be resolved" and that the two IPR proceedings related to patents that had been stayed in the case); *Interdigital Commc'ns Inc. v. Nokia Corp.*, No. 13-cv-10, 2014 WL 8104167, at *1 (D. Del. Sept. 19, 2014) (noting the IPR denial was not a "decision on the merits" and defendants "were not a party to the IPR").

Indeed, in *Wis. Alumni*, the court noted that the non-dispositive decision "did *not* conclude that the patent was either 'valid' or 'invalid.' In other words, there was no explicit, or even implicit, decision on the validity of the patent as there is during the initial prosecution of the

patent." 135 F. Supp. 3d at 873 (emphasis in original). Unlike those cases, in this case all of the decisions are final and the PTO made an explicit decision upholding the validity of the patents and are therefore highly probative of validity.

The other cases Snap-on cites, *Magna, Personalized, Apple*, and *Tesco*, all involve a **defendant** attempting to support its **higher** clear and convincing burden for invalidity with a PTO decision that was decided under a **lower** burden of proof. *See Magna Elecs., Inc. v. TRW Automotive Holdings Corp.*, No. 12-cv-654, 2016 WL 4238769, at *2 (W.D. Mich. Jan. 28, 2016); *Personalized User Model, LLP v. Google Inc.*, No. 09-cv-525, 2014 WL 807736, at *3 (D. Del. Feb. 27, 2014); *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2016 WL 824711, at *2 (N.D. Cal. Mar. 2, 2016); *Tesco Corp. v. Weatherford Int'l, Inc.*, 750 F. Supp. 2d 780, 794 (S.D. Tex. 2010) ("Unlike in reexaminations, those challenging the validity of a patent in litigation must overcome a presumption of validity by proving by clear and convincing evidence that a patent is invalid.").[1] To the contrary, Snap-on has already failed to prove invalidity at the PTO under a **lower** burden than Snap-on faces now.

Accordingly, Snap-on's cases are inapposite and do not support excluding the final PTO decisions. Indeed, courts have rejected defendant's attempts to exclude final PTO decisions. *See Oracle Am., Inc. v. Google, Inc.*, No. 10-cv-03561, 2012 WL 1189898, *3 (N.D. Cal. Jan. 4, 2012) (denying motion to exclude finished reexamination because "the examiners have gone to the end of their process" and "[i]t would be wrong to conceal this important information from the jury"); *L.C. Eldridge Sales Co. v. Azen Mfg. Pte., Ltd.*, No. 11-cv-599, 2013 WL 7964028, at *3

---

[1] Snap-on also cites *Morely v. Square, Inc.*, No. 14-cv-172, 2016 WL 2733114, at *3 (E.D. Mo. May 11, 2016) where the court excluded the defendant from using final reexamination decisions. However, the defendant was using the final reexaminations to rebut trade secret allegations **unrelated to validity** and the court also noted that the PTO proceedings were "still in progress." *Id.*

(E.D. Tex. Nov. 14, 2013) (denying defendants' motion to exclude final reexamination determination).

## B. The PTO Decisions Are Highly Relevant to Validity, Damages, and Willfulness

Snap-on argues that the PTO decisions are irrelevant because it is estopped from presenting prior art that were considered or ruled upon during the IPRs. (Pl. Mot. at 1.) However, as explained in Milwaukee's Motion, Snap-on still intends to rely on prior art that was considered by the PTO. (Milwaukee Mot. at 3-4.) For example, the Saft prior art that Snap-on relies on was presented in the Hilti/Snap-on IPR petition. Although the PTO did not institute review on this reference, it did consider the reference and found it no better than the other instituted prior art.

Similarly, Snap-on intends to rely on alleged Moli prior art and Moli videos that were presented to the PTO. As shown below, Snap-on embedded the Moli videos directly into their oral argument slides before the PTO. (*See* Ex. 1 at 23.) This is the exact same video Snap-on intends to rely on at trial.




As illustrated in Snap-on's slide below, the Moli prior art was presented to the PTO during oral argument of the IPRs and to through Dr. von Sacken's IPR declaration (who Snap-on intends to call as a witness at this trial as well). *See, e.g., id.* at 49 (listing Moli cells as "[p]rior art high current lithium cells"); 44-47, 49, 53, and others slides, (all discussing Moli cells).

Based on this Court's rulings, these references are not subject to the Court's IPR estoppel. Although Snap-on is not estopped from raising these references, the Federal Circuit has found, "[i]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered." *Sciele Pharma Inc. v Lupin Ltd.*, 684 F.3d 1253, 1260-61 (Fed. Cir. 2012).

Indeed, in *Andover*, at *2, a case cited by Snap-on, the court excluded a decision not to institute an IPR but noted it would "reevaluate its granting of 3M's motion should 3M argue or attempt to prove that the PTO has never considered the Carl prior art, which 3M asserts as invalidating prior art and which was also prior art on which its (rejected) IPR petition was based." *Andover*, 2016 WL 6404111, at *2. Here, Snap-on is relying on prior art that was rejected in its IPR petitions, which the court in *Andover* indicated would open the door to the use of the PTO's decision denying institution of the IPR. Thus, when weighing the evidence, the jury should know that the PTO has already seen this prior art. *See StoneEagle*, 2015 WL 3824208, at *8-9 (denying motion to exclude decisions not to institute IPRs where the references in the petitions would not be subject to IPR estoppel).

Also, Snap-on's invalidity expert, Dr. Horn, who participated in several of the IPRs, indicates he considered and relied on materials from the re-examinations and from the IPRs. (*See* ECF 239-7, Horn Dep. Tr. at 88:15-18 ("There is a lot of this material [in his report] that's considered here was also considered in the IPR's and the reexaminations."); ECF 209-2, Horn Report ¶ 80 ("In particular, I intend to rely on a number of statements made by the inventors, the patent owner, and the declarants on behalf of the patent owner in the Hitachi reexamination proceedings."); ¶ 88 ("I intend to rely upon statements made in the declarations of MET's expert R. Mark Ehsani . . . found in the record of the IPRs...").) Snap-on should not be permitted to exclude information related to the reexaminations and IPRs while simultaneously advancing

invalidity arguments (such as those presented by its expert, Dr. Horn) that are necessarily based on material from the IPRs and reexaminations.

Additionally, contrary to Snap-on's allegations, the issues before the jury are not "different from the issues decided in the IPRs." (Pl. Mot. at 1.) Snap-on cannot dispute that many of the arguments it will make at trial are the same or at least cumulative of the arguments that the PTO has rejected numerous times. In its motion, Milwaukee identifies specific examples of arguments Snap-on will argue to the jury, which are the exact same arguments Snap-on presented in numerous IPRs. (Milwaukee Mot. at 4-5.) The jury should know that these arguments (along with many others) were considered by the PTO and rejected on multiple occasions.

Furthermore, as explained in Milwaukee's Motion, the PTO decisions are relevant to secondary considerations, willfulness, and damages. (*Id.* at 5-7.) For example, the amount Black and Decker agreed to pay for a license was explicitly contingent on the outcome of the *inter partes* reexaminations. (*Id.* at 6.) Indeed, Snap-on previously argued in the IPRs that it is necessary to consider the *inter partes* reexamination proceeding and the Hitachi Koki settlement in order to properly evaluate the payment structure of the Black & Decker License.

Thus, the PTO decisions are highly probative of validity and a number of other issues.

## C. The PTO Decisions Will Not Confuse the Jury

Snap-on argues that the PTO decisions should be excluded because they involve "different legal standards." (Pl. Mot. at 5.) Snap-on cites the IPR's "reasonable likelihood" standard for instituting review and the "preponderance of the evidence" standard for the final decisions. (*Id.*) However, each of these standards is **lower** than the standard Snap-on must meet at trial. Thus, "the risk of confusion is minimal because a lower threshold of proof is required to show invalidity before the USPTO than is required by Defendants in this Court." *See L.C.*

*Eldridge Sales Co. v. Azen Mfg. Pte., Ltd.*, No. 11-cv-599, 2013 WL 7964028, at *3 (E.D. Tex. Nov. 14, 2013) (denying motion to exclude final reexamination determination). Put another way, the jury will not be confused about its role in assessing validity where Snap-on was unsuccessful in proving the patents are invalid under a lower standard that was applicable in the PTO proceedings.

This is not a situation where the PTO decided not to review the patents at issue. Rather, the PTO heard Snap-on's arguments on the merits and upheld all the patents over those arguments. And it did so using the same claim constructions that this Court has adopted. These are important facts that should not be withheld from the jury, especially since Snap-on has signaled its intent to raise, at trial, arguments similar to those rejected multiple times by the PTO. Despite this, based on its proposed jury instructions, Snap-on also intends to argue to the jury that its evidence is different and therefore its burden of proof is more easily carried. Of course, the only way that Snap-on could even argue that its evidence is new or different is by excluding the underlying PTO's decisions, which demonstrate that its evidence is not. Snap-on's attempt to argue to the jury that it has new evidence, while concealing the fact that the information is in fact not new, is highly prejudicial to Plaintiffs and must be rejected.

Snap-on lists several "possible issues" that it would have to explain to the jury. (Pl. Mot. at 6.) It is unclear, however, why the jury would have to be informed about "the litigation discovery process," "the patent examiners' level of expertise in the art" or "reasons why the patent examiners may have made a mistake." Similarly, the "significance of the PTAB finding a 'reasonable likelihood' of success in showing invalidity" is irrelevant since the PTAB ultimately found the patents-in-suit valid. Snap-on also alleges that it would have to explain "the truth and precision of statements made to the Patent Office." (*Id.* at 6.) Yet, Snap-on does not question the truth of documents, declarations, and other evidence submitted in the PTO proceedings that

Snap-on has confirmed it will rely on. (*See* ECF 209-2, Horn Report at ¶ 17 ("I have adopted statements made by MET and its experts in declarations and other documents provided to the PTO.").) Further, Snap-on is represented by sophisticated counsel and could easily explain these issues to the jury if necessary.

Finally, Snap-on argues that it would have to explain the "possibility and likelihood that the PTAB decisions will be overturned on appeal." (Pl. Mot. at 6.) First, it is undisputed that all of the appeal rights for the reexaminations have been exhausted. Second, the fact that "some" IPRs have appeals pending does not outweigh the substantial probative value of the decisions. *Cf. Morely*, 2016 WL 2733114, at *3 (noting an appeal right was just an "**additional reason** to carefully consider what role those proceedings have in this case"). Furthermore, Snap-on fails to mention the long odds it faces in its appeals of the IPR decisions. Based on recent statistics, the Federal Circuit affirms 76% of PTAB decisions and reverses only 7%. (Ex. 2, PTAB Affirmance Rate at 7.)

Moreover, Snap-on admits that multiple courts have found that jury instructions could eliminate any potential jury confusion and therefore admitted all evidence relating to PTO decisions. (Pl. Mot. at 2.) [2]

### D. The PTO Decisions Will Not Prejudice Snap-on

Snap-on alleges the PTO decisions are prejudicial because they would "taint[] the invalidity issues." (Pl. Mot. at 6.) The fact that the PTO decisions are contrary to Snap-on's invalidity arguments, however, does not mean they are unfairly prejudicial. Indeed, the PTO decisions appear to be "prejudicial to [Snap-on] only because of [their] probative force," but

---

[2] The case Snap-on cites that found jury instructions were not sufficient involved a "non-dispositive" decision not to institute an IPR. *Wis. Alumni*, 135 F. Supp. 3d at 874 (noting the PTO "did *not* conclude that the patent was either 'valid' or 'invalid.'"). As explained in Section A above, this case is distinguishable because, here, the PTO decisions are all final decisions on the merits upholding patentability.

"[d]amning evidence is not inadmissible on that account." *United States v. Bentley*, 825 F.2d 1104, 1108 (7th Cir. 1987).

Indeed, as explained in Section A above, the cases Snap-on relies on for unfair prejudice involve non-dispositive decisions with "minimal (if any) probative value" or defendants attempting to prove a higher invalidity standard with a decision using a lower standard. Here, PTO decisions (1) are all final decisions on the merits, (2) use the same claim construction adopted by this Court, and (3) were decided under a lower burden than Snap-on faces now. Thus, any alleged prejudice is substantially outweighed by the highly probative value of the PTO decisions. *See Oracle*, 2012 WL 1189898, *3 (denying motion to exclude finished reexamination because "the examiners have gone to the end of their process" and "[i]t would be wrong to conceal this important information from the jury"); *StoneEagle*, 2015 WL 3824208, at *8-9 (denying motion to exclude decisions not to institute IPRs over defendants' argument that they were "highly prejudicial").

Accordingly, the Court should deny Snap-on's motion.

9

**PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 2:**
**TO ADMIT MOLI EVIDENCE FOR PURPOSES OF OBVIOUSNESS**

Despite Snap-on's contention it is not challenging the Court's Order on the motion for summary judgment that is precisely what its Motion *in limine* to Admit Moli Evidence for Purposes of Invalidity ("Moli Motion *in limine*") amounts to. Snap-on devotes pages to telling its own story on the development of the Moli cells and packs, claiming there are multiple "genuine issues of fact." *See* Mot., ECF No. 246-1 at 15-18. Even the relief that Snap-on seeks asks for admission of Moli cells and packs as evidence "to allow the jury to decide ***whether [development of a lithium ion battery cell or pack] originated with Moli*** and if so, whether it rendered the patent claims obvious." *Id*. at 19 (emphasis added). This is not an issue for the jury to decide, however, because the Court has already held Milwaukee, not Moli, is the inventor. *See* ECF. No. 232 at 39 ("Accordingly, Moli did not conceive of the invention before Milwaukee, and Snap-On's derivation defense therefore fails.")

Snap-on's Moli Motion *in limine* is a backdoor attempt to introduce its Moli derivation story, contrary to the Court's Order. Snap-on goes so far as to say "[e]ach of the Order's rulings relating to Moli prior art (derivation, anticipation and inequitable conduct) rested on arguments about battery packs and not battery cells," in an attempt to avoid the impact of the Court's ruling. Mot., ECF No. 246-1 at 16. This is false. The Court's Order unequivocally states: "For the reasons already detailed at length in this Order, the Court agrees with Plaintiffs that the ***Moli cells*** – both the ***initial 15A cells and the later-developed cells*** – do not anticipate the subject invention, nor is the invention derived from them." ECF No. 232 at 79 (emphasis added); *see also id*. at 78 n.20 (extending ruling to all later-developed cells). For the reasons set forth in Plaintiffs' Motion *in limine* No. 12 (ECF Nos. 239, 248-2) and set forth below, Snap-On's Moli Motion *in limine* should be denied.

**A.    No Moli Cell or Pack Qualifies as Prior Art Under Section 102(f)**

Plaintiffs do not dispute that prior art, including Section 102(f) prior art, may be used in a Section 103 combination challenging validity.  *See OddzOn Products, Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1401-02 (Fed. Cir. 1997).  A defendant may assert a legal theory of invalidity based on Section 102 or Section 103, among other things.  In order for prior art to be used in combination to determine obviousness under a Section 103 legal theory, however, the alleged prior art must first qualify as prior art under § 102(a), (b), (e), (f), or (g).  *See id.*; *Panduit Corp. v. Dennison Mfg. Co*., 810 F.2d 1561, 1568 (Fed. Cir. 1987) ("Before answering Graham's 'content' inquiry [under the § 103 obviousness analysis], it must be known whether a patent or publication is in the prior art under 35 U.S.C. § 102—a legal question.").  Here, Snap-on is precluded from arguing the Moli cells or packs are Section 102 prior art to support its Section 103 legal theory.

This Court has already held that the Moli cells and packs are not Section 102(f) prior art.  *See* Order, ECF No. 232 at 74 ("The Court's findings as to derivation establish that the later-developed Moli packs were not prior art under Section 102(f)[]"); *id*. at 79 (holding "Plaintiffs' invention was not derived from [15A or later-developed Moli cells] under Section 102(f) or (g)").  Title 35 U.S.C. § 102(f) provides that "[a] person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented."  35 U.S.C. § 102(f).  To show derivation under Section 102(f), the accused infringer must provide clear and convincing evidence that "***both prior conception of the invention*** by another and communication of that conception to the patentee."  *Eaton Corp. v. Rockwell Intern. Corp*., 323 F.3d 1332, 1344 (Fed. Cir. 2003) (emphasis added) (*quoting Gambro Lundia AB v. Baxter Healthcare Corp*., 110 F.3d 1573, 1576 (Fed. Cir. 1997)).  This is so even when using Section 102(f) prior art in a Section 103 combination.  *See OddzOn Products*, 122 F.3d at 1401 (considering whether already

invalidating prior art under 102(f) can be considered "prior art" for determining obviousness); *see also Medicines Co. v. Mylan Inc*., 72 F. Supp. 3d 837, 862 (N.D. Ill. 2014), *rev'd on other grounds by*, 853 F.3d 1296 (Fed. Cir. 2017) (holding evidence not available under Section 103 where not established as Section 102(f) prior art). Plaintiffs moved for summary judgment on both Moli cells and packs. ECF. No. 188 at 27. Snap-on had every opportunity to respond to that motion and understood that the prior art status of the Moli cells and packs was at issue. Indeed, Snap-on's argument in opposition to Plaintiffs' summary judgment motion was premised on the fact that Snap-on intends to rely on both cells and associated battery packs. *See* ECF No. 206-1 at 23. Snap-on also devoted, as part of its inequitable conduct opposition, over two pages to argument that the Moli cells and packs qualified as prior art under Section 102(f) and could be used in a Section 103 obviousness combination. *See* Ex. 3 (excerpt of ECF No. 206-1 at 15-17. This Court granted Plaintiffs' motions for summary judgment on anticipation and inequitable conduct, explicitly dismissing Snap-on's argument as to the later-developed Moli packs or cells. Order, ECF No. 232 at 70 ("According to Snap-On, Plaintiffs failed to disclose those higher-power cells to the PTO although, in Snap-On's view, they qualified as prior art under Section 102(f)—the derivation provision already considered above"), 74. It is procedurally improper to seek reconsideration of a summary judgment ruling via a motion *in limine*. *See, e.g.*, *Sparks v. Susquehanna Cnty*., No. 05–CV–2274, 2009 WL 1598125, at \*2 (M.D.Pa. June 5, 2009) ("The court has already addressed this question in relation to defendants' motion for summary judgment, concluding that the question ... should be left to the jury.... Since a motion *in limine* is not a proper place to reargue a motion for summary judgment, the court will deny [the defendants' motion *in limine* ]."); *NIC Holding Corp. v. Lukoil Pan Ams*., No. 05–CV–9372, 2009 WL 996408, at \*2 (S.D.N.Y. Apr. 14, 2009) (holding that the court "will not indulge [the

moving party's] efforts to revive its unsuccessful summary judgment arguments" in a motion *in limine* ).

**B.      Snap-on's Reliance On "New Evidence" Is Improper**

Snap-on argues it never presented evidence regarding development of Moli cells because the cells were not at issue.  *See, e.g.*, Mot., ECF No. 246-1 at 17 n.4.  This position is belied by Plaintiffs' motion for summary judgment, upon which this Court ruled and which was explicitly premised on Moli cells and packs.  *See, e.g.*, Plaintiffs' Omnibus Motion for Summary Judgment, ECF. No. 188 at 27 ("The Moli Battery Cells are not anticipatory under Sections 102(a) and (b) because the cells fail to disclose all elements of the claimed invention."; "The E-One Prototype Battery Packs also are not anticipatory under Sections 102(a) and (b) because they do not disclose all elements of the claimed invention.")  Moreover, the evidence from Mark Reid and Jan Reimers, upon which Snap-on now attempts to rely, was admittedly available at the time of summary judgment briefing and should have been raised in that briefing.  Mot., ECF. No. 246-1 at 17.[3]  Snap-on's new arguments are a veiled and improper attempt to seek reconsideration of the Court's prior rulings, which should be rejected.

Further, while the depositions of Blair Tweten and Paul Craig occurred after summary judgment briefing, evidence from either was far from unavailable to Snap-on.  The Letters Rogatory for these witnesses were approved in April 2017, long before the summary judgment deadline.  Moreover, Moli – Tweten and Craig's employer – agreed to help Snap-on challenge the Milwaukee Patents, and Moli gave Snap-on access to non-public documents and individuals to assist Snap-on's attempt to mount a validity challenge against the Milwaukee patents.  *See,*

---

[3] Snap-on also relies on some testimony from Dennis Gryzbowski.  Mot., ECF No. 246-1 at 18. However, Mr. Gryzbowski's deposition occurred on May 23, 2017 over a month before the parties submitted opening summary judgment briefs.

*e.g.*, ECF No. 220-1, Ex. 1, Ex. C (SNAPON0080135) (Dr. von Sacken explains to Snap-on's counsel that he "already spent considerable time and incurred expenses at Moli in support of your case). Indeed, Snap-on's counsel had oral and written communications with Mr. Craig and Mr. Tweten dating back to May 2015, although such documents have been redacted on the basis of "work product." *See* Ex. 4 (SNPON0080032). Thus Snap-on has long had access to information available from Moli and its employees and it could have used declarations from these individuals in the summary judgment briefing if the information was important for Snap-on's arguments.

The evidence to which Snap-on now cites is also cumulative of evidence already presented to the Court and does not impact the availability of Moli cells or packs as prior art under Section 102. For example, Moli relies on evidence regarding development of a Renault cell that was "capable of delivering 25 amps." Mot., ECF No. 246-1 at 17. However, this Court already considered evidence of 25A cells that Snap-on claims were designed by Moli. *See* Order, ECF No. 232 at 9 (discussing Nov. 27, 2001 email from J. Reimers and noting "Reimers also reiterated that Moli had more powerful cells. He stated that he had sent Milwaukee 25A cells (which Snap-On says Moli had previously designed) [].") Further, Moli's naming convention for these 25A cells denotes the "25A" is "the maximum current that the cell can be discharged at and still return >70% of the rated capacity." and, just like the Moli 20A cells, are not capable meeting the 20Amp Limitation. *Id*. at 4.

Moreover, the evidence cited by Snap-on does not change whether the Moli cells qualify as Section 102 prior art. First, to qualify as Section 102(f) prior art, Snap-on must show that Milwaukee "did not . . . invent the subject matter sought to be patented." A battery cell alone cannot meet this requirement. *See* Order, ECF No. 232 at 79 ("the cells are merely a component part of the ultimate invention and therefore cannot have disclosed all the limitations of the

14

invention.").  Second, Snap-on's arguments regarding who may have been the "originator" of battery cells is a veiled attempt to reargue derivation using another word.  It does not impact the arguments set forth above and below as to why the cells do not constitute prior art under Section 102(a) or 102(f).

Finally, Snap-on's argument that it should be permitted to introduce Moli packs under a Section 103 obviousness combination because Plaintiffs assert claims that include protection circuitry fails for many of the same reasons.  First, Plaintiffs' assertion of claims including protection circuitry is not a new development.  Plaintiffs have been asserting those claims since the beginning of this case, so Snap-on could have and should have raised this argument during summary judgment briefing.  As such, this is another improper attempt by Snap-on to seek to avoid the impact of the Court's prior rulings.  Second, the Court previously found the Moli packs were not 102(f) prior art because they were not invented by Moli.  The same holds true for Snap-on's new argument that Moli invented the claimed protection circuitry.  Even if Moli employees could somehow be argued to be joint inventors of the protection circuitry, which they are not, joint inventorship, in patents for which Moli assigned all of its rights to Milwaukee, is not a theory that Snap-on has ever asserted in this case.  Moreover, joint inventorship of a component of the claimed invention does not permit Snap-on to argue the Moli packs qualify as Section 102(f) prior art.  *See, e.g., Shatterproof Class Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir.) (noting inventors may use services, ideas and aid of others and not lose right to patent).

### C.     Project 884 Cells and Packs Do Not Qualify as Prior Art Under Section 102(a)

While Snap-on's Moli Motion *in limine* focuses on Section 102(f) prior art, Snap-on also should not be permitted to introduce evidence of the Moli cells or packs under a Section 103

obviousness argument on the basis that the cells or packs qualify as Section 102(a) prior art. First, the Court already ruled the Moli cells are not anticipatory under Section 102(a). *See* Order, ECF No. 232 at 79. Second, all cells or packs post-dating October 11, 2001 were never disclosed publicly and were only developed between Milwaukee and Moli.[4] *See* Mot., ECF No. 246-1 at 15-16 (detailing confidentiality agreements). Accordingly, these cells do not qualify as Section 102(a) prior art. *See* 35 U.S.C. § 102(a) (requiring invention to be "known or use by others in this country"); *Minn. Mining & Mfg. Co. v. Chemque, Inc*., 303 F.3d 1294, 1301 (Fed. Cir. 2002) (noting knowledge must be "publicly accessible"); *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453 (Fed. Cir. 1984) (same). Third, Snap-on has disclosed no evidence, in either its discovery responses or expert reports, to support an argument that a Moli cell or pack qualifies as Section 102(a) prior art. *See, e.g., Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd*., No. 95-c-0672, 1996 WL 680243 at * (N.D. Ill. Nov. 21, 1996) (granting motion *in limine* to exclude defense where details and basis was not fleshed out until after fact discovery closed). Indeed, for the Moli cells used in a Section 103 combination on which Dr. Horn opines, he makes a passing reference that the 25A-26650 cells may qualify as prior art under Section 102(a), but claims this is dependent "upon the outcome of on-going discovery." *See* ECF No. 234-1 (Horn Report at ¶¶ 17, 21, 206, 389). As to the 10A and 20A cells, Dr. Horn admits these may qualify as Section 102(a) prior art only under Snap-on's construction of the 20A Limitation. *Id*. at ¶¶ 17, 21, 389.[5] This Court adopted Plaintiffs' proposed construction of the 20 Amp Limitation. Order, ECF 232 at 27. Accordingly, Dr. Horn fails to disclose evidence

---

[4] These are the 25A-26650, 30A-26650, 40A-26650-R2, 40A-26650-R3, and 40A-26700 cells and packs incorporating those cells.

[5] Dr. Horn makes one other comment that "[i]t is [his] understanding that lithium-ion battery cells develop by E-One Moli" qualify as prior art under Section 102(a), but fails to identify which cells or any evidence to support the basis for his understanding. ECF No. 234-1 (Horn Report ¶ 168)

to support any argument a Moli cell or pack qualifies as prior art under Section 102(a).[6]  Snap-on

should not be permitted to assert new theories of how Moli cells or packs qualify as Section

102(a) prior art on the eve of trial.

---

[6] On October 2, 2017, Dr. Horn served a new expert report.  While Plaintiffs are moving to strike
this improper new report, it remains just as deficient as the original report. Further, Dr. Horn also
removes most assertions that any cells are Section 102(a) prior art.  This is also true for the 10A
and 20A cells, on which Dr. Horn opines for the first time in his newly served report.

**PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 3:**
**TO PRECLUDE MILWAUKEE WITNESSES FROM TESTIFYING AS TO**
**WHAT OTHERS TOLD THEM ABOUT LI-ION BATTERY PACKS**

Snap-on's third motion *in limine* seeks to preclude Milwaukee inventors from testifying as to what they heard from others in the industry relating to the viability of lithium-ion as a battery technology suitable for high power applications like power tools. These statements should not be precluded because they either fall under an exception to the hearsay rules, are not hearsay because Milwaukee will not use them to establish the truth of the matter, or are information that Dr. Shampine, Plaintiffs' economic expert can rely on.

First, the statements fall under one of the exceptions to hearsay under the Federal Rules of Evidence. As an exception to the rule against hearsay, Federal Rule of Evidence 803(3) identifies a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3). Here, the inventors' testimony is focused on their state of mind about the viability of lithium-ion. The inventors felt that lithium-ion presented an opportunity to decrease battery pack weight while increasing power. The inventors also felt that others in the industry were focused on other battery technologies, including nickel metal hydride and next generation nickel cadmium cells. Further, the inventors felt that lithium-ion could satisfy the problems with these other battery technologies. All of these beliefs, confirmed by the actions of others, provided the motivation for them to further develop lithium-ion technology. *See* Ex. 5 Zeiler Dep. Tr. at 105:4-8 ("[T]hey were more interested in working with us on next generation NiCd cells. Or in the case of Panasonic, nickel-metal hydride cells, which I believe we were purchasing from them at the time."); *see also id.* at 206:16-21 ("My opinion was that the reason I saw NiCd not viable is because it was too heavy."). Because these statements go to establish the motivation that underscored the inventors before developing the invention, they are an exception under Fed. R. Evid. 803(3) and should not be precluded.

Second, in the alternative, the statements from others related to the viability of lithium-ion as a battery technology suitable for power tools may not be used for the truth of the matter. Whether it is true or not that companies like Sanyo and Panasonic could not develop lithium-ion battery technology suitable for high-power applications such as power tools at that time is not the primary inquiry. Instead, the inventors' discussions with these battery cell manufacturers that lithium-ion was not a suitable technology for power tools informed their perception of the technology. The inventors' testimony as to what others in the industry said will establish their perception and establish the foundation for their subsequent actions to develop the technology without these battery cell manufacturers. Because this testimony is not offered for the truth of the matter, but rather to establish the inventors' motivations to develop lithium-ion battery technology for power tool applications, the statements should not be precluded as hearsay.

Third, Dr. Shampine, as an expert, is permitted to rely on these statements in the context of forming his opinions. Fed. R. Evid. 703. As such, for at least the limited purpose of Dr. Shampine's testimony, this information should not be excluded.

For the foregoing reasons, Defendant's motion *in limine* no. 3 should be denied.

**PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 4: PRECLUDING
PLAINTIFFS' EXPERTS FROM OFFERING OPINIONS BEYOND THOSE
CONTAINED IN THEIR EXPERT REPORTS AND DEPOSITION TESTIMONY**

Plaintiffs and Snap-on both filed motions *in limine* and are seemingly in agreement that if an expert has the burden ("burden expert"), then all of the expert's opinions must be disclosed in her report. Both parties also appear to agree that if another expert ("rebuttal expert") criticizes the opinions of the burden expert, all of the rebuttal expert's opinions must be disclosed in the rebuttal report. *See also* ECF 238 at 28-29 (Plaintiffs' motion *in limine* no. 11). However, Snap-on's motion *in limine* no. 4 seeks to improperly limit Plaintiffs' experts, Dr. Ehsani and Mr. Malackwoski, from responding to any criticisms expressed in Defendants' rebuttal reports. This is not consistent with the law. The burden expert is ***not required*** to disclose a reply to the rebuttal report in a new reply report. *Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, No. 13-CV-11544, 2015 WL 4934628, at \*12 (E.D. Mich. Aug. 18, 2015) (citing *Martin v. SMAC Fisheries, LLC*, No. 3:11-CV-00012 JWS, 2012 WL 1951160, at \*2 (D. Alaska May 30, 2012). The jury, as the fact-finder, should be allowed to hear Plaintiffs' experts' responses to criticism of their opinions so the jury hears all of the evidence in this matter.

The only narrow exception to the requirement under Rule 26 that experts must disclose all of their opinions in a report is that a burden expert is allowed to explain her disagreement with a rebuttal expert. A burden expert is not required to submit a sur-rebuttal report in advance of trial in order to preserve their right to disagree with a rebuttal expert. *Gonzalez*, 2015 WL 4934628 at \*12 (citing *Martin*, 2012 WL 1951160, at \*2 ("A rebuttal report is not necessary to allow an expert who has provided an initial report to testify about why he disagrees with a different expert's opinions provided that in doing so, the expert criticizing the other's opinion does not rely on a basis undisclosed in his initial report.") In general terms:

[I]f Expert One says in his initial report that Test A means X is true, and Expert

20

Two opines that X is not true or only partly true in his initial report, Expert One need not provide a rebuttal report in order to critique Expert Two's opinion at trial based on Test A. On the other hand, if in order to rebut Expert Two's opinion, Expert One must rely on Test B which was not disclosed in his initial report, then Expert One may do so only if he provided a rebuttal report making that point.

*Id.* In accord with these principles, all of the experts are limited to the opinions expressed in their experts reports, and Dr. Ehsani should be permitted to respond to Dr. Horn's critiques[7], and Mr. Malackwoski should be permitted to respond to Dr. Becker's critiques.

For the foregoing reasons, Defendant's motion *in limine* should be denied as improperly restricting Plaintiffs' experts, Dr. Ehsani and Mr. Malackwoski, from offering rebuttal testimony at trial, and Plaintiffs' motion *in limine* on this same subject should be granted.

---

[7] One of Dr. Horn's critiques is that Dr. Ehsani failed to consider temperature during the constant current discharge tests. Dr. Ehsani tested that hypothesis by re-running the tests while monitoring temperature, which confirmed that monitoring temperature did not change the result of the initial tests. This new data was included in Dr. Ehsani's supplemental report, as required by Rule 26. *Kirola v. City & County of S.F.*, 2010 WL 373817, at *2 (N.D. Cal. 2010) ("Rebuttal reports can use, as well, additional data not found in the [opening] expert report, so long as it relates to the same subject matter [as the rebuttal report]."); *see also*, *Ernst v. City of Chicago*, No. 08 C 4370, 2013 WL 4804837, at *1-2 (N.D. Ill. Sept. 9, 2013).

Dated: October 5, 2017

Respectfully submitted,

/s/ Scott D. Sherwin
Scott W. Hansen
shansen@reinhartlaw.com
David Hanson
dhanson@reinhartlaw.com
Paul Stockhausen
pstockhausen@reinhartlaw.com
Jessica H. Polakowski
jpolakowski@reinhartlaw.com
James N. Law
jlaw@reinhartlaw.com
Monica A. Mark
mmark@reinhartlaw.com
Reinhart Boerner Van Deuren, S.C.
1000 N. Water Street, Suite 1700
Milwaukee, WI 53202
Phone: (414) 298-1000
Fax: (414) 298-8097

Jason C. White
jason.white@morganlewis.com
Sanjay K. Murthy
sanjay.murthy@morganlewis.com
Scott D. Sherwin
scott.sherwin@morganlewis.com
Maria Doukas
maria.doukas@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Suite 500
Chicago, IL 60601
Phone: (312) 324-1000
Fax: (312) 324-1001

Jeffrey G. Killian
Jeffrey.killian@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: (202) 739-3000
Fax: (202) 739-3001

*Attorneys for Plaintiffs Milwaukee Electric Tool Corporation; Metco Battery Technologies, LLC; AC (Macao Commercial Offshore) Limited; and Techtronic Industries Co. Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2017, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will automatically send e-mail notification to the Court

and to attorneys of record.

*/s/ Scott D. Sherwin*
Scott D. Sherwin
