IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>SNAP-ON INCORPORATED,<br><br>*Defendant*. | Case No. 2:14-CV-01296<br><br>Hon. J.P. Stadtmueller |

**SNAP-ON'S RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE*
TO EXCLUDE MARK LEHNERT UNDER *DAUBERT*, FEDERAL RULE
OF EVIDENCE 702, AND FEDERAL RULE OF CIVIL PROCEDURE 26**

# TABLE OF CONTENTS

**Page(s)**

SNAP-ON'S RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE MARK LEHNERT UNDER *DAUBERT*, FEDERAL RULE OF EVIDENCE 702, AND FEDERAL RULE OF CIVIL PROCEDURE 26 .................................................................................... 1

LEHNERT'S OPINIONS AND BASIS ............................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 1

I. THE REBUTTAL REPORT SATISFIES RULE 26 ............................................... 2

II. THE REBUTTAL REPORT SATISFIES RULE 702 AND DAUBERT ............... 4

    A. Reliability: Lehnert Was Not Required to Conduct Testing ..................... 4

    B. Relevance: Lehnert's Opinions Will Aid The Trier Of Fact ..................... 6

III. The Opening Report and Rebuttal Report Properly Describe the Factual Basis And Context For Lehnert's Opinions ................................................................... 6

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Balschmiter v. TD Auto Fin. LLC*,
    303 F.R.D. 508 (E.D. Wis. 2014) ................................................................................................6

*Ciomber v. Coop. Plus, Inc.*,
    527 F.3d 635 (7th Cir. 2008) ......................................................................................................3

*Cooper v. S. Co.*,
    390 F.3d 695 (11th Cir. 2004) ....................................................................................................3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ....................................................................................................................4

*Floyd v. City of New York*,
    861 F. Supp. 2d 274 (S.D.N.Y. 2012) ........................................................................................7

*Heller v. D.C.*,
    801 F.3d 264 (D.C. Cir. 2015) ................................................................................................2, 3

*Highland Capital Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008) ........................................................................................7

*In re Rezulin Prod. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................................................................................8

*Javier v. City of Milwaukee*,
    No. 07-C-204, 2010 WL 11492266 (E.D. Wis. July 27, 2010) .................................................8

*Kia v. Imaging Scis. Int'l, Inc.*,
    No. CIV.A 08-5611, 2010 WL 3431745 (E.D. Pa. Aug. 30, 2010) ...........................................8

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ....................................................................................................................5

*Lees v. Carthage Coll.*,
    714 F.3d 516 (7th Cir. 2013) ......................................................................................................5

*Manpower, Inc. v. Ins. Co. of Pennsylvania*,
    732 F.3d 796 (7th Cir. 2013) ......................................................................................................4

*Metavante Corp. v. Emigrant Sav. Bank*,
    619 F.3d 748 (7th Cir. 2010) ......................................................................................................5

*Olson v. Montana Rail Link, Inc.*,
    227 F.R.D. 550 (D. Mont. 2005) ............................................................................... 3

*Paramount Media Grp., Inc. v. Vill. of Bellwood*,
    No. 13 C 3994, 2015 WL 5307483 (N.D. Ill. Sept. 10, 2015) .................................... 3

*Salgado by Salgado v. General Motors Corp.*,
    150 F.3d 735 (7th Cir. 1998) .................................................................................... 3

*Smith v. Ford Motor Co.*,
    215 F.3d 713 (7th Cir. 2000) .................................................................................... 6

*Trustees of Chicago Painters & Decorators Pension, Health & Welfare, &*
    *Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.*,
    493 F.3d 782 (7th Cir. 2007) .................................................................................... 5

*U.S. v. Batchelor-Robjohns*,
    No. 03-20164-CIV, 2005 WL 1761429 (S.D. Fla. June 3, 2005) .............................. 3

*U.S. v. Brumley*,
    217 F.3d 905 (7th Cir. 2000) .................................................................................... 5

**Rules**

Federal Rule of Civil Procedure 26 ..................................................................... 1, 2, 3

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) ............................................................ 2

Federal Rule of Evidence 702 ............................................................................ 1, 4, 5

Snap-on expert witness Mark Lehnert ("Lehnert") has produced two expert reports[1] that opine on tool design, applications, criteria, and use. MET seeks to exclude:

1) Lehnert's Rebuttal Report, for relying on what MET calls undisclosed and unreliable testing, pursuant to FED. R. CIV. P. 26 and *Daubert*/FED. R. EVID. 702.

2) Specific paragraphs of both Lehnert reports for containing factual narrative.

   a. Opening Report ¶¶ 15-19, 20-21, 27-29 and 33-37.

   b. Rebuttal Report ¶¶ 11, 13-19.

**LEHNERT'S OPINIONS AND BASIS**

Lehnert's expertise is based upon 40 years of experience designing and building power tools. His opinions are relatively narrow and squarely within his field. Lehnert does not rely on undisclosed tests, because he did not conduct tests for this case, as stated at his deposition. After a brief description of the factual background, Snap-on addresses (I) Rule 26; (II) Fed. R. Evid. 702 and *Daubert*; and (III) MET's complaint about a factual narrative.

**FACTUAL BACKGROUND**

Lehnert has been designing and building power tools for over 40 years. He began designing tools for Johnson Outboard Motors in 1974, and retired in 2015 following six years as a Vice President at Stanley Black & Decker, where he oversaw a product development team focused on power tool design. (Ex. V at Exhibit A.)

In his Rebuttal Report, Lehnert opines that (a) power tools have normal and intended uses; and (b) no power tool, when used normally and as intended, requires a discharge of its battery pack at 20A constant current for a period that exceeds 4 minutes. (Ex. W ¶¶ 18–23.) Those opinions are relevant to damages. The damages question is whether a customer, when

---

[1] His "Opening Report" (cited "Op. Rpt.") and "Rebuttal Report" (cited "Rbt. Rpt."), attached to MET's "Motion" to which this brief responds as Exhibits A and B, respectively.

1

3990922
Case 2:14-cv-01296-JPS   Filed 10/05/17   Page 5 of 14   Document 257

using a tool for its intended purpose, benefits from a battery pack's ability to deliver a constant current discharge of 20A or more for the entire rated capacity.

During Lehnert's deposition, MET counsel asked whether he has conducted any tests in connection with his Rebuttal Report, perhaps mistaking it for a technical non-infringement opinion. (Ex. X at 89:1–3.) Lehnert answered: "no, I have not." (*Id.* at 89:7.) MET counsel then asked five variations of the same question, but received no different response. (*Id.* at 89:8–17; 89:20–23; 90:14–18; 93:4–9; 93:10–15.)

MET counsel then took a different tack, resulting in the three items they challenge here: **[1]** Although Lehnert did not conduct tests for this case, he conducted tests "in [his] past life" as a tool designer (he recently retired) (*id.* at 95:4–5). Specifically, "over the last 10 to 15 years" of his career, Lehnert was "involved in many, many power tool testings." (*Id.* at 96:2–4.) **[2]** Lehnert, in forming his opinions, relied upon his "history, personal experience, development, [and] background." (*Id.* at 96:7–8.) **[3]** Lehnert's expert reports do not describe the testing procedures for the tests he conducted (*id.* at 97:3–6) "over the last 10 to 15 years" (*id.* at 96:2–4).

## I. THE REBUTTAL REPORT SATISFIES RULE 26

MET challenges the Rebuttal Report as not disclosing "the facts or data considered by [Lehnert] in forming" his opinions under FED. R. CIV. P. 26(a)(2)(B)(ii) ("Rule 26"). Lehnert's reports together describe his work experience (Ex. V ¶¶ 7–10) and explain that his opinions are based upon, among other things, his "knowledge and personal and professional experience" (Ex. V ¶ 3; Ex. W ¶ 3). Lehnert also provided, attached to his reports, his *c.v.* and lists of documents and media that he reviewed.

This satisfied Rule 26 because Lehnert provided "an explicit statement as to the basis for [his] opinion[s], to wit, that [each] report was based 'on [his] experience'" and his "review of numerous" materials. *Heller v. D.C.*, 801 F.3d 264, 271 (D.C. Cir. 2015) (affirming refusal to

2

3990922
Case 2:14-cv-01296-JPS   Filed 10/05/17   Page 6 of 14   Document 257

exclude expert reports under Rule 26). The purpose of Rule 26 is to avoid "unfair surprise." *Id.* at 270. MET does not claim surprise and could not honestly do so. Lehnert made clear that he conducted no testing in connection with this case. Snap-on found no authority supporting MET's argument that Rule 26 required Lehnert to disclose the details of "test procedures" conducted in his recent career in connection with other projects and his work for his employers. (Motion at 6.) MET does not address the "unfair surprise" standard and instead cites six irrelevant cases (*see* Motion 4-7):

- *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (affirming exclusion of expert testimony from person who was not initially identified as an expert, disclosed no basis for any opinion, and produced no expert report).

- *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 737-8 (7th Cir. 1998) (affirming exclusion of expert reports that were filed late despite two prior extensions and were also "devoid of any factual basis").

- *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 638-41 (7th Cir. 2008) (affirming exclusion of expert report that was filed late despite five prior extensions; that consisted solely of "eight terse statements"; and as to which the appellant waived his argument that the report was improperly excluded).

- *Paramount Media Grp., Inc. v. Vill. of Bellwood*, No. 13 C 3994, 2015 WL 5307483, at *1 (N.D. Ill. Sept. 10, 2015) (adopting magistrate's ruling precluding testimony because, instead of forming his own opinions, the purported expert "adopted" and "parroted" the opinions of someone else who did all the work and acted as that person's "mouthpiece" without understanding the opinions or having the ability to explain them).

- *Olson v. Montana Rail Link, Inc.*, 227 F.R.D. 550, 550 (D. Mont. 2005) (reversing magistrate's ruling and sanctioning the latest episode in a history of "tactical gamesmanship," in which Montana Rail Link improperly withheld testing data, which formed the basis of tests its expert conducted in connection with the litigation, until after the rebuttal reports were due).

- *U.S. v. Batchelor-Robjohns*, No. 03-20164-CIV, 2005 WL 1761429, *3 (S.D. Fla. June 3, 2005) (striking expert report and precluding testimony of expert who redacted all spreadsheets and computer models on which his expert financial opinions relied, and then refused to disclose them even under a protective order).

3

Finally, Lehnert properly disclosed the basis for his opinion that, as a practical matter, when hooked up to actual tools, battery packs cannot satisfy the 20 Amp Limitation when the tool and pack are used normally and as intended. (Motion at 5.) For example, the Rebuttal Report explains that impact wrenches "cannot be operated continuously at a 20A rate" due to "the intermittent on/off clutching" that occurs when the tool is used normally and as intended. (Ex. W ¶ 19.) Lehnert takes the same approach with respect to cordless drills, cordless ratchets, reciprocating saws, and cordless screwdrivers. (*Id.* ¶¶ 20–23.)

Those opinions are based upon Lehnert's more than 40 years' experience designing and building tools, which required him to understand their purposes and common uses.

## II. THE REBUTTAL REPORT SATISFIES RULE 702 AND DAUBERT

Testimony from a qualified expert is admissible if relevant and reliable. *See Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). More specifically, admissible testimony must come from a "qualified" expert who possesses the requisite "knowledge, skill, experience, training, or education" in the applicable field. FED. R. EVID. 702 ("Rule 702"). The testimony must also (a) assist the trier of fact to determine a fact in issue; (b) be based on sufficient facts or data; (c) be the product of a reliable methodology; (d) and reflect an accurate application of the methodology to the facts of the case. *Id*.

MET does not dispute Lehnert's qualifications, but challenges the (A) reliability of his methods and (B) relevance of his opinions. Each is addressed in turn

### A. Reliability: Lehnert Was Not Required to Conduct Testing

MET contends that without "underlying testing data," Lehnert's conclusions are "merely unsupported speculation," *i.e.* based on unreliable methods. (Motion at 9.)

Lehnert was not required to conduct tests. The Seventh Circuit has recognized that "because there are 'many different kinds of experts, and many different kinds of expertise,' the reliability analysis should be geared toward the precise sort of testimony at issue and not any fixed evaluative factors." *Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). Thus, when experts offer non-scientific "technical" testimony, as Lehnert does here, "the relevant reliability concerns may focus upon personal knowledge or experience." *U.S. v. Brumley*, 217 F.3d 905, 911 (7th Cir. 2000) (quoting *Kumho*, 526 U.S. at 150) (testimony that one ounce of methamphetamine was a "dealer quantity" was properly based upon seven years of experience and approximately 100 prior methamphetamine investigations).

When Rule 702 was amended in 2000 following the Supreme Court's decisions in *Daubert* and *Kumho*, the advisory committee explained that "[n]othing in th[e] amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony." The Seventh Circuit has interpreted Rule 702, *Daubert*, and *Kumho* accordingly. *See Trustees of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787-8 (7th Cir. 2007) (rejecting argument that two experts' methodologies were "insufficiently scientific or reliable" because their opinions were "based on specialized knowledge" and "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience"); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (expert's opinion was not "mere *ipse dixit*" because his "explanations were based on [his] experience in the industry").

### B. Relevance: Lehnert's Opinions Will Aid The Trier Of Fact

MET identifies no authority to support its argument that facts and opinions about the 20 Amp Limitation are limited to those attendant to "perform[ing] the [] constant current test." (Motion at 9.) The Rebuttal Report opines that a battery pack's ability to achieve 20A or greater current over the entire rated capacity of the battery is not valuable when the battery is used in tools, which goes to MET's claimed damages.

MET's root complaint seems to lie, not with Lehnert's methods, but with his conclusions about the 20 Amp Limitation's role (or lack of role) in normal tool use. That complaint is improper at this stage, as although courts evaluate the reliability of expert methods, the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). *See also Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 523 (E.D. Wis. 2014) ("[T]he gravamen of the plaintiff's argument against Dr. Aron—styled as an objection under *Daubert*—is about the quality of her data and conclusions, which is a determination left to the trier of fact.").

### III. THE OPENING REPORT AND REBUTTAL REPORT PROPERLY DESCRIBE THE FACTUAL BASIS AND CONTEXT FOR LEHNERT'S OPINIONS

The Motion's first ten pages argue that Lehnert's reports should be excluded because they disclose too little factual basis in support of his opinions. The Motion's final two pages argue the opposite—that Lehnert's reports should be excluded because they disclose too much factual basis, which MET characterizes as "factual narrative."

First, to narrow the issues with respect to this Motion, Snap-on will not rely on Lehnert to testify to the information found at ¶¶ 34–37 of Lehnert's Opening Report. With respect to MET's remaining objections, MET overstates the rule to exclude relevant testimony. This is

6

3990922
Case 2:14-cv-01296-JPS    Filed 10/05/17    Page 10 of 14    Document 257

well exemplified in a case that MET relies upon, *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008). The *Highland* court explained that experts "may testify as to the customs and practices of [an] industry" notwithstanding the rule against "factual narrative," which precludes testimony on "the credibility of witnesses," the particular "events giving rise to th[e] action," and "a party's state of mind." *Id.* at 180, 187.

Much of the disputed testimony properly addressees industry custom and practice based on Lehnert's four-plus-decades of experience. For example, MET objects to Ex. V ¶¶ 15–19, which describe (¶ 15) the benefits and drawbacks to "tradespeople" of the "three primary choices for handheld power tools" available in the 1990s; (¶ 16) the "dominant tool[s]" used in various "trades," including "the automotive industry," "carpentry," and "construction"; and (¶¶ 17–19) the "common application[s]" and "uses" for certain tools. MET also objects to Ex. V ¶¶ 20–21, but those paragraphs describe the "tool designer's primary concern" that "tools work for their intended purpose," and the relationship that "[t]ypically" exists between a tool designer and a battery manufacturer. (*See also* Ex. V ¶ 33, describing the "considerations [a] tool designer can use to evaluate its product" before bringing it to market.)

Another large category of challenged testimony describes trends in cordless power tools from 2000-01 in relation to the relative merits and drawbacks of various battery packs. (*See* Motion at 12, addressing Ex. V ¶¶ 27–29.) These are not "lay matters which a jury is capable of understanding and deciding without the expert's help," and Lehnert "is indisputably [an] expert who is qualified to offer opinions about trends that he observes in" tool and battery pack design and marketing, as well as their relative merits. *Floyd v. City of New York*, 861 F. Supp. 2d 274, 303 (S.D.N.Y. 2012) (overruling objecting to crime expert testifying about crime trends).

7

The third category of challenged testimony describes the characteristics and normal operation of certain tools, as well as how their normal operation affects their typical marketing. (*See* Motion at 12, challenging Ex. W ¶¶ 11, 13–17.) Lehnert's testimony regarding the typical purposes for which tools are designed, the technical details of their operation, and the manner in which they are normally used, all derive from his extensive experience designing, building, marketing, and selling tools. The Motion provides no basis to exclude this material aside from MET's bare assertion that "there is nothing 'expert' about" Lehnert's testimony. (Motion at 12.) That is insufficient.

Finally, although the *Highland* case is pertinent for the reasons explained above, the remaining cases MET cites are inapposite. *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding testimony that amounted to nothing more than a "narrative of the case"); *Kia v. Imaging Scis. Int'l, Inc.*, No. CIV.A 08-5611, 2010 WL 3431745, *4-5 (E.D. Pa. Aug. 30, 2010) (excluding speculation about a company's subjective motives and the likelihood that certain testimony of the parties was truthful); *Javier v. City of Milwaukee*, No. 07-C-204, 2010 WL 11492266, *6 (E.D. Wis. July 27, 2010) (excluding testimony designed only to bolster a fact witness's asserted understanding that he was acting under color of law). Snap-on asks that this motion be denied.

Dated: October 5, 2017              Respectfully submitted,

By: */s/ Peter F. O'Neill*
    Lynn H. Murray
    Hugh A. Abrams
    George R. Dougherty
    Peter F. O'Neill
    Jonathon M. Studer
    Shook, Hardy & Bacon L.L.P.
    111 S. Wacker Drive, Suite 5100
    Chicago, Illinois 60606
    Phone: (312) 704-7700
    Fax: (312) 558-1195
    lhmurray@shb.com
    habrams@shb.com
    gdougherty@shb.com
    pfoneill@shb.com
    jstuder@shb.com

    David R. Cross
    Michael T. Piery
    Quarles & Brady LLP
    411 East Wisconsin Avenue, Suite 2350
    Milwaukee, Wisconsin 53202-4426
    Phone: (414) 277-5000
    Fax: (414) 271-3552
    david.cross@quarles.com
    michael.piery@quarles.com

    **Attorneys for Defendant and**
    **Counterclaim-Plaintiff Snap-on Incorporated**

9

## CERTIFICATE OF SERVICE

I certify that on October 5, 2017, I served the foregoing **SNAP-ON'S RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE MARK LEHNERT UNDER DAUBERT, FEDERAL RULE OF EVIDENCE 702, AND FEDERAL RULE OF CIVIL PROCEDURE 26** on all counsel of record using the Court's ECF system.

Dated: October 5, 2017

By: */s/ Peter F. O'Neill*
Peter F. O'Neill