# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD., <br><br> Plaintiffs, <br> v. <br><br> SNAP-ON INCORPORATED, <br><br> Defendant. | Case No. 14-CV-1296-JPS <br><br><br><br> **ORDER** |

This is a patent case about lithium-ion batteries used in power tools. Trial is scheduled to begin on Monday, October 16, 2017. The parties have filed voluminous motions in limine and *Daubert* motions in anticipation of trial. *See* (Docket #234, #235, #238, #241, #242, #248, #250, #264).

During the final pretrial conference, held on October 10, 2017, the Court indicated that it would take up each disputed issue before selection of the jury, or when such matters arose during trial, as appropriate. *See* (Docket #271). At the parties' request, however, the Court now issues a decision on the most pertinent of the pretrial motions in an effort to streamline the parties' trial preparation and perhaps aid their efforts to seek a mutually agreeable pretrial resolution of this matter. *See* (Docket #272). The Court will address each motion in turn.

1. **Moli Evidence as Prior Art for Purposes of Obviousness**

Section 102 of the Patent Act establishes certain types of prior art that may be used in various ways to attack the validity of a patent.[1] Section 102(f) defines one such type of prior art. It provides that a person is not eligible for a patent if "he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f) (2006). Put differently, one who derives an invention from another cannot patent it. *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993). In order to establish derivation, the challenger must prove, by clear and convincing evidence, "both prior conception of the invention by another and communication of that conception to the patentee." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1334 (Fed. Cir. 2003); *Cumberland Pharm. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1218 (Fed. Cir. 2017).

"Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is therefore to be applied in practice." *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003). A conception must encompass all limitations of the claimed invention. *Id.* Critically, "derivation is not proved by showing conception and communication of an idea different from the claimed invention even where that idea would make the claimed idea obvious." *Cumberland Pharm.*, 846 F.3d at 1219.

Obviousness, which is a challenge to the validity of a patent made pursuant to Section 103, is established "if the differences between the

---

[1]The Leahy-Smith America Invents Act ("AIA") made significant changes to the structure of the Patent Act, including Section 102. However, because the applications resulting in the patents-in-suit were all filed before the AIA's effective date, the Court refers to the pre-AIA version of the relevant statutory provisions. *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1370 n.8 (Fed. Cir. 2017).

subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2006). To prove obviousness, one must show that a skilled artisan "would have found it obvious to bridge the differences between the subject matter of the claims and the prior art[.]" *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1343 (Fed. Cir. 2013). This entails consideration of several factors, including "(1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010); *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

Important here, Section 103 also provides that subject matter defined in Section 102 may be used to support an obviousness argument although "the invention is not identically disclosed or described as set forth in section 102." 35 U.S.C. § 103(a) (2006). In other words, even if a prior art reference fails to establish that the patent is invalid based on an analysis of Section 102 alone, that prior art may still be used to support a contention that the invention is obvious under Section 103. *See Net MoneyIn, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008) (while a court cannot combine two prior art references to find anticipation, they can be combined to argue obviousness); *Application of Arkney*, 455 F.2d 586, 587 (C.C.P.A. 1972).

In its recent decision on claim construction and summary judgment, the Court found that certain lithium-ion battery cells manufactured by a Canadian firm, E-One Moli Energy (Canada) Ltd. ("Moli"), were

insufficient to establish a derivation defense under Section 102(f) for Defendant Snap-On Incorporated ("Snap-On"). *Milwaukee Elec. Tool v. Snap-On Inc.*, Case No. 14–CV–1296–JPS, 2017 WL 4220457, at *15–17 (E.D. Wis. Sept. 22, 2017). The Court found that the Moli cells did not constitute a prior conception of Plaintiffs' patented invention for two reasons. First, the early cells were not capable of meeting the 20 Amp Limitation. *Id.* at *17.[2] Second, the later-developed, more powerful cells were not equivalent to battery *packs*, which are the subject of the patents-in-suit. *Id.*

On this second point, key to the Court's decision was that, to establish derivation, the complete and operative invention must be communicated to the inventor. *Id.* Rendering the patented invention obvious is not enough. *Id.* Applied here, the Court determined that even assuming a skilled artisan could extrapolate a battery pack from the Moli cells that would be housed inside it, this would at most render the invention obvious. *Id.* The cells were not themselves the complete and operative invention. Consequently, the Court dismissed Snap-On's derivation defense.

Now, Snap-On seeks to use the same Moli evidence to pursue a different theory of invalidity: that the Moli cells rendered the patented

---

[2]The central claim construction dispute in this case focused on a limitation which reads: "the battery cells being capable of producing an average discharge current greater than or equal to approximately 20 amps." The Court construed the claim as follows: "the battery cells, when configured together in a battery pack, are capable of producing reasonably close to 20 amps of discharge current or greater over the course of delivering their entire rated capacity." *See Milwaukee Elec. Tool*, 2017 WL 4220457, at *7–13.

invention obvious under Section 103.[3] Plaintiffs oppose this, arguing that the Moli evidence should not be admitted for any purpose. Their opposition appears to be twofold, but their arguments are not easily parsed. First, argue Plaintiffs, because the Moli cells do not establish a derivation defense, they do not qualify as prior art under Section 102(f). As a result, they cannot now be leveraged in a Section 103 obviousness claim. Second, because Milwaukee asked Moli to prepare the cells, the cells are part of Milwaukee's own inventive contributions. In Plaintiffs' view, they cannot simultaneously be prior art.

Snap-On responds that the Court did not grant summary judgment on its obviousness challenge, only derivation. According to Snap-On, the Moli cells qualify as Section 102(f) prior art even if they could not sustain a derivation defense. As Snap-On reads the Court's recent ruling, the Court only found that the patented invention was not derived from the cells and said nothing about whether the cells rendered the packs obvious.

---

[3]Plaintiffs have asked the Court to prohibit Snap-On from seeking to admit the Moli cells as anticipatory prior art under Section 102(a) or (b). (Docket #248-2 at 3). During summary judgment, the Court ruled that the cells do not anticipate the patents under either Section 102(a) or (b). *Milwaukee Elec. Tool*, 2017 WL 4220457, at *35. Because Snap-On does not contest that ruling and presents only its Section 103 obviousness theory as a basis for admitting the Moli cells, *see* (Docket #246-1 at 21, 23), the Court declines to address these other provisions of Section 102 further.

Additionally, the Court notes that while Plaintiffs' motion seeks exclusion of battery cells alone, Snap-On asks for a ruling on the admissibility of other Moli-related materials. *See* (Docket #246-1 at 14). The Court does not address those other materials separately, as the parties' focus is on the battery cells. Without more specific information about these other Moli materials, the Court can only say that its ruling about the interaction between Section 102(f) and Section 103 should be applicable to many types of communications between Moli and Plaintiffs. Further, those other materials are addressed in other motions in limine, some of which may be resolved without Court intervention. *See* (Docket #272).

In light of the statutory text and structure, against the backdrop of the relevant precedent, the Court finds Snap-On's position more persuasive. In *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1403 (Fed. Cir. 1997), the Federal Circuit explained the operation of Section 102(f) subject matter as used in an obviousness defense:

> It means that an invention, A′, that is obvious in view of subject matter A, derived from another, is also unpatentable. The obvious invention, A′, may not be unpatentable to the inventor of A, and it may not be unpatentable to a third party who did not receive the disclosure of A, but it is unpatentable to the party who did receive the disclosure.

*Id.* The court also held that Section 102(f) subject matter, although it encompasses private communications to the inventor, can nevertheless constitute prior art for purposes of Section 103. *Id.* at 1401–02. In this case, Snap-On's theory is that Moli communicated its cells, A, to Plaintiffs, and Plaintiffs then developed their battery pack, A′, from them.

This explanation resolves the first question Plaintiffs raise about how to define Section 102(f) prior art. Initially, the Court rejects Plaintiffs' bald suggestion that any non-public information cannot qualify as prior art. This is precisely the opposite of what the Federal Circuit said in *OddzOn*. *Id.* Admittedly, most prior art is public information, but the Court of Appeals found that Section 102(f) subject matter, even if "secret," could be used in a Section 103 obviousness claim. *Id.* Consequently, this Court will not reject any of the Moli evidence simply because it was non-public, including drawing distinctions between certain cells that were or were not covered by a confidentiality agreement between Moli and Plaintiffs. *See* (Docket #248-2 at 5–7).

Another aspect of Plaintiffs' definitional argument appears to suggest that only complete inventions, not any communications or information, can count as Section 102(f) prior art. Yet this position is inconsistent with a plain reading of *OddzOn*, which states the Section 102(f) covers "subject matter," not only inventions. *Id.* at 1403. The Court agrees with Snap-On that whether or not Plaintiffs derived their invention from Moli's cells, the cells and related communications and information are of the Section-102(f) type, having been communicated to the inventor by another in confidence.

The text of Section 103(a) confirms that even if certain prior art references fall short of invalidating a patent when considered under the relevant subsection of Section 102, they nevertheless can be used to make out an obviousness challenge. Indeed, Plaintiffs' own cited case, *The Medicines Company v. Mylan Inc.*, 72 F. Supp. 3d 387, 859–60 (N.D. Ill. 2014), *rev'd on other grounds*, 853 F.3d 1296 (Fed. Cir. 2017), recognized that different standards apply "when a party is attempting to prove invalidity by derivation under § 102(f)" as opposed to "when a party is attempting to use the disclosure as prior art under § 102(f) in an obviousness analysis." Thus, Plaintiffs are simply wrong to say that since the Court ruled against Snap-On on derivation, the Moli evidence cannot be used by Snap-on for any other invalidity theory.

Plaintiffs' reading of the statute would require Snap-On to first establish derivation under Section 102(f) before it could use the Moli cells in a Section 103 obviousness claim. Why would Snap-On do so? Derivation, if proven, would be enough to invalidate the patents.

A challenger's ability to repurpose Section 102(f) subject matter that failed in a derivation attack for a Section 103 obviousness challenge is

consistent with the differing burdens associated with each theory. Derivation carries a higher burden of proof than obviousness, since derivation cannot be proven by showing that the purported Section 102(f) subject matter rendered the invention obvious. *Cumberland Pharm.*, 846 F.3d at 1219. While the fact that the Moli cells did not encompass every limitation of the patent claims was fatal to Snap-On's derivation argument, it is not fatal to their use in an obviousness defense. The amount of incongruity between the cells and the packs—between subject matter A and invention A'—is part and parcel of the parties' fact-intensive competing arguments as to whether A rendered A' obvious. *See Wyers*, 616 F.3d at 1237. It does not render A inadmissible.

To the extent Plaintiffs believe that the Court made a broader ruling on summary judgment than simply rejecting Snap-On's derivation contention, they are mistaken. The Court did state that its "findings as to derivation establish that the later-developed Moli packs were not prior art under Section 102(f)[]." *Milwaukee Elec. Tool*, 2017 WL 4220457, at *33. But Plaintiffs cherry-picked this single clause from a longer sentence within the Court's analysis of Snap-On's inequitable conduct claim. *See id.* In this statement, the Court was merely reiterating that Snap-On's derivation argument did not hold water, not that the Moli cells were outside the type of subject matter contemplated in Section 102(f). Plaintiffs provide little argument on this point other than to repeatedly cite this single portion of the Court's earlier decision.

Additionally, as to Plaintiffs' claim that the cells are part of their own inventive work, it is not clear that they should be excluded from consideration on that basis. First, Section 102(f) subject matter undoubtedly includes any private communications to the inventor. *OddzOn*, 122 F.3d at

1401–02. Second, Section 103(c) expressly provides situations in which Section 102(f) subject matter may not be used in a Section 103 obviousness argument. *See* 35 U.S.C. § 103(c) (2006). The first exception arises in employer-employee situations, and the second applies to joint research agreements. *Id.* Milwaukee does not dispute that the Moli evidence does not fall within either exception, as Moli was not its employee and it did not execute a joint research agreement with Moli.

In its summary judgment decision, the Court observed that "[t]o the extent the project was a joint venture, with both Moli and Milwaukee contributing some advances or improvements over time, it cannot be said that Moli conceived of the final invention first (or at all, for that matter)." *Milwaukee Elec. Tool*, 2017 WL 4220457, at *17. Thus, while the record on summary judgment disclosed that "Moli was a supplier of a component part of the invention working at the direction of the true inventors—Milwaukee," *id.*, the Court's point was that Snap-On failed to meet the high bar required to prove derivation. Here again, Plaintiffs read the Court's decision through a rose-colored lens.

For the reasons stated above, the Court finds that although the Moli cells and related evidence do not establish derivation, they nevertheless may be deployed in the context of a Section 103 obviousness claim.

**2.      Inter Partes Review and Reexaminations**

The parties' next dispute relates to the admissibility of evidence regarding the many post-issuance proceedings that have been instituted concerning the patents-in-suit, including reexaminations and *inter partes* review ("IPR") proceedings. None of the twenty such proceedings has resulted in invalidation of the patents, and Plaintiffs understandably want to explain that fact to the jury.

The Court's decision here ties in closely with its summary judgment ruling on the estoppel effect of the IPR proceedings. As the Court has noted, IPR is "a procedure introduced by the AIA in which the [Patent Trial and Appeal Board ("PTAB")] may review the patentability of one or more claims in a patent." *Milwaukee Elec. Tool*, 2017 WL 4220457, at *24 (citing 35 U.S.C. §§ 311–319). However, the grounds for an IPR challenge are limited to anticipation and obviousness claims based on "prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). IPR was created "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs" and "to create a timely, cost-effective alternative to litigation." Changes to Implement Inter Partes Review Proceedings, Post–Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48680–01 (Aug. 12, 2012) (codified at 37 C.F.R. §§ 42.100 *et seq.*). IPR estoppel promotes the goal of efficiency by barring an IPR petitioner from raising in a later district court action "any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2).

The contours of IPR estoppel are hard to define, and the Court will not rehash its analysis of those issues. It is enough to summarize the Court's findings. First, any ground Snap-On did not include in an IPR petition but reasonably could have is barred. *Milwaukee Elec. Tool*, 2017 WL 4220457, at *26. Second, any ground petitioned but for which the PTAB did not institute review—for any reason whatsoever—is not barred. *Shaw Indus. Group, Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016). Third, any ground petitioned and for which IPR was instituted is barred. *Milwaukee Elec. Tool*, 2017 WL 4220457, at *25.

The Court applied these principles to many potential prior art references, finding that some were subject to IPR estoppel while others were not. The exact decisions are unimportant for present purposes. What matters here is whether, having applied IPR estoppel to exclude some prior art references from the case, it is appropriate to discuss the IPRs before the jury.

Plaintiffs contend that the PTAB's decisions upholding their patents against IPR challenges are relevant to opposing Snap-On's invalidity contentions, showing that Snap-On is rehashing lost arguments, and providing context for the third-party license agreements it will use to prove its damages. Snap-On counters that the IPR proceedings are irrelevant because IPR estoppel leads to the exclusion of any grounds ruled upon by the PTAB. Thus, the prior art references presented to the jury in this case must necessarily be different from those considered by the PTAB. Further, says Snap-On, explaining the IPR process, the relevant legal standards, the evidence the PTAB considered in each IPR proceeding, and the outcomes in each proceeding will be a waste of time that will confuse the jury as to the standards applicable in this case and mislead them into unnecessarily deferring to the PTAB on validity matters.

The Court agrees with Snap-On here. Because of the effect of IPR estoppel, the IPRs necessarily covered different prior art than will be used at trial. Whether that prior art was sufficient to invalidate the patents, as a general proposition, is irrelevant to the specific prior art at issue here. For that reason, admitting evidence of the IPRs is likely to mislead the jury into believing that because the patents-in-suit have survived many attacks, they must be valid against the present attacks.

In this respect, the Court respectfully disagrees with *StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc.*, No. 8:13–cv–2240–T–33MAP, 2015 WL 3824208, at *9 (M.D. Fla. June 19, 2015), upon which Plaintiffs principally rely. In this Court's view, even if the potentially different legal standards between the IPRs and this case may be explained through jury instructions, it is more important to appreciate that the prior art is different. This means that the IPRs would only ever be relevant for the broad notion that the patents are resilient, but such a proposition is misleading and unhelpful. *See Wis. Alumni Res. Found. v. Apple, Inc.*, 135 F. Supp. 3d 865, 874 (W.D. Wis. 2015).

Moreover, to the extent that IPR estoppel does not apply, such as for references petitioned but not instituted, there is no reason to show the jury that IPR was not instituted because the Federal Circuit has instructed that it does not matter the reason for the decision not to institute IPR. *See Interdigital Comm'ns Inc. v. Nokia Corp.*, C.A. No. 13–10–RGA, 2014 WL 8104167, at *1 (D. Del. Sept. 19, 2014). Thus, while Plaintiffs would like to argue to the jury that the Saft prior art was petitioned but not instituted by the PTAB, thereby suggesting it is inferior as prior art, *see* (Docket #238 at 3), this runs directly afoul of the Federal Circuit's views on IPR estoppel. Snap-On is allowed to rely on the Saft prior art and other petitioned but non-instituted grounds, and the PTAB's decision not to undertake a merits review of such grounds during IPR is immaterial. Similarly, while Plaintiffs are correct that some Moli prior art was submitted in connection with the IPRs, it cannot point to a decision instituting review thereon or a merits decision upholding patentability in the face of the Moli prior art. Simply being mentioned during IPR proceedings does not give rise to IPR estoppel,

and consequently a review of the IPR proceedings would not be needed to provide context for that prior art.

Equally important to this Court's analysis is the potential waste of time and resources explaining and perhaps re-arguing the IPR proceedings. IPR estoppel is designed to streamline district court litigation and prevent revisiting certain validity arguments on which a defendant has already received a considered decision on the merits. *See Wis. Alumni Research Found.*, 135 F. Supp. 3d at 874. Introducing the jury to the several series of IPR proceedings at issue here, explaining to them the evidence considered and the role of the PTAB, and discussing the outcomes of those proceedings, will consume enormous amounts of time. Indeed, as Snap-On points out,

> [b]oth parties could cherry-pick statements and findings from the PTAB or examiners to support their case. On one hand, MET might try to suggest that the patents have survived many challenges before the Patent Office, which it would argue tends to indicate that the patents are valid. By the nature of the references, however, this trial is the first time that a particular prior art device, video, or 102(f) prior art could have been addressed, and any contrary suggestion would be misleading. On the other hand, Snap-on could point to the multiple times that a board of experienced patent lawyers indicated that a petitioner had shown a reasonable likelihood that they would succeed in showing that the patents are invalid. Or, Snap-on could present evidence relating to inter partes reexamination No. 95/001,848, where the examiner repeatedly rejected the claims of the '290 patent, requiring MET to appeal the decision. When MET convinced the patent challenger not to file an appeal brief, the Examiner noted that no respondent appellate brief was filed and reversed his rejection.

(Docket #246-1 at 8–9). Against this looming danger of misleading tangents into prior proceedings, the Court finds little probative value rests on the other end of the scale. Thus, whether it is Plaintiffs' desire to provide context for its claims or prove validity by reference to irrelevant prior art, the Court's duty to ensure that the jury's time is used efficiently counsels against admission of the IPR proceedings. *See Magna Elec., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-cv-654, 2016 WL 4238769, at *2 (W.D. Mich. Jan. 28, 2016).

The Court's concerns are not assuaged by Plaintiffs' counterarguments. First, Plaintiffs posit that courts normally exclude evidence of IPR proceedings when they are non-dispositive or when they are ongoing, whereas here the IPRs have all been completed and resulted in decisions on the merits upholding patentability. Second, Plaintiffs contend that Snap-On's fears about the differing legal standards makes little sense, since the burden it faced during IPR was lower than its burden here. Yet these contentions do not address the Court's belief that discussing IPR proceedings will result in an unnecessary expenditure of time dedicated to explaining how decisions were rendered on prior art references not at issue here. To the extent Plaintiffs want to show that Snap-On is making the same arguments about different prior art, (Docket #238 at 4, 7–8), cross-examination and impeachment should be sufficient without going into the entirety of the IPR proceedings. Moreover, to the extent Plaintiffs want to show that Snap-On lost on claim construction or other purely legal arguments before the PTAB, those are irrelevant to the jury's factfinding role. *See Magna*, 2016 WL 4238769, at *2.

Likewise, the Court is not convinced that evidence of IPR proceedings should be introduced simply because the Federal Circuit has

held that "it may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012). First, *Sciele* concerned instructing the jury regarding the clear and convincing standard required for invalidity claims. It made no mention of the admissibility of evidence regarding IPR proceedings. Second, excluding evidence related to IPR proceedings is not inconsistent with *Sciele,* as none of Snap-On's trial arguments will be based on the same references that the PTAB considered. This is the effect and purpose of IPR estoppel. *Sciele* makes sense when one speaks of references that the Patent and Trademark Office considered during prosecution, but it does not correlate with IPR proceedings. Again, if Plaintiffs want to argue that Snap-On has made similar legal arguments for invalidity before and lost, this would lead the jury down a long and potentially misleading garden path.

Federal Rule of Evidence 403 therefore obliges the Court broadly exclude evidence related to the IPR proceedings and reexaminations. Fed. R. Evid. 403; *Magna*, 2016 WL 4238769, at *2. Subject to whatever other stipulations the parties may agree upon, the Court finds that "[t]he parties may. . .use as evidence statements made or evidence proffered during the [post-issuance proceedings] so long as this is done without referencing either the [proceedings] or the outcomes." *Personalized User Model, L.L.P. v. Google Inc.*, C.A. No. 09–525–LPS, 2014 WL 807736, at *3 (D. Del. Feb. 27, 2014). The only caveat must be that to the extent an examiner on reexamination looked at the same prior art being raised here, it is relevant that the examiner did not invalidate the patent on that ground. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564. U.S. 91, 111 (2011); *Sciele*, 684 F.3d at 1260; *Oracle*

*Am., Inc. v. Google Inc.*, No. C 10–03561 WHA, 2012 WL 1189898, at *3 (N.D. Cal. Jan. 4, 2012). Of course, no such thing can arise in this case from the IPR proceedings, since as has been explained at length, there should be no overlap in the prior art references presented to the jury in this case and those reviewed during IPR.

3. **Plaintiffs' Motion to Exclude Snap-On's Previously Undisclosed Non-Infringement Argument**

During claim construction, Snap-On proffered that the only way to test the 20 Amp Limitation, *see supra* note 2, was to apply real-world conditions, *i.e.*, attaching a battery pack to a tool and using the tool to perform a task like cutting or drilling. *Milwaukee Elec. Tool*, 2017 WL 4220457, at *9. The Court disagreed, finding that "putting aside matters of practicality, a person of ordinary skill in the art would comprehend the meaning of the 20 Amp Limitation, including the requirement that 20 amps be continuously delivered during the entire rated capacity of the battery pack. Such a person would understand that the limitation describes the capability, not the potential real-world use, of the invention." *Id.*

Plaintiffs' emergency motion in limine, (Docket #264), alleges that Snap-On's expert, Quinn Horn ("Horn"), plans to argue at trial that infringement must be tested by attaching a battery pack to a tool, in contravention of the Court's claim construction.[4] Horn will opine that because Snap-On's tools are uniquely designed with electronics, such as

---

[4]Plaintiffs also complain that Horn's opinion on this topic was disclosed only recently, but Snap-On has proffered enough evidence to convince the Court that this opinion was timely disclosed and that Plaintiffs deposed Horn regarding it. *See* (Docket #268 at 2–3). Indeed, Plaintiffs raised a nearly identical argument in their *Daubert* motion related to Horn and did not there contend that his opinion on the matter was not timely disclosed. *See* (Docket #234 at 8–12).

protection circuitry, built into a tool, the accompanying battery packs cannot be properly tested unless connected to a Snap-On tool. (Docket #258 at 11–13). He claims that this invalidates the testing done by Plaintiffs' expert, Mark Ehsani ("Ehsani"), on the battery packs, as that testing bypassed the tool's electronics. *Id.* Snap-On's criticism, then, is that Plaintiffs' testing was done under "unusual conditions" and represents a calculated effort to find infringement. *Id.*[5]

The Court finds Snap-On's position violative of at least the spirit, if not the letter, of the Court's claim construction ruling. The Court has said that the 20 Amp Limitation tests the capability of a battery pack, untethered from use with an actual tool. Horn could have run tests consistent with that construction of the claim, which was itself consistent with the construction given to the 20 Amp Limitation by every prior adjudicative body to consider it. *See Milwaukee Elec. Tool*, 2017 WL 4220457, at *7. He did not, but that oversight is no reason to permit Snap-On an eleventh-hour amendment of its theory of the case.

Nor is the Court convinced that Ehsani's testing was unusual. In *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343–44 (Fed. Cir. 2001), the court found that a patent claim dependent on the automatic operations of a computer could not be reliably tested using a method that disabled those automatic operations. By contrast, in *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010), the court concluded that "to infringe a claim

---

[5]Additionally, Horn will contend that even if infringement can be found based on Ehsani's testing, damages should be diminished because it is simply not realistic for anyone to run a battery pack in the way Plaintiffs propose. (Docket #268 at 2). Snap-On reports that after conferring with Plaintiffs, it appears that Plaintiffs do not seek to exclude this testimony for that purpose. The Court therefore declines to address its admissibility on that ground.

that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." *Id.* at 1204 (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)). In that case, the court determined that even if infringing software features were "locked" when the software was sold, infringement could still be found. *Id.* The court observed that "software for performing the claimed functions existed in the products when sold—in the same way that an automobile engine for propulsion exists in a car even when the car is turned off." *Id.* at 1205.

The matter of appropriate testing is context-driven, and thus there is no merit Snap-On's claim that unusual testing conditions are always a matter to be explored with the jury. Rather, in this case Ehsani appears to have tested Snap-On's battery packs without modification, whatever Snap-On might believe about their integration with some tool down the line. *See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555–56 (Fed. Cir. 1995) (a patentee cannot show infringement by testing a product that was not assembled according to its instructions).

It must be remembered that the relevant claim pertains to battery packs, not tools. Thus, while some of the patents-in-suit contain claims relating to tools and their operability with battery packs, the 20 Amp Limitation falls within a claim about the capabilities of a battery pack. *See* (Docket #273 at 4). Moreover, the tool claims, such as they are, only require that a tool be "operable for use with the battery pack," *id.*, not that the tool and pack operated together satisfy the pack-specific claims. Thus, the Court is obliged to grant Plaintiffs' motion and exclude at least the portions of Horn's opinions on infringement that rely upon connecting the battery packs to tools, as expert testimony that is at odds with the Court's claim

construction will undoubtedly serve only to confuse, not aid, the jury. *See* Fed. R. Evid. 702; *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1246 (Fed. Cir. 2002).

**4. Conclusion**

For the reasons stated above, the Court will permit Snap-On to proffer Moli-related evidence as part of a Section 103 obviousness contention, will exclude evidence concerning the reexaminations and IPRs except in limited circumstances, and will preclude Horn from offering an infringement opinion that depends on connecting the battery pack to a tool.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion in limine No. 12 (Docket #248-2) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Snap-On's motion in limine No. 2 (Docket #242) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' motion in limine No. 1 (Docket #238) be and the same is hereby **DENIED in part** as stated herein;

**IT IS FURTHER ORDERED** that Snap-On's motion in limine No. 1 (Docket #242) be and the same is hereby **GRANTED in part** as stated herein; and

**IT IS FURTHER ORDERED** that Plaintiffs' emergency motion in limine (Docket #264) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 12th day of October, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Court